IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

- - -

ACCENTURE GLOBAL SERVICES GmbH, and ACCENTURE LLP, : CIVIL ACTION

Plaintiffs,

vs.

GUIDEWIRE SOFTWARE, INC.,

Defendant. : NO. 07-826 (SLR)

- - -

Wilmington, Delaware
Wednesday, April 23, 2008
10:05 o'clock, a.m.

- - -

BEFORE: HONORABLE SUE L. ROBINSON, U.S.D.C.J.

- - -

APPEARANCES:

POTTER, ANDERSON & CORROON
BY: RICHARD L. HORWITZ, ESQ.

-and-

Valerie J. Gunning
Official Court Reporter

APPEARANCES (Continued):

MORRISON & FOERSTER LLP
BY: JAMES POOLEY, ESQ.

Counsel for Plaintiffs

MORRIS, NICHOLS, ARSHT & TUNNELL
BY: JACK B. BLUMENFELD, ESQ.

-and-

KEKER & VAN NEST LLP
BY: CLEMENT S. ROBERTS, ESQ.
(San Francisco, California)

Counsel for Defendant

- - -

ALSO PRESENT:

ACCENTURE
BY: WAYNE SOBON, ESQ.

- - -

P R O C E E D I N G S

(Proceedings commenced in the courtroom, beginning at 10:05 a.m.)

THE COURT: Good morning, counsel.

MR. BLUMENFELD: Good morning, your Honor.

MR. HORWITZ: Good morning, your Honor. Rich Horwitz, from Potter Anderson, for plaintiff, and with me, who is going to be making the argument today, Jim Pooley from Morrison & Foerster.

THE COURT: All right.

MR. POOLEY: Good morning, your Honor.

THE COURT: Good morning.

Mr. Blumenfeld?

MR. BLUMENFELD: Good morning, your Honor. Jack Blumenfeld, for defendant, Guidewire Software, along with Clement Roberts from Keker & Van Nest in San Francisco, and Mr. Roberts will be arguing for Guidewire.

THE COURT: All right.

MR. ROBERTS: Good morning, your Honor.

THE COURT: Let's proceed. The movant should start first, so the first motion.

MR. ROBERTS: Good morning, your Honor.

THE COURT: Good morning.

MR. ROBERTS: Your Honor, from the briefs, there

appear to be essentially three areas of dispute between the plaintiffs and the defendant on this motion.

The first area I think is there's a dispute about what the proper pleading standard is under Cromley. I think there's a dispute about what facts have been actually alleged with respect to the trade secret and intentional interference claims. And there also appears to be something of a dispute about how preemption should work in this case.

So I guess I'd like to start wherever the Court thinks it would be most helpful, or I can sort of -- I have a few things to say about each one of those areas.

THE COURT: Well, I have to say that at this point, I think I understand the pleadings standard, and my understanding is more consistent with defendants's than with plaintiffs', so you can probably skip that and save time to respond and go on to the other two -- to the other two areas that you identified.

MR. ROBERTS: Thank you, your Honor.

So the first area we should talk about, then, your Honor, is, it's applying that pleading standard to sort of the trade secret allegation. And I think the cleanest way to look at the trade secret allegation is to look at the knowledge requirement. I think this is sort of the easiest way to look at this.

Under 6 Delaware 2001, Section 2, which is the trade secret misappropriation statute, in order to constitute an act of misappropriation, you have to acquire the trade secret and you have to do so either knowing that it's a trade secret, knowing that it was acquired by improper means by the party that gave it to you, or knowing, or should have known, that you shouldn't have it. I mean, it's not simply enough to get the information. You have to get the information while knowing that you shouldn't -- that you weren't entitled to the information.

And the easiest way I think to decide this motion is to just look at the fact that they have not alleged a single fact going to knowledge. There is not one allegation anywhere in the complaint that anything that Guidewire might have received from CNA or from elsewhere, it received under circumstances where Guidewire knew or should have known that that information was someone else's trade secrets.

Indeed, they don't even identify where Guidewire supposedly got the trade secrets. They sort of dance around and hint that it might have been CNA, but they don't come out and say it. They have not sued CNA. And what they do say, and this is in Paragraph 25, they say, on information and belief, Guidewire somehow gained access to Accenture trade secrets in creating its software and secrets,

somehow.

So not only do they not say it, they specifically say that they don't know. They have alleged it, but they don't have a factual allegation about where we got it from.

And the point of that is simply this, your Honor. If they have not even identified where we got it from, they cannot have identified the facts and circumstances surrounding that alleged acquisition that would give rise to a reasonable inference that Guidewire knew that what it was getting was their trade secrets.

