IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ACCENTURE GLOBAL SERVICES )
GMBH and ACCENTURE LLP )
      Plaintiffs, )
       )
   v. ) Civ. No. 07-826-SLR
       )
GUIDEWIRE SOFTWARE INC., )
       )
      Defendant. )

Richard L. Horwitz, Esquire, and David E. Moore, Esquire, and D. Fon Muttamara-Walker, Esquire, of Potter, Anderson & Corroon, LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: James Pooley, Esquire, L. Scott Oliver, Esquire, Diana Luo, Esquire, Ruchika Agrawal, Esquire, and Matthew Chen, Esquire, of Morrison & Foerster LLP, Palo Alto, California.

Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire, of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Daralyn J. Durie, Esquire, Ragesh K. Tangri, Esquire, Joseph C. Gratz, Esquire, and Clement S. Roberts, Esquire, of Durie Tangri Page Lemley Roberts & Kent, San Francisco, California, and Eric K. Chiu, Esquire, of Keker & Van Nest LLP, San Francisco, California.[1]

**MEMORANDUM OPINION**

Dated: June 30, 2009
Wilmington, Delaware

---

[1] Durie, Roberts, and Gratz appeared previously as attorneys from Keker & Van Nest.

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiffs Accenture Global Service GmbH and Accenture LLP (collectively, "Accenture" or "plaintiffs") brought this action against defendant Guidewire Software Inc. ("Guidewire") on December 18, 2007, asserting patent infringement, trade secret misappropriation, and related state law claims. (D.I. 1) On February 6, 2008, defendant filed its answer and asserted counterclaims. (D.I. 10) The parties' respective claims were subsequently pared down by the court's October 8, 2008 order. (D.I. 76) Since that time, plaintiffs have twice amended their complaint, and it is plaintiffs' second amended complaint, filed on December 17, 2008, that is presently operative. (D.I. 92)

Defendant has three motions pending before the court: a motion to dismiss claim 4 of plaintiffs' second amended complaint alleging tortious interference with business relations (D.I. 98); a motion to amend its answer and counterclaims to add a fifth counterclaim alleging trade secret misappropriation (D.I. 122); and a motion to unseal its proposed amended answer and counterclaim (D.I. 138). For the reasons that follow, the court grants the motion to amend, but denies the motions to dismiss and unseal.

## II. BACKGROUND[2]

### A. Plaintiffs' Products and Trade Secrets and Dealings with CNA

Plaintiff markets to insurance companies an insurance claims management solution called the Accenture Claim Components Solution ("ACCS") . (D.I. 92 at ¶¶ 9-

---

[2]The court's October 8, 2008 memorandum opinion (D.I. 75) more fully sets forth the background in this case.

10) ACCS combines computer software and consulting services aimed at helping insurance companies optimize their claims handling. (*Id.*)

Plaintiffs began developing ACCS in the 1990s. (Id. at ¶ 12) In mid-1997, St. Paul Insurance ("St. Paul") agreed with plaintiffs to share some of the development costs for ACCS and, in October 1998, plaintiffs first implemented ACCS for St. Paul. (*Id.* at ¶¶ 15, 17) Shortly thereafter, plaintiffs implemented ACCS for Reliance Insurance. (*Id.* at ¶ 17) From these projects and earlier development efforts, plaintiffs developed trade secrets with respect to design, coding, and implementation of claims management systems. (*Id.* at ¶¶ 15, 16)

Sometime in the late 1990s, plaintiffs implemented ACCS for CNA Insurance's ("CNA") personal business unit. (*Id.* at ¶ 20) In late 2000, CNA's commercial business unit requested an "assessment" from plaintiffs, which called for plaintiffs to study the commercial unit's business and develop a detailed plan for implementing ACCS. (*Id.* at ¶ 21) Plaintiffs performed the assessment, but not without requiring CNA to execute a non-disclosure agreement ("NDA"). (*Id.*) In late 2002, at CNA's request, plaintiffs installed a working copy of ACCS software on CNA computers and submitted a bid to implement that software. (*Id.* at ¶ 22)

### B. Defendant's Entry into the Market and Dealings with CNA

Between 2000 and 2002, plaintiffs learned that defendant had entered the market. (*Id.*) In 2002, defendant added to its "Board of Advisors" Michael Conroy and Wayne Hoeschen. (*Id.* at ¶ 23) Conroy and Hoeschen had been, respectively, St. Paul's executive vice president and chief information officer during the period in which

2

plaintiffs had collaborated on ACCS with St. Paul. (*Id.* at ¶¶ 23-24) Defendant also added to its "Board of Advisors" during this period Dennis Chookaszian, who was CNA's chairman and chief executive officer during the period in which plaintiffs had implemented ACCS for CNA's personal business unit and conducted the assessment for CNA's commercial business unit. (*Id.* at ¶ 25) Conroy, Hoeschen, and Chookaszian all had access to plaintiffs' trade secrets prior to joining defendant's "Board of Advisors." (*Id.* at ¶ 26)

