# EXHIBIT 152

# ClaimWorks®

## Forms and Correspondence Design Deliverable Packet

** Icon goes here **

The St Paul
ClaimWorks Development Team

EXHIBIT
16
11/28/09 N. Gisch

TRA00014500

Updated: 07/17/96 9:33 AM
File: 81T01!.DOC

Published by ClaimWorks Development Team
Copyright © 1996 St. Paul Fire and Marine Insurance Co. All Rights Reserved.

# Forms & Correspondence

## Design Deliverable Approval

| User Interface | Deliverable | Approval | Concerns / Issues |
|---|---|---|---|
| New Correspondence UI | | | |
| | · Application Information | | |
| | · Application Flow Diagram | | |
| | · Application Low-Fi User Interface | | |
| | · Application Functionality Definition | | |
| Search for Template UI | | | |
| | · Application Information | | |
| | · Application Flow Diagram | | |
| | · Application Low-Fi User Interface | | |
| | · Application Functionality Definition | | |
| | | | |
| Template Criteria | | | |
| | · Application Information | | |
| | · Application Flow Diagram | | |
| | · Application Low-Fi User Interface | | |
| | · Application Functionality Definition | | |
| | | | |
| Associate Template Fields | | | |
| | · Application Information | | |
| | · Application Flow Diagram | | |
| | · Application Low-Fi User Interface | | |
| | · Application Functionality Definition | | |
| | | | |
| Template Library | · Application Information | | |
| | · Application Flow Diagram | | |
| | · Application Low-Fi User Interface | | |
| | · Application Functionality Definition | | |
| | | | |

8/13/96



TRA00014502

GSJAPP005725

# Forms & Correspondence

## Design Deliverable Approval

| Object Model Subsystem/Object Name | Deliverable | Approval | Concerns / Issues |
|---|---|---|---|
| F & C Template Object | *This object represents the correspondence template* | | |
| | Object Attribute Description | | |
| F & C State Association | *This object represents the states to which the template applies* | | |
| | Object Attribute Description | | |
| F & C Line of Business Association | *This object represents the line of business to which the template applies* | | |
| | Object Attribute Description | | |
| F & C Supplement Type Association | *This object represents the supplement types to which the template applies* | | |
| | Object Attribute Description | | |
| | | | |

# Contents

**CONTENTS** ........ **3**

**PURPOSE OF THIS DOCUMENT** ........ **5**

**DESIGN OVERVIEW** ........ **6**
Scope ........ 6

**NEW CORRESPONDENCE** ........ **7**
Application Information ........ 7
Application Flow Diagram ........ 8
User Interface ........ 9
Application Functionality ........ 9

**SEARCH FOR TEMPLATE** ........ **10**
Application Information ........ 10
Application Flow Diagram ........ 11
User Interface ........ 12
Application Functionality Definition ........ 13

**EMPLATE CRITERIA** ........ **14**
Application Information ........ 15
Application Flow Diagram ........ 16
User Interface ........ 17
Application Functionality ........ 18

**ASSOCIATE TEMPLATE FIELDS** ........ **20**
Application Information ........ 20
Application Flow Diagram ........ 21
User Interface ........ 22
Application Functionality Definition ........ 23

**TEMPLATE LIBRARY** ........ **24**
Application Information ........ 24
Application Flow Diagram ........ 25
User Interface ........ 26
Application Functionality Definition ........ 27

**OBJECT ATTRIBUTES** ........ **28**
F & C Template ........ 28
F & C State Association ........ 28
F & C Line of Business Association ........ 28
F & C Supplement Type Association ........ 30
Memo - File Folder names ........ 31

**OPEN ISSUES AND BIGGER THAN PLAN LIST** .......... **32**
Template Maintenance .......... 32

# Purpose of this Document

This document has been created to communicate the functional design ideas of the Forms and Correspondence subsystem of the ClaimWorks project. The target audience is the ClaimWorks Business Consultants.

The entire functional design, including a scope statement, for Forms and Correspondence is included in this document. After reading and discussing this document, the IS Team will be asking for a sign-off in order to proceed with construction of the Forms and Correspondence subsystem.

# Design Overview

Forms and Correspondence is the component of ClaimWorks in which the end user will be able to create correspondence based on a pre-existing template. By selecting both a claim and a template, data from the claim will be leveraged on to the template. The user will be asked to select data to fill the template where the system cannot make the determination of which data is desired. The user will then proof read the resulting correspondence in MS Word and print or save the correspondence through the normal Word methods. A user may optionally create a correspondence without a claim in focus. Forms and Correspondence includes a utility allowing maintenance of the templates distributed with the system.

## Scope

Forms and Correspondence includes creation of Microsoft Word templates (these may be MS Word 'forms'). All data available for view in the ClaimWorks Claim Folder was considered for use on Forms and Correspondence, a determination was made by the Businsess Content team regarding Claim Folder data which would not be used on Forms and Correspondence . Currently creation of and maintenance of a 'Personal Template Library' is out of scope, although that concept is presented in this design.

# New Correspondence

If 'New Correspondence' is chosen from the ClaimWorks Desktop the user is first presented with the 'New Correspondence' window asking them for either a Claim number, a Tracking number, or indication that the correspondence they want to do is not for a claim.

## Application Information

| | |
|---|---|
| Application Class Name: | SpcCreateCorrUI |
| Modality: | Modal |
| Sub-canvas Only: | no |
| Standalone Window Only: | yes |
| Both sub-canvas and window: | no |
| Context on Open: | SpcUser |
| Available Off-line: | Yes |

**Purpose:**
Begin the process of creating a correspondence if a claim is not open.

**Overall Functionality:**
The UI prompts the user to enter a claim number or a tracking number for the subject of the correspondence, or allows the user to select 'no claim needed'. The OK button is enabled if the user has selected the claim number or tracking number radio button and has also entered a value, or if the user has indicated that no claim is needed. If the user selects OK, the Search for Template UI opens. If the user selects Cancel, the window closes and the user returns to the ClaimWorks Desktop.

g:\cissp\chu\deliver\work_mod\design\formcor\view\~WRO2518.doc
7/30/96

# Application Flow Diagram

Claim NOT in focus



# User Interface




# Application Functionality

| Create Correspondence Buttons | | | | |
|---|---|---|---|---|
| Button | | Description of Action | Subsequent window - name or description | Notes |
| Ok | | Close Window and go to Search for Template Window | Search for Template UI | |
| Cancel | | Close Window and go back to desktop | Desktop | |



TRA00014510

GSJAPP005733

# Search for Template

The first step during creation of a Correspondence is selection of the template to use. This window will display after the New Correspondence window (if from the desktop) and after selection of 'New' Correspondence from a claim folder.

## Application Information

| | |
|---|---|
| Application Class Name: | SpcSearchForTemplateUI |
| Modality: | Non-Modal |
| Sub-canvas Only: | no |
| Standalone Window Only: | yes |
| Both sub-canvas and window: | no |
| Context on Open: | SpcClaim or SpcSupplement or SpcUser |
| Available Off-line: | Yes |

### Purpose:

Allows user to select a correspondence/form template that the user wants to use to create a document.

### Overall Functionality:

If user enters the window with a claim or supplement in focus, the upper portion of the window will be filled with claim/supplement
data that provides the user a starting searching point for the template that they want to use (line of Business, Jurisdiction and Supplement Type (if applicable). The user can then change the Line of Business, Supplement Type, or the Jurisdiction , or enter in the template name and/or an effective for date to get a different list of templates filtered by these selections. The user also selects whether the list of templates should come from the ClaimWorks library of from the user's personal template library (default is ClaimWorks). The bottom portion of the window presents the user with a list of template folders on the left. When the user selects a folder, a list of template titles will be displayed on the right (like file manager). The user can change any of the filter criteria in the top portion or enter in the template name to get a list of folders and templates filtered by these selections. The user can double click on the template, or single click on the template and then select the Ok button, to begin the process of leveraging data from the system into the template. The user can also select a template and look at that template's Criteria, or can close the window.

# Application Flow Diagram






TRA00014512

GSJAPP005735

## User Interface

Title: Search for Template Claim#: 1000



# Application Functionality Definition

| Search for Template Buttons | | | |
|---|---|---|---|
| Button | Description of Action | Subsequent window - name or description | Notes |
| Find Now | Get the template(s) that apply to the selected Line of Business, the selected Jurisdiction, the selected library(personal or ClaimWorks) and, if applicable, the effective for date and the entered title | None | |
| New Search | Clears the search criteria so a new search can be entered. | None | |
| OK | Use the selected template | Associate Template Fields UI | |
| Cancel | Close window and return to either Claim Folder or Desktop, depending on how this window was started. | | |

# Template Criteria

If 'View Criteria' is chosen when selecting a template this window will display the criteria for the current template and not allow changes. Several options on the Template Library window will present this window: Edit Criteria - allows changes to the criteria of an existing template, New Template - allows entry of criteria for a new template, Copy Existing displays the criteria of the existing template and allows changes to be saved with the new template.

## Application Information

\pplication Class Name: SpcTemplateCriteriaUI
Modality: Non-Modal
Sub-canvas Only: no
Standalone Window Only: yes
Both sub-canvas and window: no
Context on Open: SpcCorrespondenceTemplate
Available Off-line: Yes

### Purpose:

Allows the user to create, edit, or view the details/criteria of a ClaimWorks registered Template.

### Overall Functionality:

This UI allows for the user to enter or update information about the ClaimWorks registered template that define where/when it is to be used. The information on this screen is as follows: The template Library to which this template belongs (ClaimWorks - available only when the user is a template administer, or Personal), the Folder in which the template is to be kept, the Title of the template, the time period for which the template is valid (Effective and Expiration dates), and the Line(s) of Business, Supplement Type(s) and Jurisdiction(s) to which the template applies.

If the user enters this UI from the *New Template...* on the Template Library, this screen is the first step in creating a ClaimWorks registered template. The Template Criteria window opens with the library defaulted to "Personal library", the Folder defaulted to "Personal" and the 'ffective Date defaulted to today's date. The user fills out the information for the template and selects *Go To Template...* to go into Word to create the template. If the user has not entered a title or selected the Line(s) of Business, Supplement Type(s) and Jurisdiction(s) a dialog will come up reminding the user to enter this information before proceeding. If the user selects close, the changes are not saved and the user returns to the Template Library.

If the user enters this UI from the *Copyt Existing...* or *Edit Criteria...*on the Template Library, the criteria of the selected template is displayed. The user can change any information on the criteria. If the user selects *View Template...* Word opens with the selected template. If the user selects Save (invisible when copying an existing template), the updates to the criteria are saved and the user returns to the Template Library. If the user selects *Close* , and changes have been made, a dialog box asks if the user wants to save the changes. If no changes were made, the user returns to the Template Library.

If the user is viewing the criteria of an existing template from Search for Template, the information in the Template Criteria UI is read only and the *Save* button is disabled. If the user selects *Go To Template...* Word opens with the selected template as read only. If the user selects *Close* the user returns to Search for Template.

# Application Flow Diagram




g:\cissp\chu\deliver\work_mod\design\formcors\view\temppro.vsd

## User Interface

View when Creating Correspondence, Apply button is disabled- the criteria may not be changed.

Title: Template Criteria



View from Template Library, criteria may be changed.

Title: Template Criteria




## Application Functionality



TRA00014519

GSJAPP005742

## Template Criteria

| Button | Description of Action | Subsequent window - name or description | Notes |
|---|---|---|---|
| Go to Template... | Open MS Word with the selected template | MS Word | |
| OK | Save the criteria and close the window. | Template Library | |
| Cancel | Close window | Template Library or Search for Template (wherever the user had entered) | |

# Associate Template Fields

Once a template has been selected the data needed to fill that template is obtained from the Claim, the Associate Template Fields window displays the data that will be leveraged onto the template and allows selection of data values where there is more than one possible value assocated with the claim.

## Application Information

| | |
|---|---|
| Application Class Name: | SpcAssociateTemplateFieldsUI |
| Modality: | Modal |
| Sub-canvas Only: | no |
| Standalone Window Only: | yes |
| Both sub-canvas and window: | no |
| Context on Open: | SpcClaim or SpcSupplement or SpcUser *and* |
| SpcCorrespondenceTemplate | |
| Available Off-line: | Yes |

### Purpose:

Allows user to view and/or change the data (field values) that will be leveraged for the template fields on the selected template

### Overall Functionality:

The UI displays any associations that were made between the template field and the information stored in ClaimWorks (field value). The UI also displays any template fields that did not get associated (i.e. claimant Name ) and a list of possible leveragable data ( i.e. claimant:Jane Smith, claimant:John Smith) from which the user may choose. The user may associate a template field with a field value, unassociate the template field with its field value, or the user may also view the participant list to associate a field value from the entire participant list with a template field if there is a claim or supplement as context

In addition, the user can select multiple Ccs, Bccs or Addressees if there is a claim or supplement as context.

