107) Abbruzzese describes the creation and maintenance of a claim file created through the use of the LPTX screens and/or an OCR process, and stored in the Main database.[199] The Loss Claim Table, which stores "specific loss and claim data,"[200] meets the claimed *line level*. *Information related to damaged property for property claims* is associated with one or more of the LPTX screens such as the Auto Third Property Damage Information LPTX screen (Table XI), which provide information to the Loss Claim Table.[201]

TABLE XI

AUTO THIRD PARTY PROPERTY DAMAGE

CUSOTMER TEST 02 PH 123123

OWNER: CUSTOMER TEST
PROPERTY DAMAGE
DESC OF PROP:

DESC OF DAMAGE:

REPAIR EST: ENTER "X" IF SALVAGE POSSIBILITIES:
WHERE DAMAGE CAN BE SEEN:

*Information related to damaged property*

ATTY (N/R): NAME:
IF DRIVER OTHER THAN OWNER - DRIVER NAME:

OTHER PROP INSD BY:
ENTER "X" IF DED AMT APPLIES:
CLM DESC CODE: CLM DESC:
LOSS TYPE: CLM SYM: COV ID: TOTAL LOSS IND:
EST INC LOSS: EST INC ALLOC EXP: VERIFIER:
PTA: JIA: CLAIMS MADE DATE:

| | | | |
|---|---|---|---|
| 1) CLAIM SET-UP | 18) HELP | 30) LOCAL DATA | 16) RETURN |
| 6) ADD CLMT | 13) INJURY | 31) STAT CODING | 23) LC |

Auto Third Party Property Damage LPTX screen. Dashed box and associated text added by the Requester.

[199] *See e.g.*, Abbruzzese, col.3 ll.37-58, col.135 ll.18-39, col.137 ll.40-42, Tables IV to XX (and associated text), and Figures 30-31 (and associated text).
[200] Abbruzzese, col.137 l.40.
[201] *See e.g.*, Abbruzzese, Table XI (and associated text).

108) Accordingly, Abbruzzese discloses "[*t*]*he method of claim 8, wherein the line level further comprises information related to damaged property for property claims.*"[202]

*xix. Dependent Claim 21*

109) Dependent claim 21 is reproduced below:

> [21.0] The method of claim 8, wherein the line level further comprises information related to events, damages and negotiation.

110) Abbruzzese describes the creation and maintenance of a claim file created through the use of the LPTX screens and/or an OCR process, and stored in the Main database.[203] The Loss Claim Table, which stores "specific loss and claim data,"[204] meets the claimed *line level. Information related to events, damages and negotiation* is associated with one or more of the LPTX screens such as the Auto Physical Damage Information LPTX screen (Table X) which provides information about *damages* to the Loss Claim Table.[205]

---

[202] '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 20, 2002 (The first examiner rejected this limitation under 35 U.S.C. § 102(b) because "Abbruzzese discloses collection of specific information on the policy, the claim, the participant (insured), and line of property (see Tables IV to XX). These are the levels described by the specification as different groups of information collected for claims processing. Abbruzzese discloses a 'claim folder' as the collection of information on a claim in the Loss Claim database.").

[203] *See e.g.*, Abbruzzese, col.3 ll.37-58, col.135 ll.18-39, col.137 ll.40-42, Tables IV to XX (and associated text), and Figures 30-31 (and associated text).

[204] Abbruzzese, col.137 l.40.

[205] *See e.g.*, Abbruzzese, Table X (and associated text).

TABLE X

PHYSICAL DAMAGE INFORMATION

CUSTOMER TEST 02 PH 123123

OWNER NAME: CUSTOMER TEST

DESCRIBE DAMAGE TO INSD VEH:

USED W/PERM? (Y/N): PURPOSE OF USE:
REPAIR EST: ENTER "X" IF SALVAGE POSSIBILITIES:
WHERE/WHEN VEH CAN BE SEEN:

ATTY (N/R): NAME:
CLM DESC CODE: CLM DESC:
LOSS TYPE: CLM SYM: COV ID: TOTAL LOSS IND:

EST INC LOSS: EST INC ALLOC EXP: VERIFIER:
PTA: JIA: CLAIMS MADE DATE:

*Information related to damages*

| | | |
|---|---|---|
| 1) CLAIM SET-UP | 13) INJURY | 18) HELP |
| 6) ADD CLMT | 31) STAT CODING | 23) LC |
| 16) RETURN | 11) PHYS DAMAGE | 30) LOCAL DATA |

Physical Damage LPTX screen. Dashed box and associated text added by the Requester.

111) Additionally, the Auto Third Party Property Damage screen (Table XI) also provides information about *damages* to the Loss Claim Table.[206]

[206] *See e.g.*, Abbruzzese, Table XI (and associated text).

TABLE XI

AUTO THIRD PARTY PROPERTY DAMAGE

CUSOTMER TEST 02 PH 123123

OWNER: CUSTOMER TEST
PROPERTY DAMAGE
DESC OF PROP:

Information related to damages

DESC OF DAMAGE:

REPAIR EST: ENTER "X" IF SALVAGE POSSIBILITIES:
WHERE DAMAGE CAN BE SEEN:

ATTY (N/R): NAME:
IF DRIVER OTHER THAN OWNER - DRIVER NAME:

OTHER PROP INSD BY:
ENTER "X" IF DED AMT APPLIES:
CLM DESC CODE: CLM DESC:
LOSS TYPE: CLM SYM: COV ID: TOTAL LOSS IND:
EST INC LOSS: EST INC ALLOC EXP: VERIFIER:
PTA: JIA: CLAIMS MADE DATE:

| | | | |
|---|---|---|---|
| 1) CLAIM SET-UP | 18) HELP | 30) LOCAL DATA | 16) RETURN |
| 6) ADD CLMT | 13) INJURY | 31) STAT CODING | 23) LC |

Auto Third Party Property Damage LPTX screen. Dashed box and associated text added by the Requester.

