


Borghesi's FIG.6 with the required levels called out.
Dashed boxes and associated text added by the Requester.

153) Specifically, Borghesi's "ADMIN" tab includes several frames of information accessible through the tab such as a "*policy* information frame [that] includes type of coverage, name of insured and/or claimant [*participants*], *policy* number and provider, deductible amount, expiration date, and other relevant details"[272] and an assignment information tab that includes "the *claim* number, the date the *claim* was reported, the date the *claim* was assigned, and information on who received the assigned *claim*, e.g., the names of the insurance company, appraiser and adjuster, as well as claim office location."[273] Thus, the frames of Borghesi's ADMIN tab reflect the required *policy level*, *claim level*, and *participant level*. Additionally, Borghesi has at least one tab for line data ("the vehicle data tab [which] includes general descriptive

[272] *See e.g.*, Borghesi, col.9 ll.39-42 and Fig. 6 (and associated text) (emphasis added).
[273] *See e.g.*, Borghesi, col.9 ll.25-30 and Fig. 6 (and associated text).

information, options, and damage"),[274] thus meeting the required *line level.* The Vehicle and ADMIN tabs are at different levels as illustrated.

154) With respect to portion [8.5] of claim 8 ( *"wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*"),[275] Abbruzzese discloses data collection through the LPTX screens as discussed earlier. As previously described, the levels of Borghesi's ADMIN tab reflect a portion of the required data. Specifically, Borghesi's policy information frame of the ADMIN tab reflects a policy; the parties frame reflects claimants and an insured person; and the assignment frame reflects the claim information (the information related to the insurance transaction).[276] Finally, Borghesi's tabs have a structured format which implies that the underlying database storing the information of these tabs also has a structured format. Additionally, Borghesi's Fig. 6 has been repeatedly used to reject these limitations in the related '146 application.[277]

155) Accordingly, the combination of Abbruzzese and Borghesi teaches the limitation on which the '284 patent was allowed.

*iv. The Combination of Abbruzzese and Borghesi is Supported in Law*

156) The combination of Abbruzzese and Borghesi in which the database and data/entry screens of Abbruzzese are replaced/augmented with those of Borghesi is obvious. Abbruzzese and Borghesi both describe workflow management for insurance claims processing. Borghesi discloses "[a]n insurance claim datafile containing all data

---

[274] *See e.g.*, Borghesi, col.9 ll.57-58.

[275] The Requester notes that there is not a one-to-one correspondence between the plurality of levels from portion [1.2] and this limitation. While there seems to be a correspondence between the "policy level" and "reflects a policy," the "claim level" and "the information related to the insurance transaction," and the "participant level" and "claimants and an insured person," there is no corresponding "reflection" for the "line level." However, as examples of the "Line Level," the '284 patent includes "Details, Damaged Vehicle for vehicle lines, Damaged Property for property lines, Damaged Yacht for marine lines, [and] Events." '284 patent, col.84 ll.59-63.

[276] *See* Borghesi, col.9 ll.39-42.

[277] *See* '146 application file history, Office Actions of May 20, 2004; Jan. 21, 2005; and Aug. 23, 2005 and Examiner's Reply of July 30, 2007.

pertinent to an insurance claim."[278] "The workfile preferably comprises a plurality of individual sections represented by tabs 102 that designate the contents of that section."[279] Of course, the data entered into these tabs is stored in a database. This database would have an arrangement conducive to partitioning with the sections of the tabbed interface. Thus, Borghesi implicitly discloses a database structure for a workfile that has a plurality of sections as defined by the tabs. The Requester submits that the databases of Abbruzzese and Borghesi store similar content. Moreover, while Abbruzzese and Borghesi disclose different screens (LPTX screens and a tabbed interface respectively), both allow for data entry and presentation for insurance claim processing.

157) The combination of Abbruzzese and Borghesi in which the database and data/entry screens of Abbruzzese are replaced/augmented with those of Borghesi is obvious because it is simply the combination of old elements that perform the same function to obtain a predictable result. The choice of how to implement a database and/or data entry/display is arbitrary and many combinations between slightly different systems exist. Independently, one of ordinary skill would improve Abbruzzese by using the known technique of tabbed interfaces described in Borghesi. Additionally, it would be obvious to one of ordinary skill in the art to use the known technique of Borghesi's tabbed interface to improve the similar data entry/presentation of Abbruzzese in the same way.[280]

---

[278] Borghesi, Summary of the Invention.

[279] Borghesi, col.8 l.66 to col.9 l.2.

[280] While this combination qualifies under the above indicated test for combining references under 35 U.S.C. §103(a), it is noted that it also qualifies under other such tests articulated in *KSR Int'l. Co. v. Teleflex Inc.*, 27 S. Ct. 1727 (Apr. 30, 2007). *See also* M.P.E.P. § 2141. For example, the combination qualifies under the stricter so called "TSM" (teaching, suggestion, motivation) test. Specifically, one of ordinary skill in the art may be motivated to combine Abbruzzese with Borghesi by substituting the LPTX screens and database of Abbruzzese for the tabbed interface and database of Borghesi if he believed that to be an improvement.

### 3. Combination of Abbruzzese and Schreitmueller

*i. Limitations Except Portions [1.2]-[1.3] and [8.4]-[8.5] of Claims 1 and 8*

158) Claims 1-22 are obvious over the combination of Abbruzzese and Schreitmueller. As with the obviousness discussion regarding Abbruzzese alone, the Requester only discusses in detail portions [1.2]-[1.3] and [8.4]-[8.5] because they contain the limitation identified as the reason for allowance. With respect to the other limitations of the independent and dependent claims, the Requester respectfully submits that details of the claim limitations not explicitly disclosed in Abbruzzese are either inherent or would have been obvious to one of ordinary skill in the art. Moreover, because Abbruzzese anticipates or renders obvious all of these limitations, as previously discussed, it is not necessary to look at Schreitmueller for these limitations.

*ii. Portions [1.2]-[1.3] of Claim 1*

159) Portion [1.2] of claim 1 requires *"the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level."*[281] As previously discussed, Abbruzzese's Main database or the LPTX screens meet this limitation. Schreitmueller also discloses the entry/presentation of the information of the required *level*s. Specifically, Schreitmueller's Administrative page allows for the entry/presentation of information for the *policy, claim*, and *participant level*s.[282]

[281] This limitation is unclear. It is similar to a Markush group, but does not include the words "selected" or "consisting" (Markush claims are typically in the form of "selected from the group consisting"). However, with respect to this limitation, the phrase of *from the group* must have some meaning. To determine this meaning, the Requester suggests that it is worthwhile to consider the limitation with this phrase removed. Removing this phrase yields "a plurality of levels comprising" and would be interpreted as requiring all of the recited levels, but not excluding additional levels. Because the phrase "from the group" must mean something, the Requester has interpreted this phrase as requiring two of the recited levels for purposes of this request. The Requester also notes that this limitation does not specify an order for these levels; as such, the levels may be found in any order in the prior art.

[282] *See e.g.*, Schreitmueller, Fig. 3 (and associated text).




FIG. 3D

Schreitmueller's FIG.3D with the information for the required levels called out. Dashed boxes and associated text added by the Requester.

160) The Damages page allows for the entry/presentation of detailed line information of the *line level* for a *claim folder*.[283]

[283] *See e.g.*, Schreitmueller, Fig. 5 (and associated text).




FIG. 5A

Schreitmueller's FIG.5A with the information for the required levels called out. Dashed boxes and associated text added by the Requester.

161) Thus, Schreitmueller discloses the entry/presentation of the *plurality of levels* of an *insurance transaction database comprising a claim folder*.

162) With respect to portion [1.3] of claim 1 ("*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*"),[284] Abbruzzese discloses data collection through the LPTX screens as discussed earlier. Schreitmueller collects similar data and more. The data of Schreitmueller's Administrative page *reflects* a portion of the required data and could be populated into Abbruzzese's Main database tables. Specifically, the Administrative page *reflects a policy, the information related to the insurance*

[284] The Requester notes that there is not a one-to-one correspondence between the plurality of levels from portion [1.2] and this limitation. While there seems to be a correspondence between the "policy level" and "reflects a policy," the "claim level" and "the information related to the insurance transaction," and the "participant level" and "claimants and an insured person," there is no corresponding "reflection" for the "line level." However, as examples of the "Line Level," the '284 patent includes "Details, Damaged Vehicle for vehicle lines, Damaged Property for property lines, Damaged Yacht for marine lines, [and] Events." '284 patent, col.84 ll.59-63.

*transaction, claimants and an insured person in a structured format.*[285] Additionally, Abbruzzese's Main database tables could be augmented to include the additional detailed information of Schreitmueller's Damage page [*the information related to the insurance transaction*].[286]

*iii. Portions [8.4]-[8.5] of Claim 8*

163) Portion [8.4] of claim 8 requires "*the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*"[287] As previously discussed, Abbruzzese's Main database or the LPTX screens meet this limitation. Schreitmueller also discloses the entry/presentation of the information of the required levels. Specifically, Schreitmueller's Administrative page allows for the entry/presentation of information for the policy, claim, and participant levels.[288]

[285] *See e.g.*, Schreitmueller, col.5 l.21 to col.6 l.38 and Figures 1 and 3A (and associated text).
[286] *See e.g.*, Schreitmueller, Figs.4-5 (and associated text).
[287] This limitation is unclear. It is similar to a Markush group, but does not include the words "selected" or "consisting" (Markush claims are typically in the form of "selected from the group consisting"). However, with respect to this limitation, the phrase of *from the group* must have some meaning. To determine this meaning, the Requester suggests that it is worthwhile to consider the limitation with this phrase removed. Removing this phrase yields "a plurality of levels comprising" and would be interpreted as requiring all of the recited levels, but not excluding additional levels. Because the phrase "from the group" must mean something, the Requester has interpreted this phrase as requiring two of the recited levels for purposes of this request. The Requester also notes that this limitation does not specify an order for these levels; as such, the levels may be found in any order in the prior art.
[288] *See e.g.*, Schreitmueller, Fig. 3 (and associated text).




FIG. 3D

Schreitmueller's FIG.3D with the information for the required levels called out. Dashed boxes and associated text added by the Requester.

164) The Damages page allows for the entry/presentation of detailed line information of the *line level* for a *claim folder*.[289]

[289] *See e.g.*, Schreitmueller, Fig. 5 (and associated text).




Schreitmueller's FIG.5A with the information for the required levels called out. Dashed boxes and associated text added by the Requester.

165) Thus, Schreitmueller discloses the entry/presentation of the *plurality of levels* of an *insurance transaction database comprising a claim folder*.

166) With respect to portion [8.5] of claim 8 ("*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*"),[290] Abbruzzese discloses data collection through the LPTX screens as discussed earlier. Schreitmueller collects similar data and more. The data of Schreitmueller's Administrative page *reflects* a portion of the required data and could be populated into Abbruzzese's Main database tables. Specifically, the Administrative page *reflects a policy, the information related to the insurance*

[290] The Requester notes that there is not a one-to-one correspondence between the plurality of levels from portion [1.2] and this limitation. While there seems to be a correspondence between the "policy level" and "reflects a policy," the "claim level" and "the information related to the insurance transaction," and the "participant level" and "claimants and an insured person," there is no corresponding "reflection" for the "line level." However, as examples of the "Line Level," the '284 patent includes "Details, Damaged Vehicle for vehicle lines, Damaged Property for property lines, Damaged Yacht for marine lines, [and] Events." '284 patent, col.84 ll.59-63.

*transaction, claimants and an insured person in a structured format.*[291] Additionally, Abbruzzese's Main database tables could be augmented to include the additional detailed information of Schreitmueller's Damage page [*the information related to the insurance transaction*].[292]

167) Accordingly, the combination of Abbruzzese and Schreitmueller teaches the limitation on which the '284 patent was allowed.

*iv. The Combination of Abbruzzese and Schreitmueller is Supported in Law*

168) The combination of Abbruzzese and Schreitmueller in which the database and data/entry screens of Abbruzzese are augmented with those of Schreitmueller is obvious. Abbruzzese and Schreitmueller both describe aspects of insurance claims processing. Schreitmueller illustrates a tabbed approach with many pages for insurance estimating.[293] One of the screens available through this tabbed approach is a claim Administration page for the entry/presentation of policy, claim, and participant information.[294] Schreitmueller also discloses a Damages page for the entry/presentation of detailed line item data including "damage to various 'layers' of a vehicle,"[295] such as vehicle parts.[296] The information entered/presented by these screens is inherently stored in a database. The Requester submits that the information stored in the databases of Abbruzzese and Schreitmueller is similar, but that Schreitmueller's line item data is more detailed than the similar data of Abbruzzese. Moreover, while Abbruzzese and Schreitmueller disclose different screens (LPTX screens and a tabbed interface respectively), both allow for data entry and presentation for insurance claim processing.

169) The combination of Abbruzzese and Schreitmueller in which the database and data/entry screens of Abbruzzese are augmented with the line item data of

---

[291] *See e.g.*, Schreitmueller, col.5 l.21 to col.6 l.38 and Figures 1 and 3A (and associated text).
[292] *See e.g.*, Schreitmueller, Figs.4-5 (and associated text).
[293] *See e.g.*, Schreitmueller, col.4 l.21, col.5 ll.21-35, and Figures 1 and 3 (and associated text).
[294] *See e.g.*, Schreitmueller, col.5 l.21 to col.6 l.38 and Figures 1 and 3 (and associated text).
[295] *See e.g.*, Schreitmueller, Abstract.
[296] *See e.g.*, Schreitmueller, Figure 5A (and associated text).

Schreitmueller is obvious because it would improve Abbruzzese by having the additional detail provided by the Damages page described in Schreitmueller. Additionally, it would be obvious to one of ordinary skill in the art to use the known technique of Schreitmueller's tabbed interface to improve the similar data entry/presentation of Abbruzzese in the same way.[297]

**4. Combination of Abbruzzese and Kwang**

*i. Rejections of Claims 1 and 8*

170) Claims 1 and 8 are obvious over the combination of Abbruzzese and Kwang as set forth below. Additionally, the Requester respectfully submits that a detailed discussion of these claims is included in Exhibit L.

*ii. Independent Claim 1*

171) Independent claim 1 is reproduced below:

> [1.0] A system for generating tasks to be performed in an insurance organization, the system comprising:
> [1.1] an insurance transaction database for storing information related to an insurance transaction, [1.2] the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, [1.3] wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format;
> [1.4] a task library database for storing rules for determining tasks to be completed upon an occurrence of an event;
> [1.5] a client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction, [1.6] said client component enabling access by an

[297] While this combination qualifies under the above indicated test for combining references under 35 U.S.C. §103(a), it is noted that it also qualifies under other such tests articulated in *KSR Int'l. Co. v. Teleflex Inc.*, 27 S. Ct. 1727 (Apr. 30, 2007). *See also* M.P.E.P. § 2141. For example, the combination qualifies under the stricter "TSM" (teaching, suggestion, motivation) test. Specifically, one of ordinary skill in the art would have been motivated to augment Abbruzzese's database with the additional detail provided by Schreitmueller to improve upon the information captured by Abbruzzese's LPTX screens.

assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion; and

[1.7] a server component in communication with the client component, the transaction database and the task library database, [1.8] the server component including an event processor, a task engine and a task assistant;

[1.9] wherein the event processor is triggered by application events associated with a change in the information, and sends an event trigger to the task engine; [1.10] wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component.

172) Portion [1.0] of claim 1 (the preamble) requires "*A system for generating tasks to be performed in an insurance organization.*"

173) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Additionally, Kwang discloses *generating tasks to be performed* in a workflow management system. Specifically, Kwang's "Script Engine" *generat*es "activities" which "are made up of *tasks* and the *tasks* are comprised of task items that are lists of actions *to be performed* on the associated information in the enterprise database."[298]

174) Thus, the combination of Abbruzzese and Kwang discloses "*A system for generating tasks to be performed in an insurance organization.*"[299] To the extent that any details are not explicitly disclosed by the combination, they are either inherent or would have been obvious to one of ordinary skill in the art.

175) Portion [1.1] of claim 1 requires "*an insurance transaction database for storing information related to an insurance transaction.*"[300]

[298] *See, e.g.*, Kwang, col.3 ll.3-6 and Fig.2 (and associated text).

[299] '284 patent file history, Office Actions of Aug. 14, 2002; Dec. 20, 2002; and June 30, 2003 (Both examiners noted that "Abbruzzese teaches claims processing as a task performed by an insurance organization." Citing, Abbruzzese, col.1 ll.27-43.).

[300] The Requester notes that the phrase "an insurance transaction" only appears in the claims. For purposes of this request, the Requester has interpreted this broadly to mean the processing of an

*176)* As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Additionally, Kwang discloses a relational *database*, "enterprise *database* 12," to store data to be used in Kwang's system.[301] It would be obvious to one of ordinary skill in the art to use this *database* to store *information related to an insurance transaction.* Thus, the combination of Abbruzzese and Kwang would have "*an insurance transaction database for storing information related to an insurance transaction*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

177) Portion [1.2] of claim 1 requires "*the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level*."[302]

178) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Additionally, one of ordinary skill in the art would understand that Kwang's enterprise *database*, which, like Abbruzzese's Main database is a relational *database,* may be utilized to store the *insurance claim* file information stored in Abbruzzese's tables. Thus, the combination of Abbruzzese and Kwang would have "*the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level*." To the extent that the

---

insurance claim and that the information associated with this transaction is information regarding the claim itself (such as the policy involved, claimant, etc.).

[301] *See e.g.*, Kwang, Figures 1 and 2 and associated text.

[302] This limitation is unclear. It is similar to a Markush group, but does not include the words "selected" or "consisting" (Markush claims are typically in the form of "selected from the group consisting"). However, with respect to this limitation, the phrase of *from the group* must have some meaning. To determine this meaning, the Requester suggests that it is worthwhile to consider the limitation with this phrase removed. Removing this phrase yields "a plurality of levels comprising" and would be interpreted as requiring all of the recited levels, but not excluding additional levels. Because the phrase "from the group" must mean something, the Requester has interpreted this phrase as requiring two of the recited levels for purposes of this request. The Requester also notes that this limitation does not specify an order for these levels; as such, the levels may be found in any order in the prior art.

combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

179) Portion [1.3] of claim 1 requires "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*."[303]

180) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Additionally, as stated in [1.3] above, Kwang's enterprise database may store the relational tables of Abbruzzese's Main database. Thus, the combination of Abbruzzese and Kwang also teaches the limitation of "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

181) Portion [1.4] of claim 1 requires "*a task library database for storing rules for determining tasks to be completed upon an occurrence of an event*."

182) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Additionally, Kwang's Script Engine includes a *library* of "objects used in the system" [the required *task library database*].[304]

---

[303] The Requester notes that there is not a one-to-one correspondence between the plurality of levels from portion [1.2] and this limitation. While there seems to be a correspondence between the "policy level" and "reflects a policy," the "claim level" and "the information related to the insurance transaction," and the "participant level" and "claimants and an insured person," there is no corresponding "reflection" for the "line level." However, as examples of the "Line Level," the '284 patent includes "Details, Damaged Vehicle for vehicle lines, Damaged Property for property lines, Damaged Yacht for marine lines, [and] Events." '284 patent, col.84 ll.59-63.
[304] *See e.g.*, Kwang, col.5 ll.14-15 and Fig. 2.




FIG.2

Kwang Fig. 2 – Dashed Line and Text Added by the Requester

183) These objects include scripted *rules* which are evaluated above the receipt of an external trigger to generate an activity which is a collection of *tasks to be completed* [*rules for determining tasks to be completed upon an occurrence of an event*].[305] Thus, Kwang discloses "*a task library database for storing rules for determining tasks to be completed upon an occurrence of an event.*"

184) Accordingly, the combination of Abbruzzese and Kwang would have "*a task library database for storing rules for determining tasks to be completed upon an occurrence of an event.*" To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

185) Portion [1.5] of claim 1 requires "*a client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction.*"

[305] *See e.g.*, Kwang, col.3 ll.3-5, col.10 ll.3-9 and ll.42-50.

186) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang also discloses a *client* that communicates with Kwang's enterprise *database* to provide updated information when data is modified.[306]




Kwang Fig.1 – Dashed Line and Text Added by the Requester

187) Thus, the combination of Kwang and Abbruzzese would have "*a client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

---

[306] *See e.g.*, Kwang, Fig. 1, col.3 ll.15-17, col.4 ll.60-61, and col.10 ll.60-62.

188) Portion [1.6] of claim 1 requires "*said client component enabling access by an assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion*."

189) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang's *client* enables access by a user to a list of *tasks* of an activity.[307] In particular, a "user … may begin a process at a *client* by receiving a list of activities, *tasks* and *task* items. Each activity is available to the user by showing up on the user's list of available activities. When a user views a *task* item, that view may display information or require information to be furnished or may have messages about information being processed. When a user completes all the *task* items in an activity, the activity is moved to the list of completed activities."[308] When combined with Abbruzzese, the client would have access to the various LPTX screens to complete.

190) Thus, the combination of Abbruzzese and Kwang would have a "*client component enabling access by an assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

191) Portion [1.7] of claim 1 requires "*a server component in communication with the client component, the transaction database and the task library database*."

192) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang discloses a *server* that *communicat*es with a *client* and enterprise *database* [the required *client component* and *transaction database*].[309]

---

[307] *See e.g.*, Kwang, col.3 ll.55-57.
[308] Kwang, col.3, ll.7-15.
[309] *See e.g.*, Kwang, Figures 1 and 2, col.4 ll.60-62.