


FIG.2

Kwang Fig. 2 – Dashed Lines and Text Added by the Requester. Client connects to the server of Fig. 2 through "Comm. Ether."

193) The *server* also includes the script engine, which as described earlier includes a *library* of objects including *tasks*.[310] Kwang therefore discloses "*a server component in communication with the client component, the transaction database and the task library database*."

194) Thus, the combination of Abbruzzese and Kwang would have "*a server component in communication with the client component, the transaction database and the task library database*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

195) Portion [1.8] of claim 1 requires "*the server component including an event processor, a task engine and a task assistant*."

196) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang's *server* includes an *event* manager [the required *event processor*],

---

[310] *See, e.g.*, Kwang, Fig. 2, col.3 ll.3-5, col.5 ll.14-15, and col.10 ll.3-9 and ll.42-50.

a script *engine* [the required *task engine*], and activity and communication managers [the required *task assistant*] as discussed above.[311]




FIG.2

Kwang Fig. 2 – Dashed Lines and Text Added by the Requester.

197) Accordingly, Kwang also discloses "the server component including an event processor, a task engine and a task assistant."

198) Thus, the combination of Abbruzzese and Kwang would have "*the server component including an event processor, a task engine and a task assistant*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

199) Portion [1.9] of claim 1 requires "*wherein the event processor is triggered by application events associated with a change in the information, and sends an event trigger to the task engine*."

---

[311] Kwang, Fig. 2 and associated text.

200) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang's *event* manager [the required *event processor*] "is used to monitor stimuli" such as external events [*trigger*s] and then maps them to system events.[312]




FIG.2

Kwang Fig. 2 – Dashed Lines and Text Added by the Requester.

201) These *even*ts may be "time base[d], application directed" or associated with "a *change* to the data."[313] Thus, the event manager *is triggered by application events associated with a change in the information*. Furthermore, these "*events* normally *trigger* the evaluation or continuation of scripted logic" by the script [*task*] *engine* [the required *sends an event trigger to the task engine*].[314] Thus, Kwang discloses "*wherein the event processor is triggered by application events associated with a change in the information, and sends an event trigger to the task engine*."

202) Thus, the combination of Abbruzzese and Kwang would have "*wherein the event processor is triggered by application events associated with a change in the*

[312] Kwang, col.2, l.61-col.3, l.1; col. 4, ll.10-11, and Fig. 2.
[313] Kwang, col.4, ll.13-14.
[314] Kwang, col.10 ll.3-9 and Fig. 2.

*information, and sends an event trigger to the task engine*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

203) Portion [1.10] of claim 1 requires "*wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component*."[315]

204) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. As discussed in [1.9], Kwang's script engine [*task engine*] receives *trigger*s from the event manager.[316] In response to these triggers [*wherein in response to the event trigger*], the script engine generates a list of *tasks* to be completed as a part of an activity from the rules stored in the script engine [*the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed*].[317]

---

[315] The limitations of portions [1.8]-[1.10] were repeatedly argued by the applicants as being allowable over Abbruzzese. However, both examiners found these limitations in Abbruzzese and maintained their rejections. The applicants acquiesced to the examiners' position by moving the dependent claims up, failing to make any statement reserving their right to file a continuation to pursue these claims, and failing to file such a continuation (as previously indicated, the applicants instead filed the voluntary divisional '086 application).
[316] Kwang, Fig. 2 and col.10 ll3-9.
[317] *See e.g.*, Kwang, col.5, ll.14-15; col.6, ll.11; col.10, 5-10, and Fig. 2.



FIG.2

Kwang Fig. 2 – Dashed Lines and Text Added by the Requester.

205) "A list of activities, tasks and task times" to be completed are then sent to a user at a client via the activity manager and client administrator [*populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component*]. [*See e.g.*, Kwang, col.10, ll.8-9 and 38-41, and Fig. 2.] Thus, Kwang discloses

206) "wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component."

207) Thus, the combination of Abbruzzese and Kwang would have "*wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the*

*client component*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

*iii. Independent Claim 8*

208) Independent claim 8 is reproduced below:

> [8.0] An automated method for generating tasks to be performed in an insurance organization, the method comprising:
> [8.1] transmitting information related to an insurance transaction;
> [8.2] determining characteristics of the information related to the insurance transaction;
> [8.3] applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed, [8.4] wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, [8.5] wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format;
> [8.6] transmitting the determined task to a task assistant accessible by an assigned claim handler, wherein said client component displays the determined task;
> [8.7] allowing an authorized user to edit and perform the determined task and to update the information related to the insurance transaction in accordance with the determined task;
> [8.8] storing the updated information related to the insurance transaction; and
> [8.9] generating a historical record of the completed task.

209) Portion [8.0] of claim 8 (the preamble) requires "*An automated method for generating tasks to be performed in an insurance organization, the method comprising*."

210) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Additionally, Kwang discloses *generating tasks to be performed* in a workflow management system. Specifically, Kwang's "Script Engine" *generat*es "activities" which "are made up of *tasks* and the *tasks* are comprised of task items that

are lists of actions *to be performed* on the associated information in the enterprise database."[318]

211) Thus, the combination of Abbruzzese and Kwang would have "*A system for generating tasks to be performed in an insurance organization*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

212) Portion [8.1] of claim 8 requires "*transmitting information related to an insurance transaction*."

213) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang discloses transmitting external triggers that include "database *information*."[319] Thus, the combination of Abbruzzese and Kwang would have "*transmitting information related to an insurance transaction*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

214) Portion [8.2] of claim 8 requires "*determining characteristics of the information related to the insurance transaction*."

215) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang discloses an event manager to "handle[] the external stimuli or triggers to the system" [*information*].[320] "The external triggers are mapped to system events and handled by the event manager" [the required *determining characteristics of the information related to the insurance transaction*].[321] Thus, Kwang discloses "*determining characteristics of the information related to the insurance transaction*."

216) The combination of Abbruzzese and Kwang therefore would have "*determining characteristics of the information related to the insurance transaction*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe

---

[318] *See, e.g.*, Kwang, col.3 ll.3-6 and Fig.2 (and associated text).
[319] Kwang, Fig. 2 and associated text.
[320] Kwang, Fig. 2 and col.5 ll.5-6.
[321] ]

this portion, it would be inherent or would have been obvious to one of ordinary skill in the art.

217) Portion [8.3] of claim 8 requires "*applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed*."

218) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang discloses a script engine that receives triggers [*information* related to an event] from an event manager.[322] When evaluating these triggers, the script engine generates a list of *tasks* to be completed as a part of an activity from the *rules* stored in the script engine [*applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed*].[323]




FIG.2

Kwang Fig. 2 – Dashed Lines and Text Added by the Requester.

219) Thus, Kwang discloses "applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed."

---

[322] Kwang, Fig. 2 and col.10 ll3-9.

[323] *See e.g.*, Kwang, col.5, ll.14-15; col.6, ll.11; col.10, 5-10, and Fig. 2.

220) Thus, the combination of Abbruzzese and Kwang would have "*applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

221) Portion [8.4] of claim 8 requires "*wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level*."

222) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang's *server* includes an *event* manager [the required *event processor*] which communicates with an enterprise *database*.[324]




FIG.2

Kwang Fig. 2 – Dashed Lines and Text Added by the Requester

[324] Kwang, Fig. 2 and associated text.

223) One of ordinary skill in the art would understand that Kwang's enterprise *database*, which, like Abbruzzese's Main database is a relational *database,* may be utilized to store the *insurance claim* file information stored in Abbruzzese's tables.

224) Thus, the combination of Abbruzzese and Kwang would have "*wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level.*" To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

225) Portion [8.5] of claim 8 requires "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*."

226) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. As stated in [1.3], Kwang's enterprise database may store the relational tables of Abbruzzese's Main database. Thus, the combination of Abbruzzese and Kwang also teaches the limitation of "*wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

227) Portion [8.6] of claim 8 requires "*transmitting the determined task to a task assistant accessible by an assigned claim handler, wherein said client component displays the determined task*."

228) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang's script engine receives triggers from the event manager.[325] In response to these triggers, the script engine generates a list of *tasks* to be completed as a part of an activity from the rules stored in the script engine.[326] "A list of activities,

[325] Kwang, Fig. 2 and col.10 ll.3-9.

[326] *See e.g.,* Kwang, col.5, ll.14-15; col.6, ll.11; col.10, 5-10, and Fig. 2.

tasks and task times" to be completed are then sent to a user at a *client* via the activity manager and client administrator.[327]




FIG.2

Kwang Fig. 2 – Dashed Lines and Text Added by the Requester. Client not shown but communicates with the server through "COMM ETHER."

229) Thus, Kwang discloses "*transmitting the determined task to a task assistant accessible by an assigned claim handler, wherein said client component displays the determined task.*"

230) The combination of Abbruzzese and Kwang would therefore have "*transmitting the determined task to a task assistant accessible by an assigned claim handler, wherein said client component displays the determined task.*" To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

231) Portion [8.7] of claim 8 requires "*allowing an authorized user to edit and perform the determined task and to update the information related to the insurance transaction in accordance with the determined task.*"

[327] *See e.g.*, Kwang, col.10, ll.8-9 and 38-41, and Fig. 2.

232) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang allowing a user to edit and update *tasks* and associated information related to an activity as needed to perform it.[328] For example, Kwang discloses that upon the user's receipt of the list of *task*s and *task* items associated with an activity, "the activity instance is ready to be manipulated by various external stimuli, such as user input through a keyboard or mouse. . . . The event is processed by client manager 100 which results in direct manipulation and changes to the data or indirect changes through visual form presentation of the activity instance. Any manipulation of the activity and its data in client manager utilizes script engine."[329] Furthermore, when "activity tasks are completed by the client," the activity is sent back to the server, and "[t]he data, if modified or *update*d is then placed into the enterprise database."[330]

233) Accordingly, the combination of Abbruzzese and Kwang would have "*allowing an authorized user to edit and perform the determined task and to update the information related to the insurance transaction in accordance with the determined task*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

234) Portion [8.8] of claim 8 requires "*storing the updated information related to the insurance transaction*."

235) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Kwang discloses "activity tasks are completed by the client," the activity is sent back to the server, and "[t]he data, if modified or *update*d is then placed into the enterprise database."[331] Thus, the combination of Abbruzzese and Kwang would have "*storing the updated information related to the insurance transaction*." To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

---

[328] *See e.g.*, Kwang, col.3, ll.8-13.
[329] Kwang, col.11, ll.24-36.
[330] Kwang, col.11, ll.51-55.
[331] Kwang, col.11, ll.51-55.

236) Portion [8.9] of claim 8 requires "*generating a historical record of the completed task.*"

237) As discussed earlier in sections II(B)(1) and II(B)(2), Abbruzzese describes this portion. Thus, the combination of Abbruzzese and Kwang would have "*storing the updated information related to the insurance transaction.*" To the extent that the combination of Abbruzzese and Kwang does not explicitly describe this portion it would be inherent or would have been obvious to one of ordinary skill in the art.

*iv. Rejections of Claims 2-7 and 9-22*

238) Claims 2-7 and 9-22 are obvious over the combination of Abbruzzese and Kwang. The Requester respectfully submits that a detailed discussion of these claims is included in Exhibit L.

*v. The Combination of Abbruzzese and Kwang is Supported in Law*

239) Abbruzzese and Kwang both describe workflow management, both assign and perform tasks in response to an external event. It is apparent to augment the insurance enterprise workflow management system of Abbruzzese with the task assignment workflow management system of Kwang. This combination is a simple substitution of some of Abbruzzese's components that select a task (as described earlier) with the analogous components of Kwang's to obtain a predictable result. That one of ordinary skill in the art would substitute some components of Abbruzzese's which assign tasks based on an event with analogous components of Kwang's event manager, script engine, and activity manager is self evident. Another rationale supporting the combination is the reasonable expectation that such a combination would be successful.

240) The rationale for this combination is further evidenced by the declaration of David A. Tweedy attached as Exhibit N which the Requester is submitting solely for the rationale to combine. This reexam request does not rely on any of the references in the declaration as the basis for a SNQ or a prior art rejection. As the PTO typically

considers only the rejections set forth in a reexamination request, there is no expectation of rejections based on the declaration's references. Thus, this request and the PTO's expected absence of a rejection should not affect use of these references in a subsequent reexamination (as a basis for a SNQ or proposed rejection) or at trial.[332]

**5. Combination of Abbruzzese, Walker, and Kwang**

*i. Rejections of Claims 1-22*

241) The combination of Abbruzzese, Walker, and Kwang renders obvious claims 1-22. Normally the Requester would have provided a separate claim chart for this combination, but such a claim chart would have been duplicative of the provided claim charts because any rejection based on this combination should not need to merge rejects for the same limitation. For example, in Claim 1, Abbruzzese and Kwang teach portions [1.0]-[1.1] and [1.4]-[1.10], and Abbruzzese and Walker teach portions [1.2]-[1.3]. For Claim 8, Abbruzzese and Kwang teach portions [8.0]-[8.3] and [8.6]-[8.9], and Abbruzzese and Walker teach portions [8.4]-[8.5].

*ii. The Combination of Abbruzzese, Walker, and Kwang is Supported in Law*

242) The combination of Abbruzzese, Walker, and Kwang would be the combination of Abbruzzese and Walker with the combination of Abbruzzese and Kwang as described above.

**6. Combination of Abbruzzese, Borghesi, and Kwang**

*i. Rejections of Claims 1-22*

243) The combination of Abbruzzese, Borghesi, and Kwang renders obvious claims 1-22. Normally the Requester would have provided a separate claim chart for

---

[332] For example, the Requester and David A. Tweedy continue to search for other publications and products attributed to Tactica, the assignee of Kwang. Since only publications may form the basis of a SNQ in a reexam, such products are reserved for a public use proceeding at trial.

this combination, but such a claim chart would have been duplicative of the provided claim charts because any rejection based on this combination should not need to merge rejects for the same limitation. For example, in Claim 1, Abbruzzese and Kwang teach portions [1.0]-[1.1] and [1.4]-[1.10], and Abbruzzese and Borghesi teach portions [1.2]-[1.3]. For Claim 8, Abbruzzese and Kwang teach portions [8.0]-[8.3] and [8.6]-[8.9], and Abbruzzese and Borghesi teach portions [8.4]-[8.5].

*ii. The Combination of Abbruzzese, Borghesi, and Kwang is Supported in Law*

244) The combination of Abbruzzese, Borghesi, and Kwang would be the combination of Abbruzzese and Borghesi with the combination of Abbruzzese and Kwang as described above.

### 7. Combination of Abbruzzese, Schreitmueller, and Kwang

*i. Claim Rejections*

245) The combination of Abbruzzese, Schreitmueller, and Kwang renders obvious claims 1-22. Normally the Requester would have provided a separate claim chart for this combination, but such a claim chart would have been duplicative of the provided claim charts because any rejection based on this combination should not need to merge rejects for the same limitation. For example, in Claim 1, Abbruzzese and Kwang teach portions [1.0]-[1.1] and [1.4]-[1.10], and Abbruzzese and Schreitmueller teach portions [1.2]-[1.3]. For Claim 8, Abbruzzese and Kwang teach portions [8.0]-[8.3] and [8.6]-[8.9], and Abbruzzese and Schreitmueller teach portions [8.4]-[8.5].

*ii. The Combination of Abbruzzese, Schreitmueller, and Kwang is Supported in Law*

246) The combination of Abbruzzese, Schreitmueller, and Kwang would be the combination of Abbruzzese and Schreitmueller with the combination of Abbruzzese and Kwang as described above.

## III. List of Exhibits

| | |
|---|---|
| Exhibit A | U.S. Patent No. 7,013,284 issued to Guyan. |
| Exhibit B | U.S. Patent No. 5,557,515 issued to Abbruzzese. |
| Exhibit C | U.S. Patent No. 6,937,990 issued to Walker. |
| Exhibit D | U.S. Patent No. 5,950,169 issued to Borghesi. |
| Exhibit E | U.S. Patent No. 5,839,112 issued to Schreitmueller. |
| Exhibit F | U.S. Patent No. 5,862,327 issued to Kwang. |
| Exhibit G | Claim chart for claims 1-12, 14-19 and 21-22 based on Abbruzzese under 35 U.S.C. § 102(b). |
| Exhibit H | Claim chart for claims 1-22 based on Abbruzzese under 35 U.S.C. § 103(a). |
| Exhibit I | Claim chart for claims 1-22 based on Abbruzzese and Walker under 35 U.S.C. § 103(a). |
| Exhibit J | Claim chart for claims 1-22 based on Abbruzzese and Borghesi under 35 U.S.C. § 103(a). |
| Exhibit K | Claim chart for claims 1-22 based on Abbruzzese and Schreitmueller under 35 U.S.C. § 103(a). |
| Exhibit L | Claim chart for claims 1-22 based on Abbruzzese and Kwang under 35 U.S.C. § 103(a). |
| Exhibit M | File history for the '284 patent. |
| Exhibit N | Declaration of David A. Tweedy. |

## IV. Conclusion

For at least the reasons set forth above, it is clear that a SNQ of patentability is raised by this Request for *Ex Parte* Reexamination because claims 1-22 are anticipated and/or rendered obvious in view of the above-listed prior art references. Therefore, grant of this request for reexamination and rejection of claims 1-22 is requested.

As identified in the submitted Certificate of Service and in accordance with 37 CFR §§ 1.33(c) and 1.510(b)(5), a copy of the present request, in its entirety, is being served to the address of the attorney or agent of record.

Please direct all correspondence in this matter to the undersigned.

Respectfully submitted,
/Daniel M. DeVos/

Registration No. 37,813
Dated: June 19, 2008

**CERTIFICATE OF SERVICE**

The undersigned certifies that copies of the following:
(1) Request for *Ex Parte* Reexamination Transmittal Form; and
(2) Request for *Ex Parte* Reexamination including Exhibits A through N
were served on

ACCENTURE CHICAGO 28164
C/O Marc Richards
BRINKS HOFER GILSON & LIONE
PO BOX 10395
CHICAGO IL 60610

the attorney of record for the assignee of US Pat. No. 7,013,284 in accordance with 37 C.F.R. § 1.510(b)(5), on the day of June 19, 2008.

Respectfully submitted,

David F. Nicholson

Dated: 6/19/08