And this is an analysis analogous a little bit to your Honor's decision in the Smiley case. That case was a defamation action and the Court kicked it out under Twombly, saying that you have not alleged that the person who received or heard these alleged defamatory statements understood those statements to be defamatory.

Again, your Honor was concerned with the notion of the knowledge of the person who heard the statements and that knowledge requirement is relevant here. Guidewire either knew or should have known that the information it received was a trade secret. That's what they have to have alleged and just not there.

THE COURT: Now, I believe, or there's an inference anyway in the papers that the plaintiff contends

that somehow trade secret misappropriation is a different animal and, therefore, the facts alleged can be ultimate facts, not evidentiary facts, because a plaintiff doesn't necessarily have the information. The information, in other words, is all in the defendant's realm, not theirs. Therefore, it's appropriate to plead ultimate facts and not evidentiary facts.

And my question to you is: Assuming for the moment that there is some element of fairness here in an application of common sense, are you saying that all plaintiff would have to do in reaching this balance is to say, we gave the information to CNA. CNA must have given it to Guidewire, because that's a reasonable inference.

MR. ROBERTS: No, your Honor.

So, first, that might, under that line of reasoning, even if you were to accept it, that might satisfy the acquisition obligation. There's one of the elements for pleading a case of trade secret misappropriation, is the acquisition of the trade secret.

So even if your Honor was to say, well, look, in fairness, that you work for CNA, they work for CNA, they gave trade secrets to CNA, and so you can make the leap, even though they haven't alleged you got them from CNA, even though they have alleged it, you can sort of infer that you must have gotten them it CNA?

Even if you do that, there's a separate requirement that you knew or should have known that the information was a trade secret. Even if the Court were to come in here saying, let's assume that you got it from CNA, you still would have to allege some facts so that, you know, for example, it would be perfectly plausible under that hypothesis that CNA said, hey, here's what we want you to bid. That's not trade secret misappropriation. If you don't know that that information is Accenture's, if you don't know that it was acquired in breach of a duty of confidence, and that's what I mean by the knowledge requirement. The statute specifically requires that you know or should have known that the information you received was a trade secret.

THE COURT: So, again, all of this information is out of reasonable reach of the plaintiff.

Are you saying that, in essence, the only way a plaintiff can bring this kind of case is if they stumble upon, basically, without benefit of discovery in a litigation, if they stumble upon information like you said?

MR. ROBERTS: No, your Honor. There are lots of facts one might suppose they could have or could plead if they had them that would raise an inference of knowledge.

So, for example, you know, you could -- many of the cases, all of the cases, in fact, that they cite are direct misappropriation claims, where one person was working for person A, was working for person B, and left to go work for person C.

So you know, if you are in the back room of the Diet Coke factory and you're working on the formula and then you leave and you go somewhere else, you know, you can raise an inference that the person knew about that the formula was your trade secret. Right?

There are facts such as working relationships. There are facts such as, you know, circumstances surrounding these things that could conceivably give rise to an inference of knowledge. Absolutely. You can come up with all sorts of hypothetical scenarios that where they could allege that we had knowledge.

THE COURT: So the fact that this is an indirect case of alleged misappropriation shouldn't be the defendant's burden. It's the plaintiffs' burden to come forward with sufficient facts to allow this claim to go forward into the next stage?

MR. ROBERTS: That's exactly right.

What the Court said in Phillips was, after Twombly, it is no longer sufficient to allege mere elements of a cause of action. Instead, a complaint must allege

facts suggestive of the prescribed conduct.

And it's clear from Phillips and from Twombly and from the Court's decision in Smiley that that has to be done on an element-by-element bases.

Twombly says a complaint must contain either direct or inferential obligations respecting all the material elements necessary to retain a recovery. That is 127, at Supreme Court at 1969.

Phillips says a claim requires a complaint with enough factual matter taken as true to suggest the required element. This Court's decision in Smiley. The claim fails to allege an essential element of a defamation claim. That is an understanding of the defamatory nature of the communication by the third party to whom it was communicated. They have to do it for each element and knowledge is an element.

Now, I don't actually think, your Honor, that they can do it even on the acquisition, right, because in order to allege, it would be one thing if they had came out and alleged that we had acquired the trade secret from CNA. That would be a conclusory allegation, but it would actually be an allegation that we got it from CNA. In that case, you would have an allegation. Be a conclusion, it would be a conclusory allegation. It wouldn't be evidentiary fact. But they could come out and say, you got it from CNA. They

haven't done that. What they've said is on information and belief, we think you somehow got it from somewhere. That is not enough. It's not enough to say, well, gosh. You know, we were surprised by how quickly your product developed. Right. That's what they say. And you had contacted with one of the customers that we had contact with and you underbid us. Therefore, we're suing you for trade secret misappropriation.

I mean, you can't go out in the market and say, oh, gosh, you underbid us. We were surprised by your speed of development. Now we have a cause of action for trade secret misappropriation. That can't be enough. But those are the only things that they've alleged here.

THE COURT: All right.

MR. ROBERTS: Okay. Moving on from the trade secret, you have the same problems in terms of the sort of 12(b)(6) motion with the interference claims.

Now, we pointed out in our opening brief that it wasn't clear whether they were bringing interference with contractual relations or interference with prospective economic advantage, and they have not clarified that, so I don't know which of those two causes of action they're trying to plead. But in each one, you have to have, again, a knowledge requirement. Knowledge that the defendant knew about the contract or knew about the relationship and

intended to interfere with it, right, because it can't be intentional interference if you don't know about the thing with which you are interfering.

And, again, in their opposition, they point to the NDA that they signed with CNA, the thing with which we allegedly interfered. Well, that's a problem, because they have not alleged that we knew about the NDA and they have not alleged a breach of the NDA. You have to allege both a breach and you have to allege a breach of contract that we knew about.

And Lipton versus Anesthesia Services, 790 A 2d, 1251, also cited in this Court's decision in Smiley, just sets out the requirements for those causes of action, and they both require a contract about which the defendant knew, an intentional act that's a significant factor in causing the breach of such a contract.

So if you are going to rely on the NDA, which is the only contract they pointed to, they have to allege that we knew about it and they have not, and they have to allege that it was breached and they have not.

And I would -- I would suggest, your Honor, that if the motion to dismiss is granted, they won't come back and say that the NDA was breached, because if they did that, CNA would be in this courtroom and they don't want that.

The same thing with interference with prospective economic advantage. Again, it's a reasonable probability of a business opportunity. They have not alleged that. Intentional interference. Proximate cause and damages.

So they have to allege intentional interference, but there's no allegation that we now about the contract or that we knew about the relationship.

And this is actually, I think, very instructive, your Honor, about what they've done, because if you look, for example, at Page 11 of their brief, they say on Page 11, I'm just reading from their brief, but it's clear enough that Guidewire -- sorry. Excuse me. They say, It's clear enough that Guidewire has interfered with Accenture's relationship with CNA, getting unauthorized access to get information that informed its speedy product development. And they say, Accenture cannot be expected to know and recite the details of Guidewire behavior, which must be developed in discovery.

They say, Well, we don't know, we don't know, so we've got to go into discovery and look for it. And this is the problem with their reliance on Connolly and the fact that Connolly has been overturned, because you no longer get to do that. You no longer get to say, we don't know the facts. We'll figure them out in discovery, and then once we

get into discovery, we'll have the facts to sustain the cause of action. You've got actually plead them in the complaint.

And the only paragraphs that talk about this stuff even potentially are sort of toward the end of the complaint, and there's absolutely nothing in there to suggest that Guidewire knew that Accenture was bidding on CNA. In fact, what the complaint says was they were surprised to find out they that we were in the game. They were surprised by finding out another competitor was in there. That suggests a blind process. It does not suggest conspiracy or collusion, and they have not pled the facts to make that out.

The final thing I'd like to touch on, your Honor, is the preemption issue, and then I will reserve the remainder of my time, whatever there is.

So the preemption law in Delaware is quite clear, that where a set of state court claims are based on the same facts that you're relying on to support your trade secret misappropriation claim, the claim is preempted.

This is clear in Lucadia. It's clear in United Technologies.

In United Technologies, the Court says -- I can give you the exact quote -- the Court says, since no additional facts independent of those alleged in support of

its trade secret misappropriation claims have been averred to support these claims, UDTC's deceptive trade practice and unjust enrichment claims are therefore dismissed as preemptive. If you have not alleged any additional facts, you don't get in the door. That's the rule in Delaware.

And it's crystal-clear that there are no additional facts other than the facts that they've alleged for their trade secret claims. There aren't any.

If you look at the structure of those claims, the intentional interference, the unfair, they say, oh, we re-incorporate everything we've alleged thus far, and it constitutes unfair competition or, and it constitutes intentional interference.

And, in fact, in their opposition on Page 10, they expressly say that Accenture pleads a common set of facts on which it relies for each of its claims. That's at line 2. And then they go on and say, that's an important question. Are there any facts in addition to those necessary to prove its trade secrets case that Accenture relies on to assert its other claims? Guidewire presumes the answer to the question no, but the correct answer is yes.

Well, then, my response, your Honor, is: What are they and where are they in the complaint? What are

those additional facts, because they're not in the complaint. And you can't, again, under Twombly, it's dismissal of Connolly. You can't simply say anymore, well, they'll show up in discovery or, well, you know, we'll be able to find them out later. No.

In response to this, they're going to point to the Court's decision in Ethypharm and Ethypharm is an interesting case. The first is that it wasn't a 12(b)(6) decision. It was, in fact, a petition on summary judgment, because the Court found that the parties had referred to matters outside the pleading. And so it's very interesting to say, I think it's probably right to say, on a summary judgment motion, which the Court did, hey, look, there aren't enough facts here to see what the basis for this is, I'm going to let discovery keep going.

And, second, Ethypharm farm was decided before Twombly came out and made clear that on a 12(b)(6) motion, you are limited to the facts that are actually in the pleading.

On the flip side, Ethypharm recognized explicitly that the rule in Delaware was, again, that if it rests on a common set of facts, then it gets kicked out.

And specifically, the Court said, because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can

be displaced even if the information at issue is not a trade secret. Thus, the determination of whether the information at issue constitutes a trade secret under the DUTSA need not be addressed prior to making a determination of displacement.

The Court will recognize that was the principle, but because it was a summary judgment motion and not a 12(b)(6) motion, that didn't necessarily control.

And I will at this point, if the Court has any questions, be happy to answer them. Otherwise, I will reserve the remainder of my time.

THE COURT: I will save my questions until I hear from plaintiffs' counsel.

MR. ROBERTS: Thank you.

MR. POOLEY: Good morning, your Honor.

THE COURT: Good morning.

MR. POOLEY: And I would like to point out that with me in the courtroom today is Wayne Sobon, who is Associate Counsel at Accenture and Director of Intellectual Property.

Well, I need to start out with an apology both to the Court and to counsel, who is correct, of course, in his representation of what the standard is. But there's no dispute, actually, about what the standard is. I have been so used to citing the quote from Connolly and in motions to

dismiss that it was reflexive, but it wasn't relied on by us. That's not the standard we argued. The standard we argued is the same standard that counsel has argued and so there really is no dispute here. It is Rule 8.

But the case to focus on, to help us decide what really should be the lens through which we see the allegations here, is Phillips. Phillips is the Third Circuit case that interprets the -- what it properly called the very vague and confusing language from Twombly, which, after all, it's an antitrust case.

And Phillips said several very, very important things that mattered quite a bit here.

The first thing that Phillips said is that Twombly represented no change to the Rule 8 standard. The short plain statement is still the standard.

Perhaps more importantly what Phillips said is that Twombly emphasizes that context matters, and so that when you're making a judgment about whether the facts that are pled are enough to support the inference that's required to establish the claim, you need to consider what kind of claim you're talking about. And that's really critical here because, as we argued, and I don't think -- we didn't see anything in the reply about it, trade secret cases are not unique, but they're special in the sense that none of the bad behavior ever takes place in broad daylight, and the

plaintiff, the trade secret plaintiff, is always, always in a position only to infer from information that indicates that there has been a misappropriation or a loss, improper access, from those facts.

And to present those facts, you never, never -- and I've been doing this for a long, long time now -- only when you have the camera that catches somebody as they're leaving the building at night do you have that exceptional kind of case. Every other trade secret case is absolutely like this one, where you have someone who has been trusted with the information, who has a -- some kind of relationship with the defendant, and from that, you see an outcome, which in this case was an extraordinarily quick development. And so you know there's access, at least potentially, because they were there, and they couldn't have done what they did without your information, then you're able to come to court and ask for relief because of the nature of the claim. Otherwise, trade secret plaintiffs can't ever come to court, because you won't be able to allege the kind of detail that counsel has asked us to do, because it's beyond the knowledge of the plaintiff before discovery.

Another very important thing that Phillips told us, and it's critical when we're a assessing the reply filed here, is that there is no plausibility requirement at the pleading stage, and that's very important, because

throughout the reply, Guidewire assumes that there is. They talk about it. You've got to establish plausibility, whatever that means, and there may be a lot of dispute about that.

But the point that Phillips made is whatever -- whatever Twombly meant about plausibility, that does not apply at the pleading stage.

So what we have is the rule, as Phillips has stated it, that this Court relied on and quoted in Smiley. And as Phillips said, the Supreme Court's Twombly formulation of the pleadings standard can be summed up thus: Stating a claim requires a complaint with enough factual matter taken as true to suggest the required element. This does not impose a probability requirement at the pleading stage, but, instead, simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

So that is the standard, and I don't think we have a disagreement here. As I say, I was embarrassed about, you know, quoting from Connolly, but we did not rely on it.

So as I indicated, when we get to the trade secret issue, Guidewire doesn't really address the fundamental point that a trade secret case can only be based, at least initially, on circumstantial evidence,

because that's the way -- that's the way the behavior happens, as we cited the Greenberg case. And this dovetails very, very neatly with what Phillips tells us about the necessity to look to context and the kind of case it should have for an indication about how much you really need to get through the door of the courtroom.

I heard Guidewire claim that the element of knowledge was not pled. Well, I mean, Paragraph 33, we say, quote, "On information and belief, Guidewire has acted with knowledge that the information it used was Accenture's trade secrets."

Now, they complain that that is on information and belief, but how, at the beginning of a case, can one talk about the state of mind of the actor, their knowledge, without doing it on information and belief? We can't know. We can only conclude from the facts, the other facts, that that is the likely outcome. And that's in the nature of it. In any event, it is pled.

Guidewire makes a -- an argument, which it repeated here, that virtually all of the cases, not virtually, every single case that Accenture has cited is what it calls a, quote, "direct access case." It lists them all in a single footnote, Footnote 5, as a distinction.

And this is a straw man argument because,

certainly, all trade secret cases are direct access cases, including this one. Trade secret misappropriation doesn't happen through some Vulcan mind transfer. It happens because the defendant did get access to the information.

This is a direct access case. The conclusion about direct access is something that is inferred from the facts that we know, which is that we trusted our customer with this information, then Guidewire started working with them, and, lo and behold, very, very quickly, they were able to come up with something that took us ten years to develop. That notion of direct access is absolutely part of the reasonable inference that comes from those facts. So it's a false dispute.

So as I get to the end of the trade secret issue, I mean, what's so kind of frustrating about this is that, from a plaintiff's perspective, trade secret plaintiff, you are bound to allege what you know. You can't allege what you don't know. You can allege what you think happened on information and belief as long as it's a reasonable inference from what you do know. But if you have been shut out, as Accenture was shut out, from the dealings between CNA and Guidewire, you can't know anything more than what we have said.

But what we have said presents a very, an extremely suspicious situation, and the cases and trade

secret law are legion, that that is what a plaintiff properly is required to have before it comes into court, because it can't know the secret misappropriation that occurred. All it can know is the outside evidence that will allow it to get to court so it can then engage in discovery and get the direct evidence of the misappropriation.

Unless the Court has any questions, I want to move on to the interference issue, interference and preemption.

Here, until we -- until we heard from counsel today, Guidewire did not address in its reply the Ethypharm cite that we provided, and what this Court decided this Ethypharm, which basically answers the question. We're not -- we did not allege a fraud claim. We did not allege a claim of conversion. We did not allege a separate claim of unjust enrichment. Those kinds of things that typically, at the beginning of a case, are tossed out when you have -- when it represents simply another way to ask for relief based on a trade secret misappropriation.

Interference, because of its very nature, is a different beast and can exist based on some facts that are common to a trade secret misappropriation, but others that may not be.

And so in Ethypharm, this Court said words that

completely applied here. While plaintiffs have not yet fully developed the claim at this early stage of the proceeding, and, again, counsel is right, it's a summary judgment, but, you know, I think, in a sense, that proves too much, because if this principle applies in summary judgment, surely, it applies at the pleading stage.

It is too early to dismiss the claim as preemptive. Plaintiffs assert in the complaint that they worked to cultivate relationships with companies to sell Omeprazole and entered into economic relationships with customers who wished to purchase the drug.

Plaintiffs assert that defendant knew of these relationships. Plaintiffs also assert that defendant interfered in these relationships by stealing and using certain information and this caused plaintiffs' injury.

Even if the theft of the information does not rise to the level of misappropriation of trade secrets, the acts may still satisfy the elements in an intentional interference claim. Thus, Count 4 is not dismissed. However, if the claim, once developed, is grounded on the same facts as the misappropriation claim, it will be dismissed by the DUTSA.

And, your Honor, all we're asking for here is the same opportunity, and we acknowledge that if it turns out that the facts relating to interference are 100-percent

congruent with the facts on the trade secret claim, it should be dismissed. But we don't know enough about it yet to make that determination as to whether or not the preemption section of the statute should or should not apply.

Now, counsel said there was no allegation in the complaint that -- he said no allegation that we knew about the relationship. Well, in fact, at Paragraph 40, it appears, and, again, on information and belief, because it's a knowledge issue, state of mind, quote, "On information and belief, Guidewire has knowledge of Accenture's customer and" -- I'm sorry -- "Accenture's customer and prospective customer relationships."

And that includes the CNA relationship, that confidential relationship that is, again, a relationship that was reflected in a nondisclosure agreement.

So we have alleged that Guidewire knew about this on information and belief because all their dealings with CNA, as far as we were concerned, happened behind closed doors. So we can't allege more directly than that.

Guidewire also, in its reply, did not address the IDX Systems case, in which that Court said, addressing specifically preemption, that interference by inducing breach of a nondisclosure agreement is not, quote, based

upon misappropriation, but trade secret, for purposes of the preemption section of the Uniform Trade Secrets Act.

So this is -- this is reflected and based on the language of the Uniform Act, the preemption language, that says, yes, we're trying to get rid of all of those torts that people used to string along with trade secret claims, like unjust enrichment and a breach of fiduciary obligations, fraud, that sort of thing. But it does not apply to contract claims.

And so by extension, as the IDX Systems case said, misappropriation -- I'm sorry -- breach of a nondisclosure agreement and the kind of interference that induces that is -- is not preempted.

Finally, on this issue, that is the issue of preemption, the interference claim, Guidewire relies on Twombly and it simply doesn't make sense because Twombly has said nothing about interference, doesn't address preemption at all.

The issue on interference and preemption is exactly the issue that was presented in Ethypharm and the outcome in Ethypharm and the analysis in Ethypharm provides the answer for the issue here.

There is an adequate pleading. There's certainly enough for Guidewire to understand the basics of what we're after. And we can't intelligently come to a

conclusion about whether the facts on interference are 100-percent the same as the trade secret facts until we've had discovery to find out.

And so while in the end Guidewire may be right, we need to have the discovery in order to assess that fact.

That's all I have, your Honor, unless you have any questions.

THE COURT: I do not at this point. I will wait to see defendant's reply and then I will ask whatever questions I might have.

MR. POOLEY: Thank you very much.

THE COURT: Thank you.

MR. ROBERTS: Thank you, your Honor.

Let me sort of take his points in order.

His first was he said that they didn't rely on Connolly. They cited it. It was just an error, but they didn't rely on it. I profoundly disagree. They cite S.L. Montevedes, which relies on it. They cite Rockefeller. They argue on Page 5 of their brief that conclusory allegations are sufficient. They just stood up and argued that we can get into discovery and see what's there. We don't have to plead it on the pleading. That's what Connolly said. Connolly said you can't dismiss on the 12(b)(6) because if they might be able to get facts in

discovery that allow you to sustain the cause of action. That was the whole point of the negative gloss that Connolly had and the whole point of Twombly overturning it was, no, you've got to make a showing based on what's in your complaint. You don't get the benefit of facts that you have not alleged. You don't get the benefit of those. That was the whole point of the Court overturning Connolly.

The next thing he said was Phillips interpreted Twombly as representing no change in the law. Well, it's certainly true the Court in Twombly and in Phillips took great pains to say Rule 8 is Rule 8 and it still is governing law. But Phillips did say there were two new ideas in the Twombly decision. One of them is this notion of making a showing for each element and the other is that you don't get the benefit of unpled facts. Those are both new ideas and Phillips specifically labeled them as new.

I took the most, I thought, the most interesting thing opposing counsel said which was reflective of your Court's concern was, well, gosh, how do you prove this? Can't you just allege the circumstantial requirements? It happens in the dark?

And what he said there was, he said they've got three facts. That they shared information with CNA. That we worked with CNA. And then an implausibly quick

development. That development is not pled that way. The way it's pled is it said, it seemed a surprisingly quick development. It's a statement of opinion, not a statement of fact.

Now, I've had trade secret cases, your Honor, where I've relied on speedy development. It was a case in California involving a company called Sputter Films, where our chief engineer left and six months later had a prototype that could produce a sputtered film with an accuracy that was equal to or greater than art that it took us 35 years to develop and that no one else in the industry could come close to.

Sure, you can do it, but see how long it took us to develop this thing. They can't just say, oh, it was a surprisingly quick development. Accenture's surprise had nothing to do with it.

THE COURT: Well, they did say it took them ten years not two years. I'm not sure what product we're talking about. But I recall there being some information about that.

MR. ROBERTS: They have information about how long it took them to develop. There's nothing about how long it took us to develop. There's no allegation in there, for example, that we didn't have a product before we approached CNA. There's no allegation that, oh,

Guidewire -- CNA was Guidewire's first client. There's no timeline. Guidewire developed it in six months or a year or two years. Completely silent.

The only thing they say is that -- here, we can read it directly from the complaint.

They say in Paragraph 24, Accenture continued to enjoy considerable success in the market, but as time passed, Guidewire emerged more and more frequently as a challenger to Accenture and Guidewire seemed to have a surprisingly quick development trajectory, particularly in light of its small size and relatively light experience in the insurance market.

Now, I'm not saying you could never plead a set of speedy development facts that wouldn't give rise to a reasonable inference that something fishy was going on. But that sentence, which is the only sentence they've got, doesn't cut it. It just says, seems to have a surprising -- it's completely chimerical. There's nothing there. There are no facts there. It's a pure statement of opinion.

I mean, if we had a product before we approached CNA, right, when did Guidewire begin to develop its product? How fast is fast, really?

Mr. Pooley stood up and said, they couldn't have done it that fast without our trade secrets.

Where is that? Where is that in the complaint?

There's nothing whatsoever about implausibility or it was too fast to be possible. I mean, as lots of cases have pointed out, there are lots of drivers that can develop -- that can affect speed of development. Right? There are lots of things.

In fact, for our company, for Guidewire, we hired a team of software engineers who were very experienced, who came from a company where they were building a work flow management system for e-mail and we hired those guys. They put in a clean room and they built a new work flow management system.

Sure.

THE COURT: Well, I guess the point is, though -- well, the question I have is as follows: Does the plaintiffs' obligation to provide the kind of fact that you believe is required dependent on the kind of information that is in the public, and, therefore, subject to review under your Rule 11 obligations to investigate before you file a complaint?

If that kind of information is not part of the public domain, should I be concerned about that?

MR. ROBERTS: And I think your Honor does rightly have some concern about that. I do understand that. You have to look at what the context is, I don't disagree with that. But it also does not change the minimum

requirements to come into court, and those minimum requirements under Phillips are that you have to plead facts, and the facts you have to plead give rise to a reasonable inference. There's no pass to say, I want to go on a fishing expedition because it happened in secret and I don't know. You don't get to do that. You've got to plead facts that give rise to a reasonable inference.

Now, if they can come back and plead facts from the public domain and from what they've investigated, look at Guidewire's development history, put together a timeline, make some sort of allegation that it wasn't possible without access to information, maybe they can get there. But they have not done it yet, number one.

And, number two, even if the Court were to conclude, well, gosh, it's suspicious for them to have developed it this quickly, and we don't know what this quickly is because they have not said, but even if you do that, there's no inference from there that we ended up with their trade secrets, number one, or, number two, that any information we ended up with, we knew was their trade secret.

Now, they say, oh, we have alleged it. We've alleged in Paragraph 34, whatever. If you look at those paragraphs, all they're doing is they're marching through the elements of a cause of action and repeating them on

information and belief.

And Phillips explicitly says that you cannot do that. After Twombly, it is no longer sufficient to allege mere elements of a cause of action. Instead, a complaint must allege facts suggestive of the prescribed conduct.

You can't simply march through, repeat the elements, and on information and belief and say, therefore, we've alleged it and it happened in secret, so we get into discovery. That's the teaching of Phillips. That's no longer sufficient to do it.

THE COURT: And tell me something. In terms of practicalities, as I recall, they have alleged that they have reviewed whatever public information there is about your product in order to assert patent infringement.

I take it that that is the sort of information that they would -- that you say they would need to include in their claim of trade secret misappropriation, that they've reviewed whatever public information there is about your product and that it includes some of their trade secret information. I mean, is that the kind of information you --

MR. ROBERTS: Sure. I don't think they are required to do that, but I they that that certainly -- it would help. The bottom line is, they have to allege

facts that give rise to an inference that we got their trade secrets and we knew -- we knew we were getting them. We got them, we knew what they were. And there's lots of ways they can do that. Right.

They can go out and can allege similarities between our products and trade secrets. Haven't done that. They can go out and allege that a customer has told us that we were talking about how we had the Accenture system or something. They have not done that. They could go out and they could allege that CNA gave us the trade secrets and we knew we were getting them from CNA because CNA was very open with everybody about the fact that it was building Accenture's system and had just gotten it on the cheap.

I mean, I'm not trying to preclude them or to funnel them into one particular way of doing it. But the bottom line is that what Phillips says is, you have to plead facts that give rise to a reasonable inference that we got the trade secrets and that we knew that we were getting the trade secrets. They have to do that.

Now, again, they say, well, knowledge. How can we talk about knowledge, state of mind, at the start of a case. Right? We've alleged that they knew and that's all we can do.

Well, you can. And, again, I would say the case in point here is Savoir. Now, we cited Savoir,

and in Savoir, which -- the first one was kicked out. It was dismissed under Twombly. And the Court dismissed it under Twombly in part based on the failure to plead knowledge.

The second Amended Complaint fails to plead facts sufficient to satisfy the third element of its claim for misappropriation of trade secrets. Namely, that Savoir communicated its trade secrets, person to an express or implied understanding that the secrecy of the matter would be respected. It is alleged only on information and belief FNR corporate defendants knew or had reason to know that the information received concerning the Savoir program was a trade secret acquired under a duty of confidence.

And this is in Savoir, which is 2001, Delaware Superior Lexis 170, and I'm reading from Star 12.

So they did exactly what they said here, alleged knowledge and information and belief. The Court said that wasn't sufficient.

What's something, in Savoir they went back, amended, and they added additional facts. And when the Court dismissed it a second time, it was overturned on appeal.

And in appeal, the reason the Court overturned it was it talked about what they had added to the complaint in order to allege knowledge. They were no longer simply

doing it on information and belief. And this is from the appeal, which is 812(a) 2d, A 94.

The Court said, The complaint added allegations that Savoir presented its program to FNR only after Claude agreed that he would respect the confidentiality of the information he was given.

So they added a specific allegation that the person to whom they disclosed the information agreed he would keep it confidential. He knew that it was being given under a duty of confidence.

Finally, the complaint attempted to support its claim that FNR disclosed its trade secrets you promised by alleging that they worked to get -- worked with Claude at FNR in the college investing business line.

THE COURT: I truly think this is not good to be using our time for you to read from --

MR. ROBERTS: I'm sorry, your Honor.

THE COURT: All right.

MR. ROBERTS: All I was trying to say is, in the appeal you were saying, well, what kind of facts could they plead? The appeal talks about the kind of facts that you can plead to show knowledge. The first time they did it on information and belief, not sufficient. The second time, they pled facts. The appeal found that that was sufficient.

The only other thing that I think I could respond to since I've given you my argument on Ethypharm already is his mention of IDX, which, as he says, IDX says inducing breach of an NDA is not preempted. Fine. Plead it. Plead that they breached the NDA. Plead we knew about the NDA. Say that CNA breached its NDA with Accenture.

They have not pled that breach. If they want that claim, that claim I agreed would not be preempted, but they have to plead it. They can't say, oh, well, we don't know, we might be able to discover that they breached the NDA and because we might be able to get there in discovery, therefore, we get past the 12(b)(6) motion.

That's not how 12(b)(6) works. It would make 12(b)(6) entirely circular.

THE COURT: All right. Thank you.

Mr. Pooley, I will give you just a minute, and then obviously movant will have the last word, but if you want to respond.

MR. POOLEY: I don't think there's anything I need to respond to, your Honor.

Thank you very much.

THE COURT: All right. Now, as I understand it, I hope I have not messed this up. We are so confused. I am so confused about reference to our Magistrate Judge and not. I hope these motions have not been referred to her. I think

the case was at some point, and then it --

MR. POOLEY: It was, and then came back, your Honor.

THE COURT: All right. All right. Is there another motion pending here?

MR. POOLEY: Yes, your Honor. There's a motion that we filed, a motion to dismiss, and -- on the counterclaim, on some of the counterclaims. That briefing is not done yet and it won't be done until next week with the reply.

THE COURT: All right. Well, I will try to get this done. I may or may not try to have all of these motions resolved, because what I'd like to do today, at the very least, is set a date for a scheduling conference.

MR. POOLEY: Great.

THE COURT: And that will motivate me to get these motions done and also get the case moving forward.

I would think June would probably be in the realm of possibility of my being able to get something out on these motions.

MR. POOLEY: Shall we set a date now?

THE COURT: I would like to, if you all have calendars.

MR. POOLEY: Great. Yes, I do, your Honor.

(Pause.)

MR. POOLEY: And --

THE COURT: I'm looking at June 11th at 4:30. I happen to have a 4:30 slot available.

MR. ROBERTS: That's fine.

THE COURT: This would be a telephone conference, not an in-person conference.

MR. POOLEY: Oh, okay. 4:30? That works fine, your Honor. I could be here in person, your Honor, because I will be in D.C. that morning.

THE COURT: All right. Well, I don't generally require folks to show up for scheduling conferences.

MR. POOLEY: All right.

THE COURT: I will require the plaintiff to organize the telephone conference.

MR. POOLEY: We will do that, your Honor.

THE COURT: All right. Are you all available?

MR. ROBERTS: Yes, your Honor.

MR. BLUMENFELD: That's fine.

THE COURT: All right. Counsel, thank you very much for your help in these matters, and I will try to get them resolved so we can move forward.

Thank you.

(Counsel responds, "Thank you, your Honor.")

(Court recessed at 11:00 a.m.)