In early 2003, CNA informed plaintiffs that it would develop claims management software in conjunction with another company whose bid was $10 million lower than plaintiffs; plaintiffs later learned that this company was defendant. (*Id.* at ¶ 27) CNA staffed the software development project with some of the same employees who had been involved with the ACCS assessment, including Richard Affenit, Jerome Reynolds, and other executives. (*Id.* at ¶ 28) These employees had access to plaintiffs' trade secrets prior to working with defendant on developing and implementing its software. (*Id.*)

According to plaintiffs, defendant's claims management product closely resembles ACCS, including those features considered trade secrets. (*Id.* at ¶¶ 31-32) Plaintiffs further state that defendant was aware of their prospective contract with CNA's commercial business unit and interfered with that contract by using plaintiffs' trade secrets, which it had acquired through improper means. (*Id.* at ¶ 34)

### C. Defendant's Amended Counterclaims

On February 13, 2009, defendant filed a motion to amend its answer and

counterclaims. (D.I. 122) The proposed amended complaint adds a fifth counterclaim alleging trade secret misappropriation, as well as several detailed allegations in support thereof. (*See id.* at ex. 2, ¶¶ 76-112) Defendant bases these detailed allegations on discovery materials – primarily emails – produced by plaintiffs. (*Id.* at ¶ 1) Much of the material upon which these allegations are based was designated by plaintiffs as falling within the provisions a stipulated protective order. (*See* D.I. 130 at ¶ 4)

## III. DISCUSSION

### A. Motion to Dismiss Plaintiffs' Fourth Claim

#### 1. Standard of review

In reviewing a motion filed under Rule 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.[3] *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to

---

[3]"Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

4

relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1959.

### 2. Analysis

Defendant argues that plaintiffs' fourth claim – tortious interference with business relations ("tortious interference") – should be dismissed because it is preempted by the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 Del. C. § 2001 *et seq.*[4] DUTSA preempts common law claims that are "'grounded in the same facts which purportedly support'" companion claims for trade secrets misappropriation. *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (quoting *Savor, Inc. v. FMR Corp.*, 2001 WL 541484, *4 (Del. Super. 2001)); *see also Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991) (DUTSA preempts claims "founded on allegations of trade secret misappropriation"). A common law claim is "grounded in the same facts" as a trade secret claim if the same facts are used to establish all the elements of both claims. *See Ethypharm*, 388 F. Supp. 2d at 434-35; *see also Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (common law claims upheld as preempted where claims were "based on the same alleged wrongful conduct as the trade secrets claims"). Approached another way, if the success of the common law claim does not depend on the success of the trade secrets claim, that is, if a plaintiff need not prove all the facts underlying the trade secrets claim in order to prove the common law claim, then the common law claim is not "grounded in

---

[4] As the court noted in its October 8, 2008 memorandum opinion, plaintiffs do not specifically plead a violation of the DUTSA; there is no indication, however, that Delaware law would not apply, nor do plaintiffs indicate otherwise in their answering papers.

5

the same facts" and is not preempted. *See Ethypharm*, 388 F. Supp. 2d at 434-35.

Whether a party has, in fact, "grounded" a common law claim "in the same facts" as its trade secret claim often cannot be determined at the motion to dismiss stage.[5] *See id.* at 435. For example, in *Ethypharm*, the court held that the motion to dismiss stage was too early to determine whether DUTSA preempted a tortious interference claim because the plaintiff there could still satisfy the elements of the tortious interference claim even if it failed to prove that defendant had misappropriated trade secrets. *Id.* at 434-35. Accordingly, the court in *Ethypharm* declined to dismiss the tortious interference claim at the motion to dismiss stage and, instead, reserved the question of DUTSA preemption until the tortious interference claim was developed through discovery. *Id.* at 435.

The court does likewise here. Because plaintiffs can make out a tortious interference claim without proving a trade secrets claim, the court declines to declare at this stage that the tortious interference claim is preempted by DUTSA. However, consistent with *Ethypharm*, if the tortious interference claim, once developed, is grounded in the same facts as the trade secrets claim, it will be deemed preempted by DUTSA.

Defendant also argues that plaintiff's allegations are insufficient to state a claim

---

[5]Because the parties in *Ethypharm* referred to matters outside the pleadings in addressing the defendant's motion to dismiss, the court there treated the motion as a one for summary judgment. *Ethypharm*, 388 F. Supp. 2d at 430. The court nevertheless refers to that stage of the proceedings as the "motion to dismiss" stage because the claims in that case, in terms of factual development, were typical of claims that had not yet been supported by discovery, that is, claims as they would appear at the stage in litigation where motions to dismiss are common.

for tortious interference. To support a tortious interference claim, plaintiffs must establish the elements for at least one of the two species of tortious interference claims. For a claim of intentional interference with contractual relations, plaintiffs must establish: "'(1) a contract (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury.'" *Id.* at 434 (quoting *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1284 (Del. Super. 2001)). For a claim of intentional interference with prospective contractual relations, plaintiffs must establish: (1) the reasonable probability of a business opportunity; (2) intentional interference; (3) proximate causation; and (4) damages, "all of which must be considered in light of defendant's privilege to compete or protect his business interests in a fair and lawful manner." *Id.* at 435 (citing *Lipson,* 790 A.2d at 1285).

The court concludes that plaintiffs have made out a claim for the latter. Plaintiffs allege: (1) that they were in negotiations with CNA over ACCS; (2) that defendant acquired knowledge of ACCS and used it to underbid plaintiffs; (3) that defendant's actions caused plaintiffs to lose out on the contract with CNA; and (4) that it resulted in lost revenues. These allegations are sufficient to make it more than speculative that plaintiffs are entitled to relief on a claim of intentional interference with prospective contractual relations. Accordingly, the court denies defendant's motion to dismiss plaintiffs' fourth claim.

### B. Motion to Amend/Correct Defendant's Answer and Counterclaims

Defendant moves to amend its answer and counterclaims to add detailed

Case 1:07-cv-00826-SLR Document 224 Filed 07/01/09 Page 9 of 11 PageID #: 2762

allegations and a fifth counterclaim alleging trade secret misappropriation.[6] "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiffs have not granted written consent, so the issue is whether the court should grant leave.

"[L]eave to amend 'shall be freely given when justice so requires.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Federal Rule of Civil Procedure 15(a)). Where the non-moving party will not suffer "substantial or undue prejudice," "'denial [of leave to amend] must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment.'" *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993)).

Plaintiffs do not oppose defendant's motion to amend on any of these grounds. Accordingly, the court grants defendants' motion to amend.

### C. Motion to Unseal the Proposed Amended Answer and Counterclaims

Defendant moves to unseal its proposed amended answer and counterclaims, which it has attached as an exhibit to its motion for leave to amend. A presumptive right of public access attaches to all material filed in connection with nondiscovery pretrial pleadings. *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 164-65 (3d Cir. 1993). As the motion for leave to amend is a nondiscovery pretrial pleading, and the amended answer and counterclaims is an attachment thereto, it is clear that the presumption of public access attaches to the amended answer and

---

[6]The motion is timely, as it was filed before the court's February 15, 2009 deadline for such motions. (*See* D.I. 57 at ¶ 3)

counterclaims.

The public's right to access is not absolute, however. *Id.* at 165. The presumption of public access may be overcome where the record supports the conclusion that "the interest in secrecy outweighs the presumption." *Id.* While the interest in secrecy is typically seen in terms of a party's interest in keeping secret "information that might harm [its] competitive standing[,]" *id.* at 166, the court, too, has an interest in secrecy where maintaining secrecy promotes the integrity of the judicial process.

It is clear from the record here that maintaining the amended answer and counterclaim under seal will promote the integrity of the judicial process. This litigation, like many, is part of a larger business dispute between competitors. Nevertheless, although related, there should always be a clear distinction made between the parties' conduct in the business world and the parties' conduct in the court.[7] It is the court's responsibility to make sure that that distinction is maintained, and that the parties show respect for each other and the judicial process, regardless of the larger business dispute.

While a detailed pleading generally is to be applauded, defendant's answer and counterclaims recites hearsay out of context from documents designated as confidential that may not otherwise ever be exposed to public scrutiny at trial. Defendant uses such materials not merely for purposes of its litigation strategy, but (were the pleading to be unsealed) in a larger public relations fight. Defendant seeks to inflame, not inform, and

---

[7]As an example, the hyperbole of a press release has no place in a pleading. (D.I. 169)

9

the attempted use of judicial process to accomplish that end is not to be tolerated. The court concludes, then, that its interest in maintaining the amended answer and counterclaims under seal overcomes the presumption of public access.

Therefore, defendant's motion to unseal is denied. Defendant may, if it chooses, withdraw its pleading and refile a pleading that contains more general allegations sufficient to give fair notice of its claim, consistent with Federal Rule of Civil Procedure 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## V. CONCLUSION

For the aforementioned reasons, the court grants defendant's motion to amend (D.I. 122) and denies defendant's motions to dismiss (D.I. 98) and unseal (D.I. 138). An appropriate order shall issue.