# Application Flow Diagram




g:\cissp\chu\deliver\work_mod\design\formcors\wew\asfields.vsd



TRA00014522

GSJAPP005745

# User Interface



# Application Functionality Definition

| Associate Template Fields Buttons | | | |
|---|---|---|---|
| Button | Description of Action | Subsequent window - name or description | Notes |
| Associate | Add the selected association to be leveraged into MS Word for this correspondence | None | |
| Unassociate | Remove the selected association to be leveraged into MS Word for this correspondence | None | |
| View Participant List... | Open the participant list to select a participant name, address or phone number to be associated with a template's Field. | Participant List | |
| OK | Open Word with the selected associations leveraged into the key fields on the selected template. | MsWord | |
| Cancel | Close window | Select Correspondence Template | |

# Template Library

Provides a way to view information about all of the templates in the system and provides a way to maintain the template library.

## Application Information

| | |
|---|---|
| Application Class Name: | SpcTemplateLibraryUI |
| Modality: | Non- Modal |
| Sub-canvas Only: | no |
| Standalone Window Only: | yes |
| Both sub-canvas and window: | no |
| Context on Open: | SpcUser |
| Available Off-line: | Yes |

### Purpose:

Allows user to create, modify or delete a correspondence template.

### Overall Functionality:

The top portion of the UI represents filters for looking through the template library. Upon entering this UI, the Line of Business, Jurisdiction and Supplement Type are defaulted to 'All', the library is defaulted to 'ClaimWorks Library' and the Effective for Date and Title are blank. The "Library" in the bottom portion of the UI displays all Folders in the ClaimWorks Library (no Folder has been selected).

The bottom portion of the window presents the user with a list of template folders on the left. When the user selects a folder, a list of template titles will be displayed on the right (like file manager). The user can change any of the filter criteria in the top portion or enter in the template name to get a list of folders and templates filtered by these selections.

From the Template Library, the user can create a new template, create and edit a copy of an existing template, edit the criteria of an existing template, view an existing template in MS Word, or delete a template (if the user has the authority to delete the selected template).

g:\cissp\chu\deliver\work_mod\desing\formcor\view\master.doc
8/6/96

page 1



TRA00014525

GSJAPP005748

# Application Flow Diagram



# User Interface

Title: Template Library



# Application Functionality Definition

## Correspondence Template Library Buttons

| Button | Description of Action | Subsequent window - name or description | Notes |
|---|---|---|---|
| Search | Get the template(s) that apply to the selected library(personal or office, the selected Line of Business, the selected Supplement Type, the selected Jurisdiction, and, if entered, the Title and the Effective For Date | None | |
| New Template... | Create a new template | Template Criteria I | Criteria window has 'Go To Template' and 'Close' buttons only |
| Copy Existing... | Make a copy of an existing template and edit it. | Template Criteria I | Criteria window has 'Go To Template' and 'Close' buttons only |
| Edit Criteria... | Edit the criteria for the selected template | Template Criteria II | Criteria window has 'Save', 'Go To Template', and 'Close' buttons |
| Go To Template... | Open MS Word with the selected template | MS word | |
| Delete | Remove the selected template from the template library | Confirm Delete dialog box. | |
| Cancel | Close the window | ClaimWorks Desktop | |

Object Attribute Description
F & C - Template

| Subsystem: Correspondence | Object: Template | | | System(s) which can update the data | Is data kept in synch with Ace | Is this read-only, only enabled under certain conditions, etc? | Valid values for this attribute, if applicable | Validation Rules for this attribute | Validation rules between this attribute and other attributes | |
|---|---|---|---|---|---|---|---|---|---|---|
| Attribute Name | Attribute Description | Type | Length | Write Capabilities | Data Synch with ACE | Enablement | Valid Entries | Validation Rules | X-field Validation Rules | Notes |
| templateIDName | The unique identifier for a template. This will be randomly generated by the system. | string | 20 | Correspondence Subsystem | No | | | | | |
| templateTitle | The title of the template | string | 255 | Correspondence Subsystem | No | Read-only; can change when doing maintenance to template | not unique | | | |
| fileName | The MS Word filename | string | 8 | Correspondence Subsystem | No | | | | | Currently path is being stored in this attribute as well but it will be stored in a configuration object/file for implementation. |
| templateFolderName | The folder that the template belongs to. This folder allows templates to be stored in logical groups | string | 30 | Correspondence Subsystem | No | | 26 predefined folders. See July 11 memo from Ann, Bill, and Kathy | | | |
| states | Run-time collection of State Associations | codes table objects | | Correspondence Subsystem | No | | NA (Not Applicable) and all valid states | | | |
| lineOfBusinessNames | Run-time collection of Line of Business Associations | codes table objects | | Correspondence Subsystem | No | | NA (Not Applicable) and all valid LOB's | | | Even lines of business not implemented in ClaimWorks are valid selections here. |
| supplementTypeCodes | Run-time collection of Supplement Type Associations | codes table objects | | Correspondence Subsystem | No | Supplement type is not enabled until LOB (Line of Business) is selected | NA (Not Applicable) and all valid supplement types | | LOB is required and validated | |
| effectiveDate | First day that the template should be made available to users | date | | Correspondence Subsystem | No | | Any valid date greater then or equal to today's date | | | |
| expirationDate | The last day the form is applicable | date | | Correspondence Subsystem | No | | This is optional, but must be greater than or equal to the effective date | | | |
| Owner | ClaimWorks or performer identifier that owns the template If not ClaimWorks then this is the foreign key reference to the performer object | string | 15 | ClaimWorks | No | | "ClaimWorks" or userID | | | |
| below this line -- not yet implemented | | | | | | | | | | |

27

82B01!.X

TRA00014529

F & ate Assoc.

| Subsystem: Correspondence | Object: State Association | | | System(s) which can update the data | Is data kept in synch with Ace | Is this read-only, only enabled under certain conditions, etc? | Valid values for this attribute, if applicable | Validation Rules for this attribute | Validation rules between this attribute and other attributes | |
|---|---|---|---|---|---|---|---|---|---|---|
| Attribute Name | Attribute Description | Type | Length | Write Capabilities | Data Synch with ACE | Enablement | Valid Entries | Validation Rules | X-field Validation Rules | Notes |
| templateIDName | The unique identifier for a template. This is the foreign key reference to the F&C Template object | string | 20 | Correspondence Subsystem | No | | | | | |
| stateCode | Jurisdiction that applies for the template | code | | ClaimWorks | No | | US States, US Territories, Canadian Provinces | | | |
| below this line -- not yet implemented | | | | | | | | | | |



28

TRA00014530

GSJAPP005753

F & C - Line of Business Assoc.

| Subsystem: Correspondence | Object: Line of Business Association | | | System(s) which can update the data | Is data kept in synch with Ace | Is this read-only, only enabled under certain conditions, etc? | Valid values for this attribute, if applicable | Validation Rules for this attribute | Validation rules between this attribute and other attributes | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Attribute Name** | **Attribute Description** | **Type** | **Length** | **Write Capabilities** | **Data Synch with ACE** | **Enablement** | **Valid Entries** | **Validation Rules** | **X-field Validation Rules** | **Notes** |
| templateIDName | The unique identifier for a template. This is the foreign key reference to the F&C Template object | string | 20 | Correspondence Subsystem | No | | | | | |
| lineOfBusinessCode | The line of business (ACE FNOL type) that the template applies to | code | | Correspondence Subsystem | No | | Auto, Bond, Work Comp, Medical Professional, Other Professional, G/L, Ocean, Property | | | |
| below this line -- not yet implemented | | | | | | | | | | |



29

TRA00014531

F&C - Su[illegible]nt Type Assoc.

| Subsystem: Correspondence | Object: Supplement Type Association | | | System(s) which can update the data | Is data kept in synch with Ace | Is this read-only, only enabled under certain conditions, etc? | Valid values for this attribute, if applicable | Validation Rules for this attribute | Validation rules between this attribute and other attributes | |
|---|---|---|---|---|---|---|---|---|---|---|
| Attribute Name | Attribute Description | Type | Length | Write Capabilities | Data Synch with ACE | Enablement | Valid Entries | Validation Rules | X-field Validation Rules | Notes |
| templateIDName | The unique identifier for a template. This is the foreign key reference to the F&C Template object | string | 20 | Correspondence Subsystem | No | | | | | |
| supplementTypeCode | Represents the type of supplement this is (BI, PD, etc) equivalent to Ace's claim category | code | | Util (Until FNOL) then Ace | Yes | | Per Table (Supplement Type Codes Table) and NA | | Cross-field with ACE; Valid entries for LOB | |



30

TRA00014532

GSJAPP005755

**The St Paul**

**DATE:** July 12, 1996

**TO:** Barb Kramer, Laura Lewin

**FROM:** Ann Burkholder, Bill Davis, Kathy Seaton

**SUBJECT:** Search/Select Criteria and Folders for Forms and Correspondence in ClaimWorks

---

The criteria for searching/selecting forms/correspondence is to be:

- Line of Business, i.e. Auto, Bond, Work Comp, Medical Professional, Other Professional, General Liability, Ocean, and Property.
- State,
- Supplement Type (Claim Category), and
- Form/Correspondence Title (wildcard search acceptable).

None of the above criteria is to be mandatory. If the field wants all forms in library, they should have a way to have them all presented to them. The forms and correspondence that satisfy the selected/search criteria should be stored in one of the following folders:

<u>File Folder Names</u>

Auto Property Loss - NOC
Blank Template
Checkbox
CMS/MCC (Bill Review)
Compliance
Contact Letters
Coverage
Deductible
Denial
Employment/Wage Info
Fraud
IME
Information/Report Request
Internal Report/Summary
Litigation
Medical
Non-Claim Specific
PIP
Recovery
Releases
Salvage
Settlement
State and Federal Reporting
Statement/Proof of Loss
Work Comp State forms - including Cover letters
 - can be abbreviated as: WC ST FORMS INCL COVER LETTERS
Personal (available for field use only)

A form/correspondence will belong to only one folder.
A form/correspondence can apply to more than one line of business.
A form/correspondence can apply to more than one state.
A form/correspondence can apply to more than one supplement type..

cc: Business Content Team

31

# Open Issues and Bigger Than Plan List

## Template Maintenance

Forms and Correspondence supports the following 'scenarios' for template maintenance:

In all cases the Template criteria window will default to 'ClaimWorks Library' if the current user is the administrator, it will default to 'Personal Library' if not, in addition the 'Folder' field will default to 'Personal' for users other than the administrator.

- Create Template from scratch:
  From Template Library window choose "New Template" button
  Template Criteria window displays - it is blank except effective date = today
  Folder - shows the first one in the list

  There are two active buttons on this window: To Template - goes to Word with the "blank" template, Cancel ends the process.
  After Save in Word the system returns to the Template Library window.

- Create New from Existing (the existing template is defined in ClaimWorks)
  From Template Library enter search criteria to find the one to start with, select the 'starting' template
  Choose "Copy Existing"

  Template Criteria window defaults to the criteria of the original template, effective date = today.

  To Template button goes to Word with selected template, in Word Save is disabled - you must do a "Save As" in this case - this prevents you from overlaying the old template.

- Change Existing Template:
  - Change Criteria Only:

  From Template Library enter search criteria to find the one to edit, select the template
  Choose Edit Criteria button.

  Opens Template Criteria window displaying the current criteria for this template.
  They change the criteria. At this point they may either select Save, or To Template - Even though they entered the system to change criteria they may change the template.

  - Edit Template Only:

  From Template Library enter search criteria to find the one to edit, select the template
  Choose To Template button.

  Word opens with the template selected. Save As option is disabled.

- Load from Existing Template - (not in ClaimWorks)
  From Desktop - Correspondence - Load Template
  Goes directly to Template Criteria window. - 2 buttons - To Template and Cancel
  They will enter the criteria for the template they are loading. - see Create Template for defaults and initial values.

When they choose To Template button Word is opened - and the Word Open dialog is presented - they may choose the drive containing the existing template and the file name. Word opens that template and gives them the palette of tag fields -- In Word 'Save' is disabled - they must use Save As which will default the drive to the drive where ClaimWorks templates are stored.

# EXHIBIT 153

1 Flw

CERTIFICATE OF MAILING UNDER 37 C.F.R. §1.8

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail, with sufficient postage, in an envelope addressed to: Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450, on the below date:

Date: July 11, 2005 Name: Marc V. Richards (37,921) Signature: [signature]

BRINKS HOFER GILSON & LIONE

OIPE JC10 JUL 13 2005 PATENT & TRADEMARK OFFICE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Appln. of: George Victor Guyan et al.

Appln. No.: 11/017,086

Filed: December 20, 2004

For: Component Based Interface to Handle Tasks During Claim Processing

Attorney Docket No: 10022/395

Examiner: N/A

Art Unit: 3747

Commissioner for Patents
P. O. Box 1450
Alexandria, VA 22313-1450

## TRANSMITTAL

Sir:

**Attached is/are:**

- ☒ Supplemental Information Disclosure Statement; Form PTO-1449
- ☒ Return Receipt Postcard

**Fee calculation:**

- ☒ No additional fee is required.
- ☐ Small Entity.
- ☐ An extension fee in an amount of $_____ for a _____-month extension of time under 37 C.F.R. § 1.136(a).
- ☐ A petition or processing fee in an amount of $_____ under 37 C.F.R. § 1.17(_____).
- ☐ An additional filing fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | | Small Entity Rate | Small Entity Add'l Fee | or | Not a Small Entity Rate | Not a Small Entity Add'l Fee |
|---|---|---|---|---|---|---|---|---|---|---|
| Total | | Minus | | | | x $25= | | | x $50= | |
| Indep. | | Minus | | | | x 100= | | | x $200= | |
| First Presentation of Multiple Dep. Claim | | | | | | +$180= | | | + $360= | |
| | | | | | | Total | $ | | Total | $ |

**Fee payment:**

- ☐ A check in the amount of $_____ is enclosed.
- ☐ Please charge Deposit Account No. 23-1925 in the amount of $ . A copy of this Transmittal is enclosed for this purpose.
- ☐ Payment by credit card in the amount of $_____ (Form PTO-2038 is attached).
- ☒ The Director is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this paper (including any extension fee required to ensure that this paper is timely filed), or to credit any overpayment, to Deposit Account No. 23-1925.

Respectfully submitted,

7-11-05
Date

[signature]
Marc V. Richards (Reg. No. 37,921)

JUL 1 3 2005 JC10 PATENT & TRADEMARK OFFICE

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Appln. of: George Victor Guyan ET AL.

Appln. No.: 11/017,086

Filed: December 20, 2004

For: Component Based Interface to Handle Tasks During Claim Processing

Attorney Docket No: 10022/395

Examiner: N/A

Art Unit: 3747

## SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

In accordance with the duty of disclosure under 37 C.F.R. §1.56 and §§1.97-1.98, and more particularly in accordance with 37 C.F.R. §1.97(b), Applicants hereby cite the following reference(s):

**U.S. Patents**

| No. | Date of Publication | Patentee/Applicant/Assignee |
|---|---|---|
| 4,831,526 | 05/16/1989 | Luchs et al. |
| 5,839,112 | 11/17/1989 | Schreitmueller et al. |
| 5,855,005 | 12/29/1989 | Schuler et al. |
| 5,873,066 | 02/16/1999 | Underwood et al. |
| 2003/0009357 A1 | 01/09/2003 | Pish |

Applicants are enclosing Form PTO-1449 (one sheet), along with a copy of each listed reference for which a copy is required under 37 C.F.R. §1.98(a)(2). As each of the listed references is in English, no further commentary is believed to be necessary, 37 C.F.R §1.98(a)(3). Applicants respectfully request the Examiner's consideration of the above reference(s) and entry thereof into the record of this application.

By submitting this Statement, Applicants are attempting to fully comply with the duty of candor and good faith mandated by 37 C.F.R. §1.56. As such, this Statement is not intended to constitute an admission that any of the enclosed references, or other information referred to therein, constitutes "prior art" or is otherwise "material to patentability," as that phrase is defined in 37 C.F.R. §1.56(a).

Applicants have calculated no fee to be due in connection with the filing of this Statement. However, the Director is authorized to charge any fee deficiency associated with the filing of this Statement to a deposit account, as authorized in the Transmittal accompanying this Statement.

Respectfully submitted,

7-11-05

Date

Marc V. Richards (Reg. No.37,921)

OIPE JUL 1 3 2005 PATENT & TRADEMARK OFFICE

| FORM PTO-1449 | SERIAL NO. 11/017,086 | CASE NO. 10022/395 |
|---|---|---|
| **LIST OF PATENTS AND PUBLICATIONS FOR APPLICANT'S INFORMATION DISCLOSURE STATEMENT** | FILING DATE December 20, 2004 | GROUP ART UNIT 3747 |
| (use several sheets if necessary) | APPLICANT(S): George Victor Guyan et al. | |

**REFERENCE DESIGNATION U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | | DOCUMENT NUMBER Number-Kind Code (if known) | DATE | NAME | CLASS/ SUBCLASS | FILING DATE |
|---|---|---|---|---|---|---|
| | B1 | 4,831,526 | 05/16/1989 | Luchs et al. | | |
| | B2 | 5,839,112 | 11/17/1989 | Schreitmueller et al. | | |
| | B3 | 5,855,005 | 12/29/1989 | Schuler et al. | | |
| | B4 | 5,873,066 | 02/16/1999 | Underwood et al. | | |
| | B5 | 2003/0009357 A1 | 01/09/2003 | Pish | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

# EXHIBIT 154

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| Request for Ex Parte Reexamination | § | REQUEST FOR EX PARTE |
| | § | REEXAMINATION |
| U.S. Patent No. 7,013,284 | § | |
| | § | |
| Issued: Mar. 14, 2006 | § | Attorney Docket No.: |
| | § | 008457.L001 |
| | § | |
| For: Component Based Interface To Handle | § | |
| Tasks During Claim Processing | § | Customer No.: 8791 |
| | § | |
| Requester: Guidewire Software, Inc. | § | |

**REQUEST FOR EX PARTE REEXAMINATION UNDER 35 U.S.C. §§ 302-307**

Mail Stop *Ex Parte* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450
Dear Sir:

Pursuant to the provisions of 35 U.S.C. §§ 302-307 (2002), the undersigned, on behalf of Guidewire Software, Inc. ("Guidewire"), the real party in interest, hereby requests an *Ex Parte* reexamination of claims 1-22 (all of the claims) of United States Patent No. 7,013,284 ("the '284 patent," Exhibit A) that issued on Mar. 14, 2006 to Guyan et al., resulting from a patent application filed on May 4, 1999. The Requester hereby asserts that claims 1-22 of the '284 patent are invalid over a prior art reference (previously considered by the Patent Office, but not fully appreciated) individually and in combinations with other prior art references (some of which were not previously considered by the Patent Office).

The '284 patent is the subject of pending litigation; namely, Accenture Global Service GmbH and Accenture LLP. v. Guidewire Software, Inc., Case No. 07-826 (SLR), District of Delaware (the "Guidewire Litigation"). In the context of the present request,

the standard provided in M.P.E.P. §§ 2111 and 2258 for claim interpretation during patent reexamination applies, even though a different standard may be used in litigation.[1]

A voluntary divisional of the '284 patent is still pending (U.S. Patent Application No. 11/017,086; referred to herein as the voluntary divisional '086 application).

**TABLE OF CONTENTS**

**I. SUBSTANTIAL NEW QUESTION (SNQ) OF PATENTABILITY ..................................... 4**

A. IDENTIFICATION OF CLAIMS AND REFERENCES ................................................................. 4
B. DESCRIPTION OF THE '284 PATENT.................................................................................. 5
C. STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY ................. 8
1. *SNQs Raised by Abbruzzese ................................................................................ 8*
2. *SNQ Raised by the Combination of Abbruzzese and Walker ........................... 11*
3. *SNQ Raised by the Combination of Abbruzzese and Borghesi......................... 12*
4. *SNQ Raised by the Combination of Abbruzzese and Schreitmueller................ 14*
5. *SNQ Raised by the Combination of Abbruzzese and Kwang ............................ 15*
6. *SNQ Raised by the Combination of Abbruzzese, Walker, and Kwang ............. 15*
7. *SNQ Raised by the Combination of Abbruzzese, Borghesi, and Kwang ........... 16*
8. *SNQ Raised by the Combination of Abbruzzese, Schreitmueller, and Kwang... 16*

**II. DETAILED EXPLANATION OF THE PERTINENCY AND MANNER OF APPLYING THE PRIOR ART REFERENCES TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED 17**

A. PROPOSED REJECTIONS ........................................................................................ 18
1. *Claims 1-12, 14-19, and 21-22 are anticipated by Abbruzzese. ....................... 18*
2. *Claims 1-22 are obvious over Abbruzzese....................................................... 18*
3. *Claims 1-22 are obvious over Abbruzzese in view of Walker........................... 18*
4. *Claims 1-22 are obvious over Abbruzzese in view of Borghesi. ........................ 18*
5. *Claims 1-22 are obvious over Abbruzzese in view of Schreitmueller. .............. 18*
6. *Claims 1-22 are obvious over Abbruzzese in view of Kwang. .......................... 18*
7. *Claims 1-22 are obvious over Abbruzzese in view of Walker in view of Kwang. 18*
8. *Claims 1-22 are obvious over Abbruzzese in view of Borghesi in view of Kwang. 18*

[1] The Requester expressly reserves the right to argue a different claim construction in the Guidewire litigation.

*9. Claims 1-22 are obvious over Abbruzzese in view of Schreitmueller in view of Kwang.* ... *18*
B. REJECTIONS BASED ON ABBRUZZESE ... 18
*1. Anticipation Rejections* ... *18*
i. Independent Claim 1 ... 19
ii. Independent Claim 8 ... 33
iii. Dependent Claim 2 ... 44
iv. Dependent Claim 3 ... 45
v. Dependent Claim 4 ... 46
vi. Dependent Claim 5 ... 46
vii. Dependent Claim 6 ... 47
viii. Dependent Claim 7 ... 47
ix. Dependent Claim 9 ... 48
x. Dependent Claim 10 ... 49
xi. Dependent Claim 11 ... 49
xii. Dependent Claim 12 ... 51
xiii. Dependent Claim 14 ... 53
xiv. Dependent Claim 15 ... 56
xv. Dependent Claim 16 ... 59
xvi. Dependent Claim 17 ... 61
xvii. Dependent Claim 18 ... 64
xviii. Dependent Claim 19 ... 65
xix. Dependent Claim 21 ... 67
xx. Dependent Claim 22 ... 70
*2. Obviousness Rejections* ... *71*
i. Independent Claims 1 and 8 ... 72
ii. Dependent Claims 2-12, 14-19, and 21-22 ... 75
iii. Dependent Claim 13 ... 75
iv. Dependent Claim 20 ... 76
C. REJECTIONS BASED ON A COMBINATION WITH ABBRUZZESE ... 77
*1. Combination of Abbruzzese and Walker* ... *77*
i. Limitations Except Portions [1.2]-[1.3] and [8.4]-[8.5] of Claims 1 and 8 ... 77
ii. Portions [1.2]-[1.3] of Claim 1 ... 78
iii. Portions [8.4]-[8.5] of Claim 8 ... 83
iv. The Combination of Abbruzzese and Walker is Supported in Law ... 88
*2. Combination of Abbruzzese and Borghesi* ... *89*
i. Limitations Except Portions [1.2]-[1.3] and [8.4]-[8.5] of Claims 1 and 8 ... 89
ii. Portions [1.2]-[1.3] of Claim 1 ... 89
iii. Portions [8.4]-[8.5] of Claim 8 ... 92
iv. The Combination of Abbruzzese and Borghesi is Supported in Law ... 94
*3. Combination of Abbruzzese and Schreitmueller* ... *96*
i. Limitations Except Portions [1.2]-[1.3] and [8.4]-[8.5] of Claims 1 and 8 ... 96
ii. Portions [1.2]-[1.3] of Claim 1 ... 96
iii. Portions [8.4]-[8.5] of Claim 8 ... 99

iv. The Combination of Abbruzzese and Schreitmueller is Supported in Law. 102
*4. Combination of Abbruzzese and Kwang* ........ *103*
i. Rejections of Claims 1 and 8 ........ 103
ii. Independent Claim 1 ........ 103
iii. Independent Claim 8 ........ 115
iv. Rejections of Claims 2-7 and 9-22 ........ 122
v. The Combination of Abbruzzese and Kwang is Supported in Law ........ 122
*5. Combination of Abbruzzese, Walker, and Kwang* ........ *123*
i. Rejections of Claims 1-22 ........ 123
ii. The Combination of Abbruzzese, Walker, and Kwang is Supported in Law 123
*6. Combination of Abbruzzese, Borghesi, and Kwang* ........ *123*
i. Rejections of Claims 1-22 ........ 123
ii. The Combination of Abbruzzese, Borghesi, and Kwang is Supported in Law 124
*7. Combination of Abbruzzese, Schreitmueller, and Kwang* ........ *124*
i. Claim Rejections ........ 124
ii. The Combination of Abbruzzese, Schreitmueller, and Kwang is Supported in Law 124
**III. LIST OF EXHIBITS ........ 125**
**IV. CONCLUSION ........ 126**

## I. SUBSTANTIAL NEW QUESTION (SNQ) OF PATENTABILITY

In Section I.A, below, a list of the claims and prior art references relied upon in the present request, including references that were not previously cited or considered by the Patent Office, is set out. By way of an overview, Section I.B provides a description of the '284 patent. Each SNQ of patentability in the present request is explained in Section I.C.

### A. Identification of Claims and References

Reexamination of claims 1-22 (all of the issued claims) of the '284 patent is requested in view of the following references:

Exhibit B — U.S. Patent No. 5,557,515 issued to Abbruzzese, et al. ("Abbruzzese"), which issued on September 17, 1996 and is prior art to the '284 patent under 35 U.S.C. § 102(b).

Exhibit C U.S. Patent No. 6,937,990 issued to Walker, et al. ("Walker"), which has a priority date of July 1, 1997 and is prior art to the '284 patent 35 U.S.C. § 102(e).

Exhibit D U.S. Patent No. 5,950,169 issued to Borghesi, et al. ("Borghesi"), which has a filing date of November 9, 1995 and is prior art to the '284 patent under 35 U.S.C. § 102(e).

Exhibit E U.S. Patent No. 5,839,112 issued to Schreitmueller, et al. ("Schreitmueller"), which issued on November 17, 1998 and is prior art to the '284 patent under 35 U.S.C. § 102(b).

Exhibit F U.S. Patent No. 5,862,327 issued to Kwang, et al. ("Kwang"), which issued on January 19, 1999 and is prior art to the '284 patent under 35 U.S.C. § 102(b).

**B. Description of the '284 Patent**

The '284 patent pertains to "handling task[s] during insurance claim processing utilizing a computer system."[2] The Background of the Invention of the '284 patent describes the movement of object oriented programming (OOP) toward the "mainstream of software design" and that "OOP is a process of developing computer software using objects."[3] It goes on to state that each object "can be visualized as a self-sufficient component" and performs a "specific task."[4] (emphasis added).

The Summary of the Invention states that a "computer program is provided for developing component based software capable of handling insurance-related tasks."[5] (emphasis added). Thus, the Background of the Invention and Summary of the Invention establish a backdrop for describing the use of OOP for software that handles insurance-related tasks. Moving beyond this backdrop of the '284 patent proves challenging because, as noted by the Patent Office, the specification of the '284 patent is "nearly incomprehensible when viewed for subject matter pertaining to the claimed

---

[2] '284 patent, Field of Invention.
[3] '284 patent, col.1 ll.41-42.
[4] *See* '284 patent, col.1 ll.45-49. *See also* '284 patent, col.1 ll.49-52 ("OOP ... views a computer program as a collection of largely autonomous components, called objects, each of which is responsible for a specific task.").
[5] '284 patent, col.3 ll.24-26.

invention;" "there is no clear relationship between the claimed software application and the extraneous subject matter in the specification;" and "[t]he large volume of extraneous material is misleading as to what the invention (as claimed) encompasses."[6] The '284 patent goes on to purportedly describe a software program to assist an insurance company with insurance claim processing. For instance, after an insured submits a claim for processing, the '284 patent purportedly describes the tasks of generating a claim for the insured with the details of the event giving rise to the claim, the claimants, the coverage of the insured under their policy, etc.

The original claims in the application resulting in the '284 patent ("the '284 application") were directed at insurance claim processing in an OOP environment.[7] That OOP had been used to write many software applications with objects responsible for performing all types of tasks before the filing of the '284 application is well recognized.[8] Thus, it is not surprising that the original claims in the '284 application were rejected.[9]

---

[6] *See* '284 patent file history, Office Action, pages 2-3 (Aug. 14, 2002) (We also note the applicants affirmatively stated that they would review the specification at allowance (*see* Response, page 3 (Nov. 14, 2002)) and the first examiner withdrew his objection to the specification because of this promise (*see* Office Action, page 9 (Dec. 20, 2002)). No amendments were made to the specification at allowance.).

[7] *See* '284 patent file history, '284 application as filed.

[8] For example, the Background of the Invention states that:

> Object oriented programming (OOP) has become increasingly used to develop complex applications. …
>
> [A]n object can represent just about anything in the real world. In fact, the logical perception of the reality is the only limit on determining the kinds of things that can become objects in object-oriented software. Some typical categories are as follows: Objects can represent physical objects, such as automobiles in a traffic-flow simulation, electrical components in a circuit-design program, countries in an economics model, or aircraft in an air-traffic-control system. Objects can represent elements of the computer-user environment such as windows, menus or graphics objects. An object can represent an inventory, such as a personnel file or a table of the latitudes and longitudes of cities. An object can represent user-defined data types such as time, angles, and complex numbers, or points on the plane. With this enormous capability of an object to represent just about any logically separable matters, OOP allows the software developer to design and implement a computer program that is a model of some aspects of reality, whether that reality is a physical entity, a process, a system, or a composition of matter. Since the object can represent anything, the software developer can create an object which can be

As a result, the applicants rewrote the claims to be more narrowly focused on the use of an insurance transaction database and a task engine for insurance claim processing.[10] However, software for processing insurance claims in this manner was developed before the filing of the '284 application and the rewritten claims were also rejected.[11] Ultimately, a dependent claim directed at the structure of the insurance transaction database lead to the allowance of the application. The Notice of Allowance identified the reason for allowance as "an insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format."[12] As will be discussed, the prior art describes software including structured insurance transaction databases for handling insurance-related tasks such as claim processing.[13] Structured insurance databases were well-known prior to the filing of the '284 patent, both in general[14] and for use in the insurance industry.[15]

The TSM (teach suggestion, and motivation) test was used for determining obviousness of in the '284 application. In KSR the Supreme Court repudiated a strict adherence to TSM. Had KSR been the standard, and the cited references understood, the '284 patent would not have issued.[16]

---

used as a component in a larger software project in the future. '284 patent, col. 1 line 33 to col.3 line 4.

[9] *See* '284 patent file history, Office Action (Dec. 3, 2001).

[10] *See* '284 patent file history, Response (May 31, 2002).

[11] *See* '284 patent file history, Office Action (Aug. 14, 2002).

[12] '284 patent file history, Notice of Allowance, page 3 (Oct. 27, 2004) (This limitation, with minor modifications, appears in both of the independent claims of the '284 patent. The claim folder description first appears at col.83 of the '284 patent.).

[13] For that matter, physical insurance files were stored in filing cabinets, each of the filing cabinets' drawers was labeled, each file in each drawer was labeled, etc.

[14] *See e.g.*, E.F. Codd, *Extending the Database Relational Model to Capture More Meaning*, ACM Transactions on Database Systems, Vol. 4 Nov. 4, 397-434 (December 1979).

[15] *See e.g.*, Walker, Borghesi, Bosco, and Schreitmueller.

[16] *KSR Int'l. Co. v. Teleflex Inc.*, 27 S. Ct. 1727 (April 30, 2007). *See also* M.P.E.P. § 2141.

### C. Statement Pointing Out Each Substantial New Question of Patentability

#### 1. SNQs Raised by Abbruzzese

A SNQ as to claims 1-22 is raised by Abbruzzese. Abbruzzese anticipates all of the limitations of claims 1-12, 14-19, and 21-22, including the limitation indicated as the reason for allowance (see detailed analysis of Section II and claim charts) and is being presented in a new light, or in a different way, as compared with its use in the earlier concluded examination.[17] Additionally, Abbruzzese anticipates all of the limitations of claims 1-22, including the limitation indicated as the reason for allowance (see detailed analysis of Section II and claim charts) and is being presented in a new light, or in a different way, as compared with its use in the earlier concluded examination.[18] Requester believes that a reasonable examiner would consider this new light important in determining whether or not the claims are patentable. For this reason, Abbruzzese raises a SNQ with respect to claims 1-22 of the '284 patent.

Abbruzzese describes "a system and method for substantially automating work management. To illustrate the capabilities of this system and method, reference is made mainly to the processing of insurance claims."[19] To this end, Abbruzzese provides the allowed limitation of an insurance transaction database comprising a plurality of levels from a group, *inter alia*, the database values generated or edited through Loss Processing Transaction or "LPTX" screens and/or received from documents that have undergone an Optical Character Recognition or "OCR" process.[20]

Abbruzzese was cited/considered during the prosecution of the '284 patent. As specified by M.P.E.P. § 2242, "reliance on old art does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively

[17] '284 patent file history, Notice of Allowance, pages 3-4 (Oct. 27, 2004).
[18] '284 patent file history, Notice of Allowance, pages 3-4 (Oct. 27, 2004).
[19] Abbruzzese, Summary of the Invention.
[20] *See e.g.*, Abbruzzese, col.3 ll.37-58, col.135 ll.18-39, col.137 ll.40-42, Tables IV to XX (and associated text), and Figures 30-31 (and associated text).

on that old art…Determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis."[21]

M.P.E.P. § 2242 goes on to state that, as an example, an "SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request."[22] This criteria is met in that many relevant aspects of Abbruzzese went unappreciated during the examination of the '284 application. For example, the insurance claim file information entered into the LPTX input screens is stored in Abbruzzese's "Main database."[23] This Main database is broken up into at least three relational database tables.[24] These tables include a Loss Claim Table that stores "specific loss and claim data"[25] for a particular claim file; a Loss Event Policy Table which stores "loss event, policy, [and] insured data"[26] for a particular claim file; and a Loss Event Claimant Table which stores "potential claimant data"[27] for a particular claim file. The interrelated nature of these tables forms a plurality of levels of the Main database.[28] As another example,

---

[21] M.P.E.P. § 2242(II)(A).
[22] M.P.E.P. § 2242(II)(A).
[23] *See e.g.*, Abbruzzese, col.108 ll.40-43 ("All witnesses currently associated with the claim, as input through the LPTX input screens and maintained on the Loss Claim database table, are displayed" and previous discussion of the lack of appreciation of the Main database.).
[24] *See e.g.*, Abbruzzese, col.108 ll.40-43 ("All witnesses currently associated with the claim, as input through the LPTX input screens and maintained on the Loss Claim database table, are displayed." Accordingly, Abbruzzese discloses that data input into the LPTX screens is stored in the Loss Claim database table. Additionally, Abbruzzese states "[t]he System of the second embodiment of the present invention preferably relies on four different databases. These databases include a Main database, a Purge database, a Document Locator database and a File Cabinet database… the main sources for information used by the Main database tables are the Loss Event Policy Table (See FIG. 30), the Loss Claim Table (See FIG. 30), the Event Queue Table (See FIG. 32) and the Staff Member Table (See FIGS. 30 and 33)." Abbruzzese, col.135, ll.18-40. *See also* col.136 l.1 to col.139 l.10. As such, other information input through the LPTX screens is stored in the other tables of the Main database as appropriate (for example, policy information is stored in the Loss Event Policy Table. Compare with the examiners' blanket statements that the Loss Claim database houses the complete insurance transaction database.).
[25] Abbruzzese, col.137 l.40.
[26] Abbruzzese, col.137 l.42.
[27] Abbruzzese, col.137 l.41.
[28] *See e.g.*, Abbruzzese, col.135 ll.26-27 and Figures 30-31 (and associated text).

Abbruzzese's System Driver provides the LPTX functionality, including what screens to display,[29] and the Activity Log.[30]

This previously unappreciated content of Abbruzzese is used below to show, on a limitation-by-limitation basis, that none of claims 1-12, 14-19, and 21-22 of the '284 patent are patentable under 35 U.S.C. § 102(b) in view of Abbruzzese.

Moreover, to the extent that the details of the claim limitations are not explicitly disclosed in Abbruzzese, these details are either inherent or the difference(s) between Abbruzzese and the claimed invention would have been obvious to one of ordinary skill in the art under the "expansive and flexible approach" to obviousness.[31] Thus, as will be shown in detail below, none of the claims of the '284 patent are patentable under 35 U.S.C. § 103(a) in view of Abbruzzese. The Requester therefore submits that a SNQ exists.[32]

---

[29] *See e.g.*, Abbruzzese, col.17 ll.14-19, col.18 l.65 to col.19 l.37, and Figs. 38A-F (and associated text) (Abbruzzese illustrates a list of screens specific to the automobile line of insurance as an example. In this example, some screens are shown as required and others shown as optional depending on the type of policy.).

[30] See *e.g.*, Abbruzzese, Figures 38A-F and col.17 ll.11-19 ("When the business transaction is then ended, the function is exited and the System Controller returns to the Function Control position 104 to evaluate the next requested function. (The following is a partial list of available functions: Loss Processing Transaction, *Activity Log*, Diary, Directory Tables, Info Search, Payments, Reassignments, Secondary Menu and Text Processing. All the available functions are shown in block form in FIG. 8.") (emphasis added).

[31] *KSR Int'l. Co. v. Teleflex Inc.*, 27 S. Ct. 1727, 1739 (Apr. 30, 2007). *See also* M.P.E.P. § 2141.

[32] While Abbruzzese was considered during the prosecution of the '284 patent, it was not fully appreciated. The first examiner rejected all claims under 35 U.S.C. § 102(b) in view of Abbruzzese and maintained the rejection for multiple office actions in spite of the applicants arguments. *See* '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 12, 2002, and Responses of Nov. 14, 2002 and Feb. 20, 2003. A second examiner maintained some of the rejections, but without explanation withdrew the rejections for dependent claims 29-30 and 38-51. The applicants moved the limitation of claims 29 and 38 into both of the pending independent claims. This limitation was later identified as the reason for allowance (even though Abbruzzese also discloses this limitation as discussed below. *See e.g.,* '284 patent file history, Office Action, page 2 (June 30, 2003) ("Claims 29-30 and 38-51 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations and any intervening claims."). Claim 29 required that the claim folder of the insurance transaction database of independent claim 22 and intervening claim 28 (issued claim 1) be such that "the claim folder contains the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format;" whereas claim 38 required a similar limitation for independent claim 36 (issued claim 8).

The first examiner rejected claims 29 and 38 in view of Abbruzzese and the applicants did not substantively contest it. Rather, the applicants chose to substantively argue claims 42 and 49 - claims that

## 2. SNQ Raised by the Combination of Abbruzzese and Walker

Walker discloses the limitation indicated as the reason for allowance.[33] Specifically, through a series of interconnected figures (and associated description), Walker discloses an insurance transaction database with a plurality of levels, wherein the plurality of levels include a policy level (policy number of Figs. 3B and 3F) that reflects a policy, a claim level (Fig. 3F) that reflects the information related to the insurance transaction, a participant level (policy id holder of Figs. 3A and 3B) related to the insured person, and a line level (Fig. 3F).[34]

---

depended from and further limited the "policy level" limitation in claim 38 to include a yacht. In addition, in arguing for claims 42 and 49, the applicants stated, "Abbruzzese discloses various policy levels, but does not disclose a policy level for a covered yacht for marine claims." Thus, the applicants contrasted what Abbruzzese explicitly describes (the "various policy levels"), with what Abbruzzese "does not …" explicitly describe ("covered yachts"). A review of the claims (reproduced below) reveals that the phrase "Abbruzzese discloses various policy levels" refers to unargued claims 29 and 38.

| | |
|---|---|
| Claim 29 "wherein the claim folder contains the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format." | Claim 38 "a insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format." |
| | Claim 42 "wherein the policy level further comprises information related to covered yacht for marine claims." |
| | Claim 49 "wherein the line level further comprises information related to damaged yacht for marine claims." |

To the extent that the Patent Owner attempts to argue that there were additional limitations in claims 29/38 and that those limitations show that the applicants did not affirm the first examiner's position, the Requester respectfully submits that the claim language "from the group comprising" makes some limitations optional and any required limitations are found in the prior art (see Section II below).

It is worth noting that the first examiner found the limitation of claims 42 and 49 "amounts to the recitation of non-functional data; the type of claim has no bearing on the invention as claimed, and thus carries no patentable weight." '284 file history, Office Action, pages 10-11 (Dec. 20, 2002).

[33] '284 patent file history, Notice of Allowance, pages 3-4 (Oct. 27, 2004).

[34] Walker, Figs. 3A, 3B, 3F (and associated text).

Walker was not of record in the prosecution of the '284 patent and is thus new art.[35] As described below, Walker and Abbruzzese are combinable and none of the claims of the '284 patent are patentable over this combination. The combination of Walker and Abbruzzese was not presented during the prior examination of the '284 application. The Requester believes that a reasonable examiner would consider the teaching of Walker in combination with Abbruzzese to be important in determining whether or not the claims of the '284 patent are patentable. Thus, a SNQ as to claims 1-22 is raised by Abbruzzese in view of Walker.[36]

### 3. SNQ Raised by the Combination of Abbruzzese and Borghesi

Borghesi discloses the limitation indicated as the reason for allowance.[37] Specifically, Borghesi describes "a comprehensive method and system for processing insurance claims for use by insurance companies."[38] In addition, Borghesi uses "[a]n insurance claim datafile containing all data pertinent to an insurance claim."[39] "The workfile preferably comprises a plurality of individual sections represented by tabs 102 that designate the contents of that section."[40]

Borghesi was cited/considered by the examiners during the prosecution of the '284 patent. Additionally, Borghesi was cited and used in rejections of similar claims in a related application.[41] As described below, Borghesi and Abbruzzese are combinable and

[35] Voluntary divisional '086 application file history, Office Action (Sept. 23, 2005) (The examiner cited Walker in the voluntary divisional '086 application, and thus believed it to be material. This citation and the relatedness of the subject matter of the voluntary divisional '086 application to the '284 patent further establishes the materiality of Walker to the '284 patent. In addition, Walker was cited by the examiner in the voluntary divisional '086 application after the allowance, but more than five months before the issuance, of the '284 patent. Whether or not the applicants committed inequitable conduct by failing to withdraw the '284 application from issue and submit Walker is an issue for trial and not the present reexamination request.).
[36] M.P.E.P. § 2258.01 (A "rejection based on a combination of 'old art' and art newly cited ... is proper, and should be made.").
[37] '284 patent file history, Notice of Allowance, pages 3-4 (Oct. 27, 2004).
[38] Borghesi, Summary of the Invention.
[39] Borghesi, Summary of the Invention.
[40] Borghesi, col.8 l.66 to col.9 l.2 and Fig. 6 and associated description.
[41] US App. Serial No. 09/305,146 ("the '146 application") filed on May 4, 1999 and attributed to the same inventors and sharing a substantial portion of the specification with the '284 patent. The '146 application is currently on appeal before the PTO. The '146 application has a claim limitation similar to the limitation

none of the claims of the '284 patent are patentable over this combination. The combination of Borghesi and Abbruzzese was not presented during the prosecution of the '284 application[42] and the Requester believes that a reasonable examiner would consider the teaching of this combination to be important in determining whether or

---

indicated as the reason for allowance as illustrated in the table below. '284 patent file history, Notice of Allowance, pages 3-4 (Oct. 27, 2004). While the applicants have argued several other aspects of the claims pending in the '146 application, the applicants have never argued that the similar limitation in the pending claims is allowable over Borghesi.

| **'284 patent, Claim 1** | **'146 application, Claim 22** |
|---|---|
| …claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, | …a claim folder that decomposes a claim related to the insurance event into a plurality of levels, the plurality of levels including a policy level, a claim level, a participant level and a line level, |
| wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format… | …the plurality of levels reflecting information related to a policy, the claim, claimants and an insured person in a structured format … |

However, there are a couple of important differences between the claims. First, the limitation indicated as the reason for allowance of the '284 patent uses the phrase "a plurality of levels from the group comprising …" As indicated above, the Requester respectfully submits that this claim language ("from the group comprising") makes some limitations optional (see Section II below). In contrast, pending claim 22 from the '146 application uses "into a plurality of levels, the plurality of levels including…" (Emphasis added). The applicants of the '146 application noted that "The phrase 'wherein the plurality of levels includes a policy level, a claim level, a participant level and a line level' shows that the levels in the plurality are mandatory to the invention." '146 application file history, Response, page 7 (Oct. 7, 2002). This is significant because the examiner of the '146 application has repeatedly found each of these levels in Borghesi. '146 application file history, Office Actions of May 20, 2004; Jan. 21, 2005; and Aug. 23, 2005 and Examiner's Reply of July 30, 2007. Moreover, the applicants stated in their Amended Appeal Brief of the '146 application that "depending on the specific composition of the claim…the levels can include a policy level, a claim level, a participant level and a line level," thus, supporting the Requester's position that the "group comprising" language makes some limitations optional. '146 application file history, Amended Appeal Brief, page 6 (Nov. 13, 2006). (Emphasis added).

Second, the limitation indicated as the reason for allowance of the '284 patent uses the phrase "the information related to the insurance transaction," whereas pending claim 22 of the '146 application simply uses "the claim." The Requester submits that these are synonymous, especially in light of another statement made by the applicants in their Amended Appeal Brief, "the claim level of the claim has information on the claim status, line of business, and performers." '146 application file history, Amended Appeal Brief, page 6 (Nov. 13, 2006).

[42] During the prosecution of the '284 patent, the PTO applied the rigid "TSM" (teach, suggestion, motivation) test as the primary criteria for determining obviousness instead of applying the Graham factors elicited by the US Supreme Court in the 1960s. The US Supreme Court reaffirmed the Graham framework in its opinion in KSR regarding the standard to be applied in the determination of obviousness.

not the claims are patentable. Thus, a SNQ as to claims 1-22 is raised by Abbruzzese in view of Borghesi, because the combination of the two references in a new light compared to their use in the concluded examination in view of the material new argument and/or interpretation presented.

**4. SNQ Raised by the Combination of Abbruzzese and Schreitmueller**

Schreitmueller describes data entry organized by levels into an insurance transaction system, which implicitly includes an insurance transaction database to store this data. Specifically, Schreitmueller illustrates a user interface with multiple levels of tabs to collect data for insurance estimating.[43] One of the screens available through this tabbed approach is a claim administration page, which includes information regarding an insurance claim transaction (policy information, participant information, and claim information).[44] Schreitmueller also discloses a tabbed user interface for inputting line item data, such as vehicle parts.[45]

Schreitmueller was not of record in the prosecution of the '284 patent and is thus new art.[46] As described below, Schreitmueller and Abbruzzese are combinable and none of the claims of the '284 patent are patentable over this combination. The combination of Schreitmueller and Abbruzzese was not presented during the prior examination of the '284 application. The Requester believes that a reasonable examiner would consider the teaching of Schreitmueller in combination with Abbruzzese to be

---

[43] *See e.g.*, Schreitmueller, col.4 l.21, col.5 ll.21-35, and Figures 1 and 3A (and associated text).
[44] *See e.g.*, Schreitmueller, col.5 l.21 to col.6 l.38 and Figures 1 and 3A (and associated text).
[45] *See e.g.*, Schreitmueller, Figure 5A (and associated text).
[46] Voluntary divisional '086 application file history, Information Disclosure Statement (July 7, 2005) (The examiner cited Schreitmueller in the voluntary divisional '086 application, and thus believed it to be material. This citation and the relatedness of the subject matter of the voluntary divisional '086 application to the '284 patent further establishes the materiality of Schreitmueller to the '284 patent. In addition, Schreitmueller was cited by the applicants in the voluntary divisional '086 application, after the allowance but nine months prior to the issuance, of the '284 patent. Whether or not the applicants committed inequitable conduct by failing to withdraw the '284 application from issue and submit Schreitmueller is an issue for trial and not the present reexamination request.).

important in determining whether or not the claims of the '284 patent are patentable. Thus, a SNQ as to claims 1-22 is raised by Abbruzzese in view of Schreitmueller.[47]

**5. SNQ Raised by the Combination of Abbruzzese and Kwang**

Kwang describes event-based workflow management, Kwang determines a task to perform based on the event, and transmits the task to a user.[48]

Kwang was not of record in the prosecution of the '284 patent and is thus new art. As described below, Abbruzzese and Kwang are combinable and none of the claims of the '284 patent are patentable over this combination. The combination of Abbruzzese and Kwang was not presented during the prior examination of the '284 application. The Requester believes that a reasonable examiner would consider the teaching of Abbruzzese in combination with Kwang to be important in determining whether or not the claims of the '284 patent are patentable. Thus, a SNQ as to claims 1-22 is raised by Abbruzzese in view of Kwang.[49]

**6. SNQ Raised by the Combination of Abbruzzese, Walker, and Kwang**

As discussed above, neither Walker nor Kwang was of record in the prosecution of the '284 patent and are thus new art. Also as described above, when Abbruzzese and Walker or Abbruzzese and Kwang are combined none of the claims of the '284 patent are patentable over either combination. The combination of Abbruzzese, Walker, and Kwang was not presented during the prior examination of the '284 application. The Requester believes that a reasonable examiner would consider the teaching of Abbruzzese in combination with Walker and Kwang to be important in determining whether or not the claims of the '284 patent are patentable. Thus, a SNQ as to claims 1-22 is raised by Abbruzzese in view of Walker and in view of Kwang.[50]

---

[47] M.P.E.P. § 2258.01 (A "rejection based on a combination of 'old art' and art newly cited … is proper, and should be made.").
[48] *See e.g.*, Kwang, Fig. 2 (and associated text).
[49] M.P.E.P. § 2258.01 (A "rejection based on a combination of 'old art' and art newly cited … is proper, and should be made.").
[50] M.P.E.P. § 2258.01 (A "rejection based on a combination of 'old art' and art newly cited … is proper, and should be made.").

**7. SNQ Raised by the Combination of Abbruzzese, Borghesi, and Kwang**

As discussed above, Kwang was of record in the prosecution of the '284 patent and is thus new art. Also as described above, when Abbruzzese and Borghesi or Abbruzzese and Kwang are combined none of the claims of the '284 patent are patentable over either combination. The combination of Abbruzzese, Borghesi, and Kwang was not presented during the prior examination of the '284 application. The Requester believes that a reasonable examiner would consider the teaching of Abbruzzese in combination with Borghesi and Kwang to be important in determining whether or not the claims of the '284 patent are patentable. Thus, a SNQ as to claims 1-22 is raised by Abbruzzese in view of Borghesi and in view of Kwang.[51]

**8. SNQ Raised by the Combination of Abbruzzese, Schreitmueller, and Kwang**

As discussed above, neither Schreitmueller nor Kwang was of record in the prosecution of the '284 patent and are thus new art. Also as described above, when Abbruzzese and Schreitmueller or Abbruzzese and Kwang are combined none of the claims of the '284 patent are patentable over either combination. The combination of Abbruzzese, Schreitmueller, and Kwang was not presented during the prior examination of the '284 application. The Requester believes that a reasonable examiner would consider the teaching of Abbruzzese in combination with Schreitmueller and Kwang to be important in determining whether or not the claims of the '284 patent are patentable. Thus, a SNQ as to claims 1-22 is raised by Abbruzzese in view of Schreitmueller and in view of Kwang.[52]

[51] M.P.E.P. § 2258.01 (A "rejection based on a combination of 'old art' and art newly cited … is proper, and should be made.").

[52] M.P.E.P. § 2258.01 (A "rejection based on a combination of 'old art' and art newly cited … is proper, and should be made.").

## II. DETAILED EXPLANATION OF THE PERTINENCY AND MANNER OF APPLYING THE PRIOR ART REFERENCES TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED

As required under 37 C.F.R. § 1.510(b)(2), a detailed explanation of the pertinence and manner of applying the prior art references to all of the claims (claims 1-22) is provided below, as well as in the accompanying claim charts (Exhibits G-L). The claims of the '284 patent have reference labels in brackets for the sake of referencing the claims or portions thereof.

The following explanation is directed to prior art references that were and were not cited during prosecution of the '284 patent. For purposes of this request, the Requester has and will construe claim language consistent with the manner proffered by the Patent Owner. Such statements by the Patent Owner may be used by the Patent Office to interpret claim language at issue.[53] When the claims are construed consistent with the manner proffered by the Patent Owner, or even under a narrower, more reasonable interpretation, the claims are unpatentable in view of the prior art references presented herein. By construing the claim language consistent with the manner proffered by the Patent Owner, and/or as otherwise set forth explicitly or implicitly herein, the Requester is not admitting and/or acquiescing as to the correctness and/or reasonableness of the Patent Owner's proffered claim constructions.

The Requester has included the examiner's(') original rejections as footnotes in the detailed analysis below.

[53] *See* 37 C.F.R. § 1.104 ("In rejecting claims the examiner may rely upon admissions by the applicants, or the patent owner in a reexamination proceeding, as to any matter affecting patentability[.]").

**A. Proposed Rejections**

1. Claims 1-12, 14-19, and 21-22 are anticipated by Abbruzzese.

2. Claims 1-22 are obvious over Abbruzzese.

3. Claims 1-22 are obvious over Abbruzzese in view of Walker.

4. Claims 1-22 are obvious over Abbruzzese in view of Borghesi.

5. Claims 1-22 are obvious over Abbruzzese in view of Schreitmueller.

6. Claims 1-22 are obvious over Abbruzzese in view of Kwang.

7. Claims 1-22 are obvious over Abbruzzese in view of Walker in view of Kwang.

8. Claims 1-22 are obvious over Abbruzzese in view of Borghesi in view of Kwang.

9. Claims 1-22 are obvious over Abbruzzese in view of Schreitmueller in view of Kwang.

**B. Rejections Based on Abbruzzese**

Abbruzzese anticipates claims 1-12, 14-19, and 21-22 of the '284 patent. Abbruzzese renders obvious claims 1-22 of the '284 patent. Abbruzzese is prior art to the '284 patent under 35 U.S.C. § 102(b). As described in Section I.C.1 above, Abbruzzese was considered, but not fully appreciated, during the prosecution of the '284 patent.

**1. Anticipation Rejections**

1) The following is a quotation of 35 U.S.C. §102 (b), which forms the basis for the following anticipation rejections:

> A person shall be entitled to a patent unless…
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States,

2) Abbruzzese anticipates claims 1-12, 14-19, and 21-22 of the '284 patent. The following analysis discusses the independent claims first, followed by a discussion of the dependent claims.

*i. Independent Claim 1*

3) Independent claim 1 is reproduced below:

> [1.0] A system for generating tasks to be performed in an insurance organization, the system comprising:
>
> [1.1] an insurance transaction database for storing information related to an insurance transaction, [1.2] the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, [1.3] wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format;
>
> [1.4] a task library database for storing rules for determining tasks to be completed upon an occurrence of an event;
>
> [1.5] a client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction, [1.6] said client component enabling access by an assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion; and
>
> [1.7] a server component in communication with the client component, the transaction database and the task library database, [1.8] the server component including an event processor, a task engine and a task assistant;
>
> [1.9] wherein the event processor is triggered by application events associated with a change in the information, and sends an event trigger to the task engine; [1.10] wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component.

4) Portion [1.0] of claim 1 (the preamble) requires "*A system for generating tasks to be performed in an insurance organization*."

5) Abbruzzese discloses "a *system* and method for substantially automating work management. To illustrate the capabilities of this *system* and method, reference is made mainly to the processing of insurance claims."[54] Abbruzzese's *system* generates a series of insurance claim input screens (Loss Processing Transaction or "LPTX") to be filled in by a user of the system to create, edit, or process an insurance claim for an *insurance organization*.[55] Each LPTX screen represents a *task* that needs to be completed.[56] Thus, Abbruzzese discloses "*A system for generating tasks to be performed in an insurance organization.*"[57]

6) Portion [1.1] of claim 1 requires "*an insurance transaction database for storing information related to an insurance transaction.*"[58]

7) Abbruzzese's Main database is *an insurance transaction database*.[59] This database comprises at least three relational tables.[60] These tables include: the Loss Claim Table that stores "specific loss and claim data;" a Loss Event Policy Table that stores "loss event, policy, [and] insured data;" and a Loss Event Claimant Table that stores "potential claimant data."[61] The data of these tables is *information related to an*

---

[54] Abbruzzese, Summary of the Invention.

[55] Abbruzzese, col.1 ll.27-43, col.2 ll.62-65, and col.3 l.65 to col.4 l.19.

[56] *See e.g.*, Abbruzzese, col.27 ll.47-58 ("From the Claim Set up screen, the LPTX can be completed, routed to another staff member for additional input or review, or edited further. In order to complete the LPTX all required fields must be validly filled. If all the required fields are not properly filled, the operator is prompted to correct and/or input the appropriate information. If the operator is unable to complete the required field(s) the LPTX will not be completed and the claim number(s) will not be assigned. In such situations, however, pre-determined dummy codes are used to maintain the notice of loss. Alternatively, if other staff members may be able to provide the necessary information, the incomplete "claim " may be routed to them.").

[57] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (Both examiners noted that "Abbruzzese teaches claims processing as a task performed by an insurance organization." Citing, Abbruzzese, col.1 ll.27-43.).

[58] The Requester notes that the phrase "an insurance transaction" only appears in the claims. For purposes of this request, the Requester has interpreted this broadly to mean the processing of an insurance claim and that the information associated with this transaction is information regarding the claim itself (such as the policy involved, claimant, etc.).

[59] *See* Abbruzzese, col.3 ll.37-43, col.135 ll.18-39, col.137 l.40-42, and Figures 6 and 30-31 (and associated text).

[60] *See* Abbruzzese, col.135 ll.18-39, col.136 l.1 to col.139 l.10, and Figures 6 and 30-31 (and associated text).

[61] *See* Abbruzzese, col.135 ll.18-39, col.136 l.1 to col.139 l.10, and Figures 6 and 30-31 (and associated text).

*insurance transaction.* Accordingly, Abbruzzese's Main database meets the limitation of "*an insurance transaction database for storing information related to an insurance transaction.*"[62]

8) Portion [1.2] of claim 1 requires "*the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"[63]

9) As described with respect to portion [1.1], Abbruzzese's Main database [the required *insurance transaction database*] comprises a plurality of tables (the Loss Event Policy Table, Loss Event Claimant Table, and Loss Claim Table) that store *information related to the insurance transaction*, specifically insurance *claim* files.[64] As illustrated in Figs. 30 and 31 (reproduced below), these tables are separate [the required *decomposed*], but interrelated (as illustrated by the bidirectional arrows). Interrelationships between relational tables result from having some common data.[65] This interrelationship forms a *plurality of levels*. For example, as illustrated in Figs. 30-31 below, the Loss Event Policy Table is related to the Loss Event Claimant Table. In this instance, the Loss Event Policy Table is at a first level and the Loss Event Claimant Table is at a second level.

[62] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (Both examiners rejected this limitation based on Abbruzzese's "Loss Claim Database." Citing, Abbruzzese, col.3 ll.37-43.).

[63] This limitation is unclear. It is similar to a Markush group, but does not include the words "selected" or "consisting" (Markush claims are typically in the form of "selected from the group consisting"). However, with respect to this limitation, the phrase of *from the group* must have some meaning. To determine this meaning, the Requester suggests that it is worthwhile to consider the limitation with this phrase removed. Removing this phrase yields "a plurality of levels comprising" and would be interpreted as requiring all of the recited levels, but not excluding additional levels. Because the phrase "from the group" must mean something, the Requester has interpreted this phrase as requiring two of the recited levels for purposes of this request. The Requester also notes that this limitation does not specify an order for these levels; as such, the levels may be found in any order in the prior art.

[64] *See* Abbruzzese, col.135 ll.26-27, col. 136 l.1 to col.139 l.10, and Figs. 30-31. *See also* Abbruzzese, col.4 ll.15-29 ("All this information need not be immediately input into the claim file created with the LPTX.").

[65] Abbruzzese, col.135 ll.26-27 ("These tables are relational in nature and some directly share information.").




*FIG. 30*

Abbruzzese's Fig. 30




*FIG. 31*

Abbruzzese's Fig. 31

10) Abbruzzese's Loss Event Policy Table, which stores "loss event, policy, [and] insured data," meets the claimed *policy level*; the Loss Claim Table, which stores "specific loss and claim data," meets the claimed *claim* and *line levels*; and the Loss

Event Claimant Table, which stores "potential claimant data," meets the claimed *participant level.*[66]

11) The tables of the Main database may be filled in via the LPTX screens and/or an OCR procedure.[67] The LPTX screens are illustrated as tables in Abbruzzese. The LPTX screens are presented in a selective and ordered manner, which indicates that the data is organized in the claim file. As such, Abbruzzese could have stored this data in many ways, but chose to use a storage solution decomposed into levels. Moreover, as will be discussed in detail below, information input into specific LPTX screens map to certain of the Main database tables.

12) Thus, the Main database of Abbruzzese meets the limitation of "*the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"[68]

13) Portion [1.3] of claim 1 requires "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format.*"[69]

14) The different LPTX screens provide for the entry of *a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*, and thus, the information the *plurality of levels reflects*. Specifically,

---

[66] Abbruzzese, col.137 ll.40-42.

[67] *See* Abbruzzese, Tables IV to XX (and associated text) and col.3 ll.45-58.

[68] As discussed earlier in Section I.C, the '284 patent was allowed to issue based on this limitation and limitation [1.3]. While the explanation is relevant to this analysis, as a space saving measure it is not duplicated here with the exception of repeating that the first examiner correctly rejected this limitation (when it was claim 29) because "Abbruzzese discloses collection of specific information on the policy, the claim, the participant (insured), and line of property (see Tables IV to XX). These are the *levels* described by the specification as different groups of information collected for claims processing. Abbruzzese discloses a 'claim folder' as the collection of information on a claim in the Loss Claim database." '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 20, 2002.

[69] The Requester notes that there is not a one-to-one correspondence between the plurality of levels from portion [1.2] and this limitation. While there seems to be a correspondence between the "policy level" and "reflects a policy," the "claim level" and "the information related to the insurance transaction," and the "participant level" and "claimants and an insured person," there is no corresponding "reflection" for the "line level." However, as examples of the "Line Level," the '284 patent includes "Details, Damaged Vehicle for vehicle lines, Damaged Property for property lines, Damaged Yacht for marine lines, [and] Events." '284 patent, col.84 ll.59-63.

*policy information* is met by at least the *Policy* Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table, which stores "loss event, *policy*, [and] insured data."[70] The *information related to the insurance transaction* is met by at least the Claim Set-up LPTX screen (Table XIII) and is stored in the Main database's Loss Claim Table, which stores "specific loss and claim data."[71] The *claimant information* is met by at least the *Claimant* Information LPTX screens (Tables IX and XVI ) and Injured Party Information LPTX screen (Table XII) and is stored in the Main database's Loss Event Claimant Table, which stores "potential claimant data."[72] Finally, *insured person* information is met by at least the *Policy* Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table, which stores "loss event, *policy*, [and] insured data."[73] Thus, it is not surprising that the three tables of Abbruzzese's Main database discussed earlier *reflect a policy, the information related to the insurance transaction, claimants and an insured person in a structured format.* Particularly, the Loss Event Policy Table *reflects* "loss event, *policy*, [and] *insured data*" and therefore *reflects* the *policy* and at least a portion *the information related to the insurance transaction*; the Loss Claim Table *reflects* "specific loss and *claim* data" and therefore at least a portion *the information related to the insurance transaction;* and the Loss Event Claimant Table *reflects* "potential *claimant* data" and therefore the required *claimants.*[74] Additionally, it is inherent that the relational tables of the Main database are in a *structured format.*[75] Thus, the LPTX screens in Abbruzzese's Tables IV to XX and/or the relational tables of Abbruzzese's Main database meet the limitation of "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format.*"[76] Moreover, the

---

[70] *See* Abbruzzese, col.137 l.42 and Table V (and associated text).
[71] *See* Abbruzzese, col.137 l.40 and Table XIII (and associated text).
[72] *See* Abbruzzese, col.137 l.41 and Table IX, XVI, and XII (and associated text).
[73] *See* Abbruzzese, col.137 l.42 and Table V (and associated text).
[74] Abbruzzese, col.137 l.40-42.
[75] Abbruzzese, col.135 ll.26-27.
[76] '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 20, 2002 (As described by the first examiner, "Abbruzzese discloses collection of specific information on the policy, the claim, the participant

Requester would like to reiterate that <u>every</u> other claim limitation was found to exist by the second examiner. The following discussion regarding the other portions of claim 1 is something that one or both examiners found with some improvements.

15) Portion [1.4] of claim 1 requires "*a task library database for storing rules for determining tasks to be completed upon an occurrence of an event.*"

16) Abbruzzese's "System Driver is a program module that manages and controls every System session…by controlling the timing and execution of all system functions" including the LPTX.[77] The System Driver's LPTX function generates the proper LPTX screens based on a number of factors including the insurance organization, claim type, and requested LPTX function.[78] Because the LPTX screens generated are dependent on several factors, the System Driver's LPTX function must utilize a database with one or more rules used to determine which LPTX screen(s) to present based on the factors. This database is one of the "plurality of storage devices 214, 216 and 218" that are accessible to the Main CPU 210 that executes the System Driver.[79] Accordingly, Abbruzzese's System Driver must use "*a task library database for storing rules for determining tasks to be completed upon an occurrence of an event.*"[80]

---

(insured), and line of property (see Tables IV to XX). These are the *levels* described by the specification as different groups of information collected for claims processing.").

[77] *See e.g.*, Abbruzzese, col.16 ll.17-19, col.17 ll.14-19 and Figs. 38A-F (and associated text).

[78] *See e.g.*, Abbruzzese, col.17 ll.14-19, col.18 l.65 to col.19 l.37 and Figs. 38A-F (and associated text).

[79] *See* Abbruzzese, col.13 l.55-59.

[80] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (As detailed by both examiners, Abbruzzese discloses this limitation. Specifically, both examiners note that the claimed task library database is "functionally equivalent to the series of input screens called Loan Processing Transactions (LPTX) in the prior art, whose presentation embodies 'rules' for performing tasks related to each particular line of business subject to the claim (column 3, line 44, to column 4, line 44). Rules for determining tasks are inherent in the order and presentation of the input screens for each claims process. For example, Figure 1 shows at least one rule for determining the task 'MAKE COPY', i.e., if the Notice of Loss is not received in duplicate, then make a copy. The *task library is* the collection of these rules and screens that form the LPTX."). *See also* '284 patent file history, Office Action, page 10 (Dec. 20, 2002) (The first examiner further stated that "it is the *series* of LPTX screens, that is functionally equivalent to the task library database. The LPTX screens inherently implement rules dependent on the entered claim information, the series of screens is not fixed, but rather vary according to the claim input, for example, the type of claim being made.").

17) Portion [1.5] of claim 1 requires "*a client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction*."

18) The *client component* is found in Abbruzzese's "plurality of workstations 242 and 244, functioning as smart terminals, [that] are linked [*in communication*] with the Main CPU 210. ... [and that] form[] the basis for operator interaction with the system."[81] "Associated with the Main CPU 210 are a plurality of storage devices 214, 216 and 218 for reading and writing data and for maintaining and providing access to the databases" including the Main database (that meets the claimed *insurance transaction database*").[82] Accordingly, the communication between a workstation 242 or 244 [*client component*] with the Main database [*insurance transaction database*] through the Main CPU 210 meets the required limitation of "*a client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction.*"[83]

19) Portion [1.6] of claim 1 requires "*said client component enabling access by an assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion*."

20) As discussed earlier, Abbruzzese's System Driver's LPTX function, executed by the Main CPU, generates the proper LPTX screens for data entry [*tasks*] based on the insurance organization, claim type, and input.[84] Abbruzzese illustrates a list of screens specific to the automobile line of insurance as an example. In this example, some screens are shown as required and others are shown as optional depending on the type of policy. Accordingly, Abbruzzese's workstations [*client component*] *enable access by an assigned claim handler* to a plurality of LPTX screens [*tasks*] to process a claim

[81] Abbruzzese, col.15 ll.4-16 and Fig. 6 (and associated text).
[82] Abbruzzese, col.13 ll.55-59 and Fig. 6 (and associated text).
[83] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (As detailed by the examiners, this limitation is met by an "Operator accessing the local computer through a terminal (column 3 lines 44-55).").
[84] *See e.g.*, Abbruzzese, col.18 l.65 to col.19 l.37 and Figs. 38A-F (and associated text).

[*that achieve an insurance related goal upon completion*].[85] Abbruzzese therefore discloses "*said client component enabling access by an assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion.*"[86]

21) Portion [1.7] of claim 1 requires "*a server component in communication with the client component, the transaction database and the task library database.*"

22) Abbruzzese's Main CPU of the "local computer" [the required *server component*] communicates with workstations 242 and 244 [the required *client components*].[87] Additionally, the Main CPU communicates with "a plurality of storage devices 214, 216 and 218 for reading and writing data and for maintaining access to the databases ...," including the Main database that meets the *transaction database* limitation.[88] In addition, the selective and ordered LPTX screen presentation is orchestrated by the Main CPU 210 executing the System Driver. This requires access to an LPTX screen database and rules for determining which and what order of LPTX screens to present [the *task library database*]. Thus, the Main CPU must communicate with a *task library database* containing rules for determining which LPTX screen to present.[89] Accordingly, Abbruzzese's Main CPU [*server component*] is in communication with the workstations [*client components*], the Main database [*the transaction database*], and the LPTX screen database (including rules for which screens to display) [*the task library database*]. Abbruzzese therefore discloses "*a server component in communication with the client component, the transaction database and the task library database.*"[90]

---

[85] *See* Abbruzzese, col.15 ll.4-16 and Fig. 6.

[86] '284 patent file history, Office Action, pages 4-5 (June 30, 2003) (As detailed by the second examiner, Abbruzzese discloses this limitation "(Col.3, lines 44-55, [(Operator accessing the local computer through a terminal], Col 4, lines 27-34, [where information about the insurance transaction is represented by the summarization of the claim transaction], Col. 4, lines 27-34, [where the plurality of tasks are represented by the special procedures]).").

[87] *See* Abbruzzese, col.15 ll.4-16 and Fig. 6 (and associated text).

[88] Abbruzzese, col.13 ll.55-59.

[89] *See e.g.*, Abbruzzese, col.13ll.55-59 and col.16 l.45 to col.117 l.19 and Figs. 16 and 38A-F (and associated text).

[90] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (As detailed by both examiners, Abbruzzese's "local computer" meets this server component limitation. Citing Abbruzzese, col.3 ll.44-45.).

23) Portion [1.8] of claim 1 requires "*the server component including an event processor, a task engine and a task assistant*."

24) The System Driver executed on the Main CPU [*the server component*] acts as *an event processor, a task engine, and a task assistant* depending upon the job it is trying to complete as detailed in portions [1.9] and [1.10]. This is consistent with the OOP approach discussed in the '284 patent in that the System Driver is a program that provides a plurality of functions. Thus, as long as the software components discussed below perform the required functions, it is keeping with the intent of the claimed invention, which was not "by and large" calling out separate pieces of hardware. Accordingly, Abbruzzese discloses "*the server component including an event processor, a task engine and a task assistant*."[91]

25) Portion [1.9] of claim 1 requires "*wherein the event processor is triggered by application events associated with a change in the information, and sends an event trigger to the task engine*."

26) In Abbruzzese's system, claim processing typically begins with the receipt of a "Loss Notice," the contents of which are either input manually through LPTX screens or scanned, processed by an OCR function by a user, and the contents of the image from the OCR function automatically placed in the appropriate fields of the claim file associated with the claim.[92] As such, the System Driver [*event processor*] is *triggered* by LPTX screen input or OCR function to begin or edit a claim file associated with the received Loss Notice [*by application events associated with a change in the information*]. The System Driver triggers the LPTX function [*the task engine*] to alert it that it a claim file will be created or modified [*sends an event trigger to the task engine*].

27) For example, if the Loss Notice is input manually, the user will first access a Loss Processing Transaction Screen (illustrated as Table IV).[93] This is the first screen of

---

[91] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (As detailed by both examiners, Abbruzzese's "local computer" meets the server component limitation. Citing Abbruzzese, col.3 ll.44-45.).
[92] *See e.g.*, Abbruzzese col.3 ll.18-63 and Fig. 16.
[93] *See* Abbruzzese, col.18, ll.20-62 and Table IV.

the LPTX function. The completion of this screen [*an application event*] triggers the LPTX function to determine which screens are to be presented to the user (as detailed in portion [1.10] below).

28) Additionally, Abbruzzese discloses other types of events that drive the system (see at least Fig. 32 and related text). For example, Figure 16 and related text shows how receiving incoming claim-related information by fax, mail, or telephone drives the LPTX screens. Specifically, a document's arrival triggers an appropriate task such as routing to an appropriate queue for supervisor review (see Fig. 11) and subsequent routing to an agent at the client component (the remote terminal, see Fig. 5-6). In at least the manner described above, Abbruzzese teaches functionality inherent in performing the event-driven insurance claims processing workflow.

29) Thus, Abbruzzese discloses "*wherein the event processor is triggered by application events associated with a change in the information, and sends an event trigger to the task engine.*"[94]

30) Portion [1.10] of claim 1 requires "*wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component.*"[95]

---

[94] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (As detailed by the examiners, "Abbruzzese further discloses that the system is driven by events (see at least Fig. 32 and related text). Figure 16 and related text demonstrates at least how the LPTX are driven by the event of receiving incoming claim-related documents by fax, mail, or telephone report events. The event of document arriving triggers an appropriate task such as routing the document image to an appropriate queue for review by a supervisor (see Fig. 11) and subsequent routing to an agent at the client component (the remote terminal, see Fig. 5-6). In at least the manner described above, Abbruzzese teaches functionality inherent in performing the event-driven, insurance claims processing workflow.").

[95] The limitations of portions [1.8]-[1.10] were repeatedly argued by the applicants as being allowable over Abbruzzese. However, both examiners found these limitations in Abbruzzese and maintained their rejections. The applicants acquiesced to the examiners' position by moving the dependent claims up, failing to make any statement reserving their right to file a continuation to pursue these claims, and failing to file such a continuation (as previously indicated, the applicants instead filed the voluntary divisional '086 application).

*31)* As detailed by Abbruzzese, "[u]pon completion of the LPTX Interface screen, the `Enter` key is pressed and a series of loss screens particular to a single 'line of business' are displayed [*in response to the event trigger*]. The loss screens are formatted according to a policy symbol (indicating the type of policy) and the line of business specified on the Interface screen. These screens contain policy/insured and loss/claim description data. The number of screens and their sequence is relative to the number of claims arising from the loss occurrence and the manner in which the loss was reported."[96] In other words, the LPTX function identifies the proper screens based on a number of factors including the insurance organization, claim type, and requested LPTX function.[97] As detailed above, because the selection of LPTX screens is dependent on several factors, the System Driver executing the LPTX function must utilize a database with one or more rules used to determine which LPTX screen(s) to present based on the factors. This database is one of the "plurality of storage devices 214, 216 and 218" that are accessible to the Main CPU 210 that executes the System Driver.[98] Accordingly, the LPTX function [*the task engine*] identifies rules in the storage devices 214, 216, or 218 associated with the completion of the LPTX Interface screen [*identifies rules in the task library database associated with the event*] and determines which screens must be completed [*applies the information to the identified rules to determine the tasks to be completed*].

32) Moreover, in a general sense, as each LPTX screen is filled in, and another LPTX screen is selected by the end user, the System Driver compares the user's selection that it received [the selection is an *event trigger*] to the screens applicable to the particular claim and determines if the selection is valid, and, if so, displays that LPTX screen to the user to be filled in [*in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed*]. Additionally,

[96] Abbruzzese, col.18 l.63 to col.19 l.5.
[97] *See e.g.*, Abbruzzese, col.17 ll.14-19, col.18 l.65 to col.19 l.37 and Figs. 38A-F (and associated text).
[98] *See* Abbruzzese, col.13 l.55-59.

the "System includes many preferred work flows and accordingly, moves the user automatically to the next logical processing step"[99] such as the next LPTX screen without user intervention.

33) Each screen that is presented at one of the workstations is a task to be completed[100] [*populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component*]. Additionally, due ("diary") dates are added for tasks to be completed by the end user.[101] Accordingly, the Main CPU's System Driver's LPTX function, in response to receiving input from a user [*wherein in response to the event trigger*], identifies the next screen to display or other action to take based on rules regarding what LPTX screens are appropriate for the particular claim being handled [*the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed*], and displays this to the user via the workstation's screen [*and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component*].

34) Additionally, Abbruzzese discloses other types of events that drive the system (see at least Fig. 32 and related text). For example, Figure 16 and related text shows how receiving incoming claim-related information by fax, mail, or telephone drives the LPTX screens. Specifically, a document's arrival triggers an appropriate task such as routing to an appropriate queue for supervisor review (see Fig. 11) and subsequent routing to an agent at the client component (the remote terminal, see Fig. 5-6). In at least the manner described above, Abbruzzese teaches functionality inherent in performing the event-driven, insurance claims processing workflow.

35) Thus, Abbruzzese discloses "*wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and*

[99] Abbruzzese, col.134 ll.20-22 (emphasis added).
[100] *See* Abbruzzese, col.15 ll.4-16.
[101] *See e.g.*, Abbruzzese, col.4 ll.46-57.

*applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component."*[102]

*ii. Independent Claim 8*

36) Independent claim 8 is reproduced below:

> [8.0] An automated method for generating tasks to be performed in an insurance organization, the method comprising:
> [8.1] transmitting information related to an insurance transaction;
> [8.2] determining characteristics of the information related to the insurance transaction;
> [8.3] applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed, [8.4] wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, [8.5] wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format;
> [8.6] transmitting the determined task to a task assistant accessible by an assigned claim handler, wherein said client component displays the determined task;
> [8.7] allowing an authorized user to edit and perform the determined task and to update the information related to the insurance transaction in accordance with the determined task;
> [8.8] storing the updated information related to the insurance transaction; and
> [8.9] generating a historical record of the completed task.

[102] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (As detailed by the examiners, "Abbruzzese further discloses that the system is driven by events (see at least Fig. 32 and related text). Figure 16 and related text demonstrates at least how the LPTX are driven by the event of receiving incoming claim-related documents by fax, mail, or telephone report events. The event of document arriving triggers an appropriate task such as routing the document image to an appropriate queue for review by a supervisor (see Fig. 11) and subsequent routing to an agent at the client component (the remote terminal, see Fig. 5-6). In at least the manner described above, Abbruzzese teaches functionality inherent in performing the event-driven, insurance claims processing workflow.").

37) Portion [8.0] of claim 8 (the preamble) requires "*An automated method for generating tasks to be performed in an insurance organization, the method comprising*."

38) Abbruzzese discloses "a system and *method* for substantially automating work management. To illustrate the capabilities of this system and *method*, reference is made mainly to the processing of insurance claims."[103] Abbruzzese generates a series of insurance claim input screens (Loss Processing Transaction or "LPTX") to be filled in by a user of the system to create, edit, or process an insurance claim for an *insurance organization*.[104] Each LPTX screen represents a *task* that needs to be completed.[105] Thus, Abbruzzese discloses "*A system for generating tasks to be performed in an insurance organization*."[106]

39) Portion [8.1] of claim 8 requires "*transmitting information related to an insurance transaction*." Abbruzzese discloses receiving a standardized notice of loss, scanning it, routing the scanned image to an OCR device through the Main CPU, performing an OCR on the image, and storing the "the information in the pre-defined zones on the form…in the appropriate fields in a Loss Claim database table."[107]

40) Additionally, Abbruzzese discloses that a user may use one of a "plurality of workstations 242 and 244, functioning as smart terminals, [] linked with the Main CPU 210" to input insurance claim file information into various LPTX screens.[108] "Associated with the Main CPU 210 are a plurality of storage devices 214, 216 and 218 for reading and writing data and for maintaining and providing access to the databases" including the Main database.[109] Accordingly, the communication between a workstation 242 or 244 [*client component*] with the Main database [*insurance transaction database*]

---

[103] Abbruzzese, Summary of the Invention.
[104] Abbruzzese, col.1 ll.27-43, col.2 ll.62-65, and col.3 l.65 to col.4 l.19.
[105] *See* Abbruzzese, col.15 ll.4-16.
[106] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (Both examiners noted that "Abbruzzese teaches claims processing as a task performed by an insurance organization." Citing, Abbruzzese, col.1 ll.27-43.).
[107] *See e.g.*, Abbruzzese, col.3 ll.26-44.
[108] Abbruzzese, col.15 ll.4-16 and Fig. 6 (and associated text).
[109] Abbruzzese, col.13 ll.55-59 and Fig. 6 (and associated text).

through the Main CPU 210 meets the required limitation of "*transmitting information related to an insurance transaction*."[110]

41) Portion [8.2] of claim 8 requires "*determining characteristics of the information related to the insurance transaction*."

*42)* As detailed by Abbruzzese, "[u]pon completion of the LPTX Interface screen, the 'Enter' key is pressed and a series of loss screens particular to a single 'line of business' are displayed. The loss screens are formatted according to a policy symbol (indicating the type of policy) and the line of business specified on the Interface screen. These screens contain policy/insured and loss/claim description data. The number of screens and their sequence is relative to the number of claims arising from the loss occurrence and the manner in which the loss was reported."[111] In other words, the LPTX function determines the characteristics of the insurance claim such as the type of policy and line of business [*determin*es the *characteristics information related to the insurance transaction*]. Accordingly, Abbruzzese discloses "*determining characteristics of the information related to the insurance transaction*."[112]

43) Portion [8.3] of claim 8 requires "*applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed*."

44) As detailed above, because the selection of LPTX screens is dependent on several factors, the System Driver executing the LPTX function must utilize a database with one or more rules used to determine which LPTX screen(s) to present based on the factors. This database is one of the "plurality of storage devices 214, 216 and 218" that are accessible to the Main CPU 210 that executes the System Driver.[113] Accordingly, the

---

[110] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (Both examiners noted that Abbruzzese discloses this limitation. Specifically, the examiners pointed to Abbruzzese's "electronically routing images to a staff member, OCR'ing the images to the insurance information database, and transmitting information via LPTX screens" citing col.3.).

[111] Abbruzzese, col.18 l.63 to col.19 l.5.

[112] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (Both examiners noted that Abbruzzese discloses this limitation. Specifically, the examiners stated that Abbruzzese discloses "discovering of type of claim, property, information, etc." citing col.4 ll.6-19.).

[113] *See* Abbruzzese, col.13 l.55-59.

LPTX function applies the characteristics of the insurance claim, such as the type of policy and line of business, to the one or more rules of the storage devices [*applying the characteristics of the information related to the insurance transaction to rules*] to determine which LPTX screens need to be completed, wherein each LPTX screen is a task to be completed[114] [*determine a task to be completed*]. Accordingly, Abbruzzese discloses "*applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed.*"[115]

45) Portion [8.4] of claim 8 requires "*wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"

46) Abbruzzese's "System Driver [*event processor*] is a program module that manages and controls every System session…by controlling the timing and execution of all system functions" including the LPTX function.[116] The System Driver is executed by Abbruzzese's Main CPU, which *interacts* with "a plurality of storage devices 214, 216 and 218 for reading and writing data and for maintaining access to the databases …," including the Main database [the *insurance transaction database containing information*

[114] *See* Abbruzzese, col.15 ll.4-16.

[115] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (Both examiners noted that Abbruzzese discloses this limitation. Specifically, the examiners stated that "The *task library database for storing rules for determining tasks to be completed upon an occurrence of an event* is functionally equivalent to the series of input screens called Loan Processing Transactions (LPTX) in the prior art, whose presentation embodies 'rules' for performing tasks related to each particular line of business subject to the claim (column 3, line 44, to column 4, line 44). Rules for determining tasks are inherent in the order and presentation *of* the input screens for each claims process. For example, Figure 1 shows at least one rule for determining the task "MAKE COPY", i.e., if the Notice of Loss is not received in duplicate, then make a copy. The *task library* is the collection of these rules and screens that form the LPTX.

Abbruzzese further discloses that the system is driven by events (see at least Fig. 32 and related text). Figure 16 and related text demonstrates at least how the LPTX are driven by the event of receiving incoming claim-related documents by fax, mail, or telephone report events. The event of document arriving triggers an appropriate task such as routing the document image to an appropriate queue for review by a supervisor (see Fig. 11) and subsequent routing to an agent at the client component (the remote terminal, see Fig. 5-6). In at least the manner described above, Abbruzzese teaches functionality inherent in performing the event driven, insurance claims processing workflow as recited in the limitations of claim 36…").

[116] *See e.g.*, Abbruzzese, col.16 ll.17-19, col.17 ll.14-19 and Figs. 38A-F (and associated text).

*related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level*].[117] As described earlier, Abbruzzese's *Main data*base [the required *insurance transaction database*] comprises a plurality of tables (the Loss Event Policy Table, Loss Event Claimant Table, and Loss Claim Table) that store *information related to the insurance transaction*, specifically insurance claim files.[118] As illustrated in Figs. 30 and 31 (reproduced below), these tables are separate [the required *decomposed*], but interrelated (as illustrated by the bidirectional arrows). Interrelationships between relational tables result from having some common data.[119] This interrelationship forms a plurality of levels. For example, as illustrated in Figs. 30-31 below, the Loss Event Policy Table is related to the Loss Event Claimant Table. In this instance, the Loss Event Policy Table is at a first level and the Loss Event Claimant Table is at a second level.

---

[117] Abbruzzese, col.13 ll.55-59.
[118] *See* Abbruzzese, col.135 ll.26-27, col. 136 l.1 to col.139 l.10, and Figs. 30-31. *See also* Abbruzzese, col.4 ll.15-29 ("All this information need not be immediately input into the claim file created with the LPTX.").
[119] Abbruzzese, col.135 ll.26-27 ("These tables are relational in nature and some directly share information.").




*FIG. 30*

Abbruzzese's Fig. 30




*FIG. 31*

Abbruzzese's F*ig. 31*

47) Abbruzzese's Loss Event Policy Table, which stores "loss event, *policy*, [and] insured data," meets the claimed *policy level*; the Loss Claim Table, which stores



GSJAPP005801

"specific loss and *claim* data,"[120] meets the claimed *claim* and *line levels*; and the Loss Event Claimant Table, which stores "potential claimant data," meets the claimed *participant level*.

48) The tables of the Main database may be filled in via the LPTX screens and/or an OCR procedure.[121] The LPTX screens are illustrated as tables in Abbruzzese. The LPTX screens are presented in a selective and ordered manner, which indicates that the data is organized in the claim file. As such, Abbruzzese could have stored this data in many ways, but chose to use a storage solution decomposed into levels. Moreover, as will be discussed in detail below, information input into specific LPTX screens map to certain of the Main database tables.

49) Thus, the Abbruzzese discloses "*wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"[122]

50) Portion [8.5] of claim 8 requires "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format.*"

51) The different LPTX screens provide for the entry of *a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*, and thus, the information the *plurality of levels reflects*. Specifically, *policy information* is met by at least the *Policy* Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table, which stores "loss event, *policy*,

---

[120] Abbruzzese, col.137 ll.40-42.

[121] *See* Abbruzzese, Tables IV to XX (and associated text) and col.3 ll.45-58.

[122] As discussed earlier in Section I.C, the '284 patent was allowed to issue based on this limitation and limitation [1.3]. While the explanation is relevant to this analysis, as a space saving measure it is not duplicated here with the exception of repeating that the first examiner correctly rejected this limitation (when it was claim 29) because "Abbruzzese discloses collection of specific information on the policy, the claim, the participant (insured), and line of property (see Tables IV to XX). These are the *levels* described by the specification as different groups of information collected for claims processing. Abbruzzese discloses a 'claim folder' as the collection of information on a claim in the Loss Claim database." '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 20, 2002.

[and] insured data."[123] The *information related to the insurance transaction* is met by at least the Claim Set-up LPTX screen (Table XIII) and is stored in the Main database's Loss Claim Table, which stores "specific loss and claim data."[124] The *claimant information* is met by at least the *Claimant* Information LPTX screens (Tables IX and XVI ) and Injured Party Information LPTX screen (Table XII) and is stored in the Main database's Loss Event Claimant Table, which stores "potential claimant data."[125] Finally, *insured person* information is met by at least the *Policy* Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table, which stores "loss event, *policy*, [and] insured data."[126] Thus, it is not surprising that the three tables of Abbruzzese's Main database discussed earlier *reflect a policy, the information related to the insurance transaction, claimants and an insured person in a structured format.* Particularly, the Loss Event Policy Table *reflects* "loss event, *policy*, [and] *insured data*" and therefore *reflects* the *policy* and at least a portion *the information related to the insurance transaction*; the Loss Claim Table *reflects* "specific loss and *claim* data" and therefore at least a portion of *the information related to the insurance transaction;* and the Loss Event Claimant Table *reflects* "potential *claimant* data" and therefore the required *claimants.*[127] Additionally, it is inherent that the relational tables of the Main database are in a *structured format*.[128] Thus, the LPTX screens in Abbruzzese's Tables IV to XX and/or the relational tables of Abbruzzese's Main database meet the limitation of "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format.*"[129] Moreover, the Requester would like to reiterate that <u>every</u> other claim limitation was found to exist by the second examiner.

---

[123] *See* Abbruzzese, col.137 l.42 and Table V (and associated text).
[124] *See* Abbruzzese, col.137 l.40 and Table XIII (and associated text).
[125] *See* Abbruzzese, col.137 l.41 and Table IX, XVI, and XII (and associated text).
[126] *See* Abbruzzese, col.137 l.42 and Table V (and associated text).
[127] Abbruzzese, col.137 l.40-42.
[128] Abbruzzese, col.135 ll.26-27.
[129] '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 20, 2002 (As described by the first examiner, "Abbruzzese discloses collection of specific information on the policy, the claim, the participant (insured), and line of property (see Tables IV to XX). These are the *levels* described by the specification as different groups of information collected for claims processing.").