112) Moreover, the Description of Accident LPTX screen (Table VIII) which provides details about the accident [*events*] to the Loss Claim Table.[207]

[207] *See e.g.*, Abbruzzese, Table VII (and associated text).

TABLE VIII

DESCRIPTION OF ACCIDENT LPTX

CUSTOMER TEST 02 PH 123123

Events

DESCRIBE ACCIDENT:
LOC OF ACCIDENT:
CITY: ST: ZIP:

ENTER "X" IF SUBROGATION POSSIBILITIES:
INVEST AUTHORITY:
VIOLATIONS/CITATIONS: VIOLATION CODE:
REPT TO: REPT TO:

COVERAGE REQ: RSK ALRT: QUESTNBLE COV IND: SVRTY IND:

6) ADD CLMT 14) WITNESS 19) SELF REFER 18) HELP 16) RETURN
15) COMMENTS-CONTACT 28) RESP PARTY 23) LC 27) ERASE LPT

Description of Accident LPTX screen. Dashed box and associated text added by the Requester.

113) Additionally, Abbruzzese discloses that "[p]ayments are one end result of the processing of claims. The entire investigation (adjustment) process and the corresponding documentation is all to determine what, if any, payment is owed to the claimant," which would include *negotiation* about the payment.[208] Thus, Abbruzzese discloses "[*t*]*he method of claim 8, wherein the line level further comprises information related to events, damages and negotiation*."[209]

*xx. Dependent Claim 22*

114) Dependent claim 22 is reproduced below:

> [22.0] The method of claim 8, further comprising a task library administrator interface for adding or editing the rules and tasks in the task library.

---

[208] Abbruzzese, col.55 ll.23-26.

[209] '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 20, 2002 (The first examiner rejected this limitation under 35 U.S.C. § 102(b) because "Abbruzzese discloses collection of specific information on the policy, the claim, the participant (insured), and line of property (see Tables IV to XX). These are the levels described by the specification as different groups of information collected for claims processing. Abbruzzese discloses a 'claim folder' as the collection of information on a claim in the Loss Claim database.")

115) As discussed earlier, Abbruzzese's System Driver generates the proper LPTX screens for data entry [*task*s] based on the insurance organization, claim type, and requested LPTX function.[210] Because the LPTX screens generated by the System Driver are dependent on several factors, the System Driver must utilize a database with one or more rules used to determine which LPTX screen(s) to present based on the factors. This database is one of the "plurality of storage devices 214, 216 and 218" that are accessible to the Main CPU that executes the System Driver.[211] Additionally, an assigned user may choose in which order the LPTX screens are to be filled in [*edit tasks*].[212] Because each of these databases is accessible to the Main CPU and a user via a workstation, there is an *interface for adding or editing rules and tasks* stored in this database [the required *task library administrator interface for adding or editing rules and tasks in the task library*]. Accordingly, Abbruzzese discloses "[*t*]*he method of claim 8, further comprising a task library administrator interface for adding or editing the rules and tasks in the task library*."[213]

## 2. Obviousness Rejections

116) The following quotation of 35 U.S.C. §103 (a) forms the basis for the following obviousness rejections:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been

---

[210] *See e.g.*, Abbruzzese, col.17 ll.14-19, col.18 l.65 to col.19 l.37 and Figs. 38A-F (and associated text).
[211] *See* Abbruzzese, col.13 l.55-59.
[212] *See* Abbruzzese, Tables IV to XX.
[213] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (Both examiners rejected this claim under 35 U.S.C. § 102(b) because "Abbruzzese discloses a task library database for storing rules for determining tasks to be completed upon an occurrence of an event is functionally equivalent to the series of input screens called Loan Processing Transactions (LPTX) in the prior art, whose presentation embodies 'rules' for performing tasks related to each particular line of business subject to the claim (column 3, line 44, to column 4, line 44). To prepare such LPTX screens requires the use [of] an interface for entering the rules for determining tasks and the order and presentation of the LPTX input screens for each claims process.").

> obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

117) Abbruzzese alone renders obvious claims 1-22 of the '284 patent.

*i. Independent Claims 1 and 8*

118) This section addresses claim 1 in the following order: portions [1.2]-[1.3], portions [1.8]-[1.10], and then all remaining portions.

119) Portions [1.2]-[1.3] were cited as justification for allowance specifically:

> the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format.

120) The anticipation section above showed that Abbruzzese's Main database and the LPTX screens met portions [1.2]-[1.3]. To the extent that the levels of the claimed insurance transaction database are not explicitly organized into the groups as claimed, it would have been obvious to organize Abbruzzese's Main database into "a policy, the information related to the insurance transaction, claimants and an insured person in a structured format" because these are explicitly disclosed by Abbruzzese (see the Tables of the LPTX and in Abbruzzese's discussion of the Main database).

121) The *policy information* is met by the LPTX *Policy* Information screen (Table V) and is stored in the Main database's Loss Event Policy Table as "loss event, *policy*, [and] insured data."[214] The *information related to the insurance transaction* is by the Claim Set-up LPTX screen (Table XIII) and is stored in the Main database's Loss Claim Table as "specific loss and claim data."[215] The *claimant information* is met by the

---

[214] *See e.g.*, Abbruzzese, col.137 l.42 and Table V (and associated text).
[215] *See e.g.*, Abbruzzese, col.137 l.40 and Table XIII (and associated text).

Claimant Information LPTX screens (Tables IX and XVI ) and Injured Party Information LPTX screen (Table XII) and is stored in the Main database's Loss Event Claimant Table as "potential claimant data."[216] Finally, *insured person* information is met by the *Policy* Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table as "loss event, *policy*, [and] insured data."[217] To the extent that these aspects of Abbruzzese do not explicitly describe portions [1.2]-[1.3] they are either inherent or would have been obvious to one of ordinary skill in the art.

122) Second, portions [1.8]-[1.10] of claim 1 were argued by the applicants as being distinguishing. However, both examiners found portions [1.8]-[1.10] in Abbruzzese and maintained their rejections.[218] The applicants moved the limitations of dependent claims 29 and 38 (portions [1.2]-[1.3]) into the issued independent claims to overcome both examiners' rejections. The applicants did not make any statement reserving their right to file a continuation or file such a continuation (as previously indicated, the applicants instead filed the voluntary divisional '086 application). As a result, the applicants should not be allowed to argue that these limitations are not in Abbruzzese. To the extent that Abbruzzese does not explicitly describe portions [1.8]-[1.10] they are either inherent or would have been obvious to one of ordinary skill in the art.

123) With respect to the remaining limitations from claim 1 that have already been shown to be anticipated, any details of the claim limitations not explicitly disclosed in Abbruzzese are either inherent or would have been obvious to one of ordinary skill in the art.

124) This section addresses claim 8 in the following order: portions [8.4]-[8.5], and then all remaining portions.

125) Portions [8.4]-[8.5] were cited as justification for allowance specifically:

---

[216] *See e.g.*, Abbruzzese, col.137 l.41 and Tables IX, XVI, and XII (and associated text).
[217] *See e.g.*, Abbruzzese, col.137 l.42 and Table V (and associated text).
[218] *See* '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003.

> wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format;

126) The anticipation section above showed that Abbruzzese's Main database and the LPTX screens met portions [8.4]-[8.5]. To the extent that the levels of the claimed insurance transaction database are not explicitly organized into the groups as claimed, it would have been obvious to organize Abbruzzese's Main database into "a policy, the information related to the insurance transaction, claimants and an insured person in a structured format" because these are explicitly disclosed by Abbruzzese (see the Tables of the LPTX and in Abbruzzese's discussion of the Main database).

127) The *policy information* is met by the LPTX *Policy* Information screen (Table V) and is stored in the Main database's Loss Event Policy Table as "loss event, *policy*, [and] insured data."[219] The *information related to the insurance transaction* is by the Claim Set-up LPTX screen (Table XIII) and is stored in the Main database's Loss Claim Table as "specific loss and claim data."[220] The *claimant information* is met by the Claimant Information LPTX screens (Tables IX and XVI ) and Injured Party Information LPTX screen (Table XII) and is stored in the Main database's Loss Event Claimant Table as "potential claimant data."[221] Finally, *insured person* information is met by the *Policy* Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table as "loss event, *policy*, [and] insured data."[222] To the extent that these aspects of Abbruzzese do not explicitly describe portions [8.4]-[8.5] they are either inherent or would have been obvious to one of ordinary skill in the art.

---

[219] *See e.g.*, Abbruzzese, col.137 l.42 and Table V (and associated text).
[220] *See e.g.*, Abbruzzese, col.137 l.40 and Table XIII (and associated text).
[221] *See e.g.*, Abbruzzese, col.137 l.41 and Tables IX, XVI, and XII (and associated text).
[222] *See e.g.*, Abbruzzese, col.137 l.42 and Table V (and associated text).

128) With respect to the remaining limitations from claim 8, the applicants stated that claim 8 (pending claim 36) "incorporate[d] the same features" as claim 1[223] which have already been shown to be anticipated, furthermore any details of the claim limitations not explicitly disclosed in Abbruzzese are either inherent or would have been obvious to one of ordinary skill in the art.

*ii. Dependent Claims 2-12, 14-19, and 21-22*

129) With respect to these claims, any details of the claims not explicitly disclosed in Abbruzzese are either inherent or would have been obvious to one of ordinary skill in the art.

*iii. Dependent Claim 13*

130) Dependent claim 13 is reproduced below:

> [13.0] The method of claim 10, wherein the policy level further comprises information related to covered yacht for marine claims.

131) As discussed previously, Abbruzzese discloses the required *policy level*. Specifically, Abbruzzese's Loss Event Policy Table, which stores "loss event, policy, [and] insured data," meets the claimed *policy level.*[224] This table may be filled in via the LPTX screens.[225] Furthermore, as described by Abbruzzese, "[a] separate series of LPTX screens is typically available for each line of insurance business (e.g. workmen's compensation, automobile, *property*/liability, fidelity/surety, *etc*.)."[226] While marine claims are not specifically mentioned in these lines of insurance business, it would be obvious to apply the teachings of Abbruzzese to marine claims. Moreover, a yacht is property and therefore already fits one of the lines disclosed by Abbruzzese.

---

[223] '284 patent file history, Response, page 5 (Nov. 14, 2002).
[224] Abbruzzese, col.137 l.42.
[225] *See e.g.*, Abbruzzese, Tables IV to XX (and associated text).
[226] Abbruzzese, col.3 ll.59-62 (emphasis added).

Accordingly, Abbruzzese discloses "[*t*]*he method of claim 10, wherein the policy level further comprises information related to a covered* yacht *for marine claims.*"[227]

*iv. Dependent Claim 20*

132) Dependent claim 20 is reproduced below:

[20.0] The method of claim 8, wherein the line level further comprises information related to damaged yacht for marine claims.

133) As discussed earlier, Abbruzzese discloses the required *line level.* Specific to this claim, the Loss Claim Table, which stores "specific loss and claim data,"[228] meets the claimed *line level.* Abbruzzese discloses that "[a] separate series of LPTX screens [] typically available for each line of insurance business (e.g. workmen's compensation, automobile, *property*/liability, fidelity/surety, etc.)."[229] While marine claims are not specifically mentioned, it would be obvious to apply the teachings of Abbruzzese to marine claims. Moreover, a yacht is property and therefore already fits one of the lines of insurance business disclosed by Abbruzzese. Accordingly, Abbruzzese discloses "[*t*]*he method of claim 8, wherein the line level further comprises information related to damaged yacht for marine claims.*"[230]

[227] *See* '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 20, 2002 (The first examiner rejected this limitation because "Abbruzzese discloses different lines of insurance, i.e. workmen's comp, automobile, property/liability, etc. (column 3, lies 59-64) and LPTX screens to collect information particular to each."). '284 patent file history, Office Action, page 11 (Dec. 20, 2002) (Moreover, the first examiner stated that "a yacht is property and Abbruzzese discloses property/liability claims. Specifying of marine as a type of claim amounts to the recitation of non-functional data; the type of claim has no bearing on the invention as claimed, thus carries no patentable weight.").
[228] Abbruzzese, col.137 l.40.
[229] Abbruzzese, col.3 ll.59-62.
[230] *See* '284 patent file history, Office Actions of Aug. 14, 2002 and Dec. 20, 2002 (The first examiner rejected this limitation because "Abbruzzese discloses different lines of insurance, i.e. workmen's comp, automobile, property/liability, etc. (column 3, lies 59-64) and LPTX screens to collect information particular to each."). '284 patent file history, Office Action, page 11 (Dec. 20, 2002) (Moreover, the first examiner stated that "a yacht is property and Abbruzzese discloses property/liability claims. Specifying of marine as a type of claim amounts to the recitation of non-functional data; the type of claim has no bearing on the invention as claimed, thus carries no patentable weight.").

## C. Rejections Based on a Combination with Abbruzzese

134) The following is a quotation of 35 U.S.C. §103 (a) which forms the basis for the following rejections:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

135) KSR mandates an "expansive and flexible approach" to obviousness.[231] For example, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious."[232] As another example, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."[233] As yet another example, "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one."[234]

### 1. Combination of Abbruzzese and Walker

#### *i. Limitations Except Portions [1.2]-[1.3] and [8.4]-[8.5] of Claims 1 and 8*

136) Claims 1-22 are obvious over the combination of Abbruzzese and Walker. As with the obviousness discussion regarding Abbruzzese alone, the Requester only discusses in detail portions [1.2]-[1.3] and [8.4]-[8.5] because they contain the limitation

---

[231] *KSR Int'l. Co. v. Teleflex Inc.*, 27 S. Ct. 1727, 1739 (Apr. 30, 2007). *See also* M.P.E.P. § 2141.
[232] *KSR Int'l. Co. v. Teleflex Inc.*, 27 S. Ct. 1727, 1740 (Apr. 30, 2007) (citing *Sakraida v. AG Pro, Inc.*, 425 U.S. 273, 282 (1976)). *See also* M.P.E.P. § 2141.
[233] *KSR Int'l. Co. v. Teleflex Inc.*, 27 S. Ct. 1727, 1740 (Apr. 30, 2007). *See also* M.P.E.P. § 2141.
[234] *Id.*

identified as the reason for allowance. With respect to the other limitations of the independent and dependent claims, the Requester respectfully submits that details of the claim limitations not explicitly disclosed in Abbruzzese are either inherent or would have been obvious to one of ordinary skill in the art. Moreover, because Abbruzzese anticipates or renders obvious all of these limitations, as previously discussed, it is not necessary to look at Walker for these limitations.

*ii. Portions [1.2]-[1.3] of Claim 1*

137) Portion [1.2] of claim 1 requires "*the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"[235] To the extent that Abbruzzese's Main database or the LPTX screens are not considered to meet this limitation, Walker's insurance transaction database does. Specifically, through a series of interconnected figures (and associated description), Walker discloses an insurance transaction database with a *plurality of levels*, wherein the *plurality of levels* include *a policy level* (policy number of Figs. 3B and 3F) that reflects a policy, *a claim level* (Fig. 3F) that reflects the information related to the insurance transaction, *a participant level* (policy holder ID of Figs. 3A and 3B) related to the insured person, and *a line level* (Fig. 3F).[236] The relationship between these databases is illustrated below including the columns that are shared between databases.

---

[235] This limitation is unclear. It is similar to a Markush group, but does not include the words "selected" or "consisting" (Markush claims are typically in the form of "selected from the group consisting"). However, with respect to this limitation, the phrase of *from the group* must have some meaning. To determine this meaning, the Requester suggests that it is worthwhile to consider the limitation with this phrase removed. Removing this phrase yields "a plurality of levels comprising" and would be interpreted as requiring all of the recited levels, but not excluding additional levels. Because the phrase "from the group" must mean something, the Requester has interpreted this phrase as requiring two of the recited levels for purposes of this request. The Requester also notes that this limitation does not specify an order for these levels; as such, the levels may be found in any order in the prior art.

[236] *See* Walker, Figs. 3A, 3B, 3F (and associated text).

*Participant level* — POLICY HOLDER DATABASE 310

| POLICY HOLDER ID NUMBER 311 | NAME 312 | ADDRESS 313 | PHONE NUMBER 314 | NUMBER OF ACTIVE POLICIES 315 | SOCIAL SECURITY NUMBER 316 | BIRTHDATE 317 |
|---|---|---|---|---|---|---|
| 4234 | JOE SMITH | 4 GREEN ST. | (203)721-1289 | 1 | 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 | 9/24/43 |
| 4235 | TOM GLAVINE | 5 BLUE RD. | (203)637-3165 | 1 | 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 | 10/26/55 |
| 4236 | MARK MATHER | 6 RED LN. | (203)455-5699 | 1 | 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 | 3/14/74 |

FIG. 3A

*Policy level* — POLICY DATABASE 320

| POLICY NUMBER 327 | POLICY HOLDER ID NUMBER 311 | TYPE OF COVERAGE 321 | EXTENT OF COVERAGE (x 1,000) 322 | ANNUAL PREMIUM 323 | RESTRICTIONS / FEATURES 324 | COVERAGE START / END DATE 325 | PAYMENT PLAN 326 | CLAIMS PENDING 328 |
|---|---|---|---|---|---|---|---|---|
| 365BZ | 4234 | AUTO | $300 | $7,000 | FULL | 3/1/97 - 3/1/98 | MONTHLY | 0 |
| 876CB | 4235 | KIDNAP / HOMICIDE | $100 | $5,000 | AUTOPSY REQUIRED | 3/1/97 - 3/1/00 | MONTHLY | 0 |
| 436TS | 4235 | LIFE | $1,000 | $10,000 | INVALIDATED BY SUICIDE | 2/26/97 - | MONTHLY | 1 |
| 4012TQ | 4235 | NATURAL DISASTER | $10 | $500 | ALL FORMS OF NATURE | 1/1/97 - 1/1/07 | MONTHLY | 0 |
| 4589ZY | 4236 | HURRICANE | $50 | $2,400 | NONE | 3/10/97 - 3/10/98 | MONTHLY | 1 |
| 5632LM | 4237 | EARTHQUAKE | $80 | $3,000 | MUST BE > 7.0 | 5/6/96 - 7/6/98 | MONTHLY | 0 |

FIG. 3B

*Claim and line levels* — CLAIMS DATABASE 360

| POLICY NUMBER 327 | CLAIM NUMBER 361 | OFFERED IN SYNDICATION? 362 | NUMBER OF INVESTORS IN SYNDICATE 335 | RISK ASSUMED IN SYNDICATION 331 |
|---|---|---|---|---|
| 4589ZY | 123A | YES | 500 | $50,000 |

FIG. 3F

Walker's Figures 3A, 3B, and 3F and their relationships.
Dashed box and associated text added by the Requester.

138) As illustrated, "[t]he policy holders of the insurance company are listed in the policy holder database 410" which includes an entry for the policy holder ID

number.[237] This policy holder ID number is found in the policy database, thus relating the two databases ("The fields of the policy database 320 are shown in FIG. 3b. Each policy, identified by a policy number 237, has a separate entry which also includes the policy holder ID number…").[238] The policy number of the policy database is also found in the claim database, thus relating the policy and claim databases ("FIG. 3f shows the fields in the claim database 360…Each entry in the claims database [] includes the policy number 327 of the policy under which the claim was filed.").[239] Accordingly, these figures illustrate a relational database with a plurality of levels.

139) Moreover, with respect to portion [1.3] of claim 1 ("*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*"[240]), Abbruzzese discloses data collection through the LPTX screens as discussed earlier. Specifically, *policy* information is associated with at least the *Policy* Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table, which stores "loss event, *policy*, [and] insured data."[241] This information would be stored in Walker's Policy Database 320. The *information related to the insurance transaction* is associated with at least the Claim Set-up LPTX screen (Table XIII) and is stored in the Main database's Loss Claim Table, which stores "specific loss and claim data."[242] This information would be stored in Walker's Claims Database 360. Information about the *claimants* is associated with at least the *Claimant* Information LPTX screen (Tables IX and XVI) and Injured Party Information LPTX screen (Table XII) and is stored in the Main database's Loss Event

---

[237] Walker, col.6 ll.51-53 and Fig. 3A.
[238] Walker, col.6 ll.58-61 and Fig. 3B.
[239] Walker, col.7 ll.40-43 and Fig. 3F.
[240] The Requester notes that there is not a one-to-one correspondence between the plurality of levels from portion [1.2] and this limitation. While there seems to be a correspondence between the "policy level" and "reflects a policy," the "claim level" and "the information related to the insurance transaction," and the "participant level" and "claimants and an insured person," there is no corresponding "reflection" for the "line level." However, as examples of the "Line Level," the '284 patent includes "Details, Damaged Vehicle for vehicle lines, Damaged Property for property lines, Damaged Yacht for marine lines, [and] Events." '284 patent, col.84 ll.59-63.
[241] *See e.g.*, Abbruzzese, col.137 l.42 and Table V (and associated text).
[242] *See e.g.*, Abbruzzese, col.137 l.40 and Table XIII (and associated text).

Claimant Table, which stores "potential *claimant* data."[243] This information would be stored in Walker's Claims Database 360. *Insured person* information is associated with at least the Policy Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table, which stores "loss event, policy, [and] *insured data*."[244] This information would be stored in Walker's Policy Holder Database 310. Finally, Walker's databases are illustrated as tables (as shown earlier), and therefore are in a *structured format*.

[243] *See e.g.*, Abbruzzese, col.137 l.41 and Tables IX, XVI, and XII (and associated text).
[244] *See e.g.*, Abbruzzese, col.137 l.42 and Table V (and associated text).




FIG. 2

Walker's FIG.2 with the information of the levels and their relationship to Walker's databases called out. Dashed boxes and associated text added by the Requester.

*iii. Portions [8.4]-[8.5] of Claim 8*

140) Portion [8.4] of claim 8 requires "*wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"[245] To the extent that Abbruzzese's Main database or the LPTX screens are not considered to meet this limitation, Walker's insurance transaction database does. Specifically, through a series of interconnected figures (and associated description), Walker discloses an insurance transaction database with a plurality of levels, wherein the plurality of levels include a policy level (policy number of Figs. 3B and 3F) that reflects a policy, a claim level (Fig. 3F) that reflects the information related to the insurance transaction, a participant level (policy id holder of Figs. 3A and 3B) related to the insured person, and a line level (Fig. 3F).[246] The relationship between these databases is illustrated below including the columns that are shared between databases.

[245] This limitation is unclear. It is similar to a Markush group, but does not include the words "selected" or "consisting" (Markush claims are typically in the form of "selected from the group consisting"). However, with respect to this limitation, the phrase of *from the group* must have some meaning. To determine this meaning, the Requester suggests that it is worthwhile to consider the limitation with this phrase removed. Removing this phrase yields "a plurality of levels comprising" and would be interpreted as requiring all of the recited levels, but not excluding additional levels. Because the phrase "from the group" must mean something, the Requester has interpreted this phrase as requiring two of the recited levels for purposes of this request. The Requester also notes that this limitation does not specify an order for these levels; as such, the levels may be found in any order in the prior art.

[246] *See* Walker, Figs. 3A, 3B, 3F (and associated text).

*Participant level* — POLICY HOLDER DATABASE 310

| POLICY HOLDER ID NUMBER 311 | NAME 312 | ADDRESS 313 | PHONE NUMBER 314 | NUMBER OF ACTIVE POLICIES 315 | SOCIAL SECURITY NUMBER 316 | BIRTHDATE 317 |
|---|---|---|---|---|---|---|
| 4234 | JOE SMITH | 4 GREEN ST. | (203)721-1289 | 1 | 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 | 9/24/43 |
| 4235 | TOM GLAVINE | 5 BLUE RD. | (203)637-3165 | 1 | 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 | 10/26/55 |
| 4236 | MARK MATHER | 6 RED LN. | (203)455-5699 | 1 | 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 | 3/14/74 |

FIG. 3A

*Policy level* — POLICY DATABASE 320

| POLICY NUMBER 327 | POLICY HOLDER ID NUMBER 311 | TYPE OF COVERAGE 321 | EXTENT OF COVERAGE (x 1,000) 322 | ANNUAL PREMIUM 323 | RESTRICTIONS / FEATURES 324 | COVERAGE START / END DATE 325 | PAYMENT PLAN 326 | CLAIMS PENDING 328 |
|---|---|---|---|---|---|---|---|---|
| 365BZ | 4234 | AUTO | $300 | $7,000 | FULL | 3/1/97 - 3/1/98 | MONTHLY | 0 |
| 876CB | 4235 | KIDNAP / HOMICIDE | $100 | $5,000 | AUTOPSY REQUIRED | 3/1/97 - 3/1/00 | MONTHLY | 0 |
| 436TS | 4235 | LIFE | $1,000 | $10,000 | INVALIDATED BY SUICIDE | 2/26/97 - | MONTHLY | 1 |
| 4012TQ | 4235 | NATURAL DISASTER | $10 | $500 | ALL FORMS OF NATURE | 1/1/97 - 1/1/07 | MONTHLY | 0 |
| 4589ZY | 4236 | HURRICANE | $50 | $2,400 | NONE | 3/10/97 - 3/10/98 | MONTHLY | 1 |
| 5632LM | 4237 | EARTHQUAKE | $80 | $3,000 | MUST BE > 7.0 | 5/6/96 - 7/6/98 | MONTHLY | 0 |

FIG. 3B

*Claim and line levels* — CLAIMS DATABASE 360

| POLICY NUMBER 327 | CLAIM NUMBER 361 | OFFERED IN SYNDICATION? 362 | NUMBER OF INVESTORS IN SYNDICATE 335 | RISK ASSUMED IN SYNDICATION 331 |
|---|---|---|---|---|
| 4589ZY | 123A | YES | 500 | $50,000 |

FIG. 3F

Walker's Figures 3A, 3B, and 3F and their relationships.
Dashed boxes and associated text added by the Requester.

141) As illustrated, "[t]he policy holders of the insurance company are listed in the policy holder database 410" which includes an entry for the policy holder ID

number.[247] This policy holder ID number is found in the policy database, thus relating the two databases ("The fields of the policy database 320 are shown in FIG. 3b. Each policy, identified by a policy number 237, has a separate entry which also includes the policy holder ID number…").[248] The policy number of the policy database is also found in the claim database, thus relating the policy and claim databases ("FIG. 3f shows the fields in the claim database 360…Each entry in the claims database … includes the policy number 327 of the policy under which the claim was filed.").[249] Accordingly, these figures illustrate a relational database with a plurality of levels.

142) Moreover, with respect to portion [8.5] of claim 8 ("*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*"[250]), Abbruzzese discloses data collection through the LPTX screens as discussed earlier. Specifically, *policy* information is associated with at least the *Policy* Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table, which stores "loss event, *policy*, [and] insured data."[251] This information would be stored in Walker's Policy Database 320. The *information related to the insurance transaction* is associated with at least the Claim Set-up LPTX screen (Table XIII) and is stored in the Main database's Loss Claim Table, which stores "specific loss and claim data."[252] This information would be stored in Walker's Claims Database 360. Information about the *claimants* is associated with at least the *Claimant* Information LPTX screen (Tables IX and XVI) and Injured Party Information LPTX screen (Table XII) and is stored in the Main database's Loss Event

[247] Walker, col.6 ll.51-53 and Fig. 3A.
[248] Walker, col.6 ll.58-61 and Fig. 3B.
[249] Walker, col.7 ll.40-43 and Fig. 3F.
[250] The Requester notes that there is not a one-to-one correspondence between the plurality of levels from portion [1.2] and this limitation. While there seems to be a correspondence between the "policy level" and "reflects a policy," the "claim level" and "the information related to the insurance transaction," and the "participant level" and "claimants and an insured person," there is no corresponding "reflection" for the "line level." However, as examples of the "Line Level," the '284 patent includes "Details, Damaged Vehicle for vehicle lines, Damaged Property for property lines, Damaged Yacht for marine lines, [and] Events." '284 patent, col.84 ll.59-63.
[251] *See e.g.*, Abbruzzese, col.137 l.42 and Table V (and associated text).
[252] *See e.g.*, Abbruzzese, col.137 l.40 and Table XIII (and associated text).

Claimant Table, which stores "potential *claimant* data."[253] This information would be stored in Walker's Claims Database 360. *Insured person* information is associated with at least the Policy Information LPTX screen (Table V) and is stored in the Main database's Loss Event Policy Table, which stores "loss event, policy, [and] *insured data*."[254] This information would be stored in Walker's Policy Holder Database 310. Finally, Walker's databases are illustrated as tables (as shown earlier), and therefore are in a *structured format*.

---

[253] *See e.g.*, Abbruzzese, col.137 l.41 and Tables IX, XVI, and XII (and associated text).
[254] *See e.g.*, Abbruzzese, col.137 l.42 and Table V (and associated text).




FIG. 2

Walker's FIG.2 with the information of the levels and their relationship to Walker's databases called out. Dashed boxes and associated text added by the Requester.

143) Accordingly, the combination of Abbruzzese and Walker teaches the limitation on which the '284 patent was allowed.

*iv. The Combination of Abbruzzese and Walker is Supported in Law*

144) Walker describes the types of databases maintained by insurance organizations when using software like that of Abbruzzese.[255] Specifically, Walker discloses methods for "syndicating the underwriting of an insurance policy" and "buying a share of an insurance policy."[256] Each of these methods requires that an insurance company provide "electronic data including information relating to the policy" such as policy holder, policy, and claim information.[257] Not only does Walker presuppose an insurance organization's database, Walker discloses that this information has a particular tabular format and is divided into separate databases (Policy Holder Database 310, Policy Database 320, and Claims Database 360) by an insurance organization.[258]

145) The Requester submits that the databases of Abbruzzese and Walker are the same. However, to the extent that these databases are different, a person of ordinary skill in the art would have been motivated to make any necessary modifications to Abbruzzese's Main database to allow for interaction with Walker. Specifically, one would have been motivated to use the workflow of Abbruzzese to construct a claim file in one of the database formats described by Walker for compatibility. By creating a claim file that is compatible with Walker's system, an insurance organization could offer another service (the ability to implement Walker's system). Thus, one of ordinary skill in

[255] *See e.g.*, Walker, col.4 ll.54-58 and col.6 ll.31-50.
[256] *See e.g.*, Walker, col.3 ll.15-37 and Figs. 1-2 (and associated text).
[257] *See e.g.*, Walker, col.3 ll.15-37, col.6 l.44 to col.7 l.47, and Figs. 1-2 (and associated text).
[258] *See e.g.*, Walker, col.6 ll.44-50 and Figs. 2-3 ("The data storage device 210 includes several databases: policy holder database 310, policy database 320, syndication (by policy) database 330, investor (by policy) database 340, issuing bank database 350, claims database 360, transaction database 370 and billing/payment database 380. The information in each of these databases is shown in tabular form in FIGS. 3a-3h, respectively.").

the art would have been motivated to use the database structure described by Walker in the system of Abbruzzese.[259]

## 2. Combination of Abbruzzese and Borghesi

### *i. Limitations Except Portions [1.2]-[1.3] and [8.4]-[8.5] of Claims 1 and 8*

146) Claims 1-22 are obvious over the combination of Abbruzzese and Borghesi. As with the obviousness discussion regarding Abbruzzese alone, the Requester only discusses in detail portions [1.2]-[1.3] and [8.4]-[8.5] because they contain the limitation identified as the reason for allowance. With respect to the other limitations of the independent and dependent claims, the Requester respectfully submits that details of the claim limitations not explicitly disclosed in Abbruzzese are either inherent or would have been obvious to one of ordinary skill in the art. Moreover, because Abbruzzese anticipates or renders obvious all of these limitations, as previously discussed, it is not necessary to look at Borghesi for these limitations.

### *ii. Portions [1.2]-[1.3] of Claim 1*

147) Portion [1.2] of claim 1 requires "*the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"[260] To the extent that

---

[259] While this combination qualifies under the above indicated tests for combining references under 35 U.S.C. §103(a), it is noted that this combination also qualifies under other such tests articulated in *KSR Int'l. Co. v. Teleflex Inc.*, 27 S. Ct. 1727 (Apr. 30, 2007). *See also* M.P.E.P. § 2141. For example, the combination qualifies under the stricter "TSM" (teaching, suggestion, motivation) test. Specifically, Walker teaches and motivates this combination by explaining how an insurance organization may leverage its database(s) to provide additional services; and thus, a person of ordinary skill in the art would have been motivated to make any necessary modifications to Abbruzzese's Main database.

[260] This limitation is unclear. It is similar to a Markush group, but does not include the words "selected" or "consisting" (Markush claims are typically in the form of "selected from the group consisting"). However, with respect to this limitation, the phrase of *from the group* must have some meaning. To determine this meaning, the Requester suggests that it is worthwhile to consider the limitation with this phrase removed. Removing this phrase yields "a plurality of levels comprising" and would be interpreted as requiring all of the recited levels, but not excluding additional levels. Because the phrase "from the

Abbruzzese's Main database or the LPTX screens do not meet this limitation, Borghesi's tabular interface and underlying database does. Borghesi uses "[a]n insurance claim datafile containing all data pertinent to an insurance claim."[261] Specifically, "[t]he workfile preferably comprises a plurality of individual sections represented by tabs 102 that designate the contents of that section."[262] Of course, the data entered into these tabs is stored as a workfile in a database. This database would have an arrangement conducive to partitioning with the sections of the tabbed interface. Thus, Borghesi implicitly discloses a database structure for a workfile that has a plurality of sections as defined by the tabs, thus disclosing the required *levels.*

148) Moreover, Borghesi discloses the required *group* of levels as illustrated by in Fig. 6 below by the tabs that correspond to individual sections of the workfile.



FIG.6

---

group" must mean something, the Requester has interpreted this phrase as requiring two of the recited levels for purposes of this request. The Requester also notes that this limitation does not specify an order for these levels; as such, the levels may be found in any order in the prior art.

[261] Borghesi, Summary of the Invention.

[262] Borghesi, col.8 l.66 to col.9 l.2.

Borghesi's FIG.6 with the required levels called out.
Dashed boxes and associated text added by the Requester.

149) Specifically, Borghesi's "ADMIN" tab includes several frames of information accessible through the tab such as a "*policy* information frame [that] includes type of coverage, name of insured and/or claimant [*participants*], *policy* number and provider, deductible amount, expiration date, and other relevant details"[263] and an assignment information tab that includes "the *claim* number, the date the *claim* was reported, the date the *claim* was assigned, and information on who received the assigned *claim*, e.g., the names of the insurance company, appraiser and adjuster, as well as claim office location."[264] Thus, the frames of Borghesi's ADMIN tab reflect the required *policy level*, *claim level*, and *participant level*. Additionally, Borghesi has at least one tab for line data ("the vehicle data tab [which] includes general descriptive information, options, and damage"),[265] thus meeting the required *line level*. The Vehicle and ADMIN tabs are at different levels as illustrated.

150) With respect to portion [1.3] of claim 1 ( "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*"),[266] Abbruzzese discloses data collection through the LPTX screens as discussed earlier. As previously described, the *levels* of Borghesi's ADMIN tab *reflect* a portion of the required data. Specifically, Borghesi's *policy* information frame of the ADMIN tab *reflects a policy*; the parties frame *reflects claimants and an insured person*; and the assignment frame *reflects* the claim information (*the information related to the insurance transaction*).[267] Finally, Borghesi's

[263] *See e.g.*, Borghesi, col.9 ll.39-42 and Fig. 6 (and associated text) (emphasis added).
[264] *See e.g.*, Borghesi, col.9 ll.25-30 and Fig. 6 (and associated text).
[265] *See e.g.*, Borghesi, col.9 ll.57-58.
[266] The Requester notes that there is not a one-to-one correspondence between the plurality of levels from portion [1.2] and this limitation. While there seems to be a correspondence between the "policy level" and "reflects a policy," the "claim level" and "the information related to the insurance transaction," and the "participant level" and "claimants and an insured person," there is no corresponding "reflection" for the "line level." However, as examples of the "Line Level," the '284 patent includes "Details, Damaged Vehicle for vehicle lines, Damaged Property for property lines, Damaged Yacht for marine lines, [and] Events." '284 patent, col.84 ll.59-63.
[267] *See* Borghesi, col.9 ll.39-42.

tabs have a *structured format* which implies that the underlying database storing the information of these tabs also has a *structured format*. Additionally, Borghesi's Fig. 6 has been repeatedly used to reject these limitations in the related '146 application.[268]

*iii. Portions [8.4]-[8.5] of Claim 8*

151) Portion [8.4] of claim 8 requires "*the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"[269] To the extent that Abbruzzese's Main database or the LPTX screens do not meet this limitation, Borghesi's tabular interface and underlying database does. Borghesi uses "[a]n insurance claim datafile containing all data pertinent to an insurance claim."[270] Specifically, "[t]he workfile preferably comprises a plurality of individual sections represented by tabs 102 that designate the contents of that section."[271] Of course, the data entered into these tabs is stored in as a workfile in a database. This database would have an arrangement conducive to partitioning with the sections of the tabbed interface. Thus, Borghesi implicitly discloses a database structure for a workfile that has a plurality of sections as defined by the tabs, thus disclosing the required levels.

152) Moreover, Borghesi discloses the required *group* of levels as illustrated by in Fig. 6 below by the tabs that correspond to individual sections of the workfile.

[268] *See* '146 application file history, Office Actions of May 20, 2004; Jan. 21, 2005; and Aug. 23, 2005 and Examiner's Reply of July 30, 2007.
[269] This limitation is unclear. It is similar to a Markush group, but does not include the words "selected" or "consisting" (Markush claims are typically in the form of "selected from the group consisting"). However, with respect to this limitation, the phrase of *from the group* must have some meaning. To determine this meaning, the Requester suggests that it is worthwhile to consider the limitation with this phrase removed. Removing this phrase yields "a plurality of levels comprising" and would be interpreted as requiring all of the recited levels, but not excluding additional levels. Because the phrase "from the group" must mean something, the Requester has interpreted this phrase as requiring two of the recited levels for purposes of this request. The Requester also notes that this limitation does not specify an order for these levels; as such, the levels may be found in any order in the prior art.
[270] Borghesi, Summary of the Invention.
[271] Borghesi, col.8 l.66 to col.9 l.2.