IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCENTURE GLOBAL SERVICES, GmbH and ACCENTURE, LLP, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-826 (SLR) |
| GUIDEWIRE SOFTWARE, INC., | ) ) | |
| Defendant. | ) | |

## GUIDEWIRE'S PROPOSED JURY INSTRUCTIONS

Pursuant to D. Del. LR 51.1(a), defendant Guidewire Software, Inc. respectfully

submits the attached proposed Final Jury Instructions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*
_____

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
Jeremy A. Tigan (#5239)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat
jheaney@mnat.com
jtigan@mnat.com

OF COUNSEL:

Daralyn J. Durie
Ragesh K. Tangri
Clement S. Roberts
Joseph C. Gratz
Sonali Maitra
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
(415) 362-6666

February 24, 2010

*Attorneys for Defendant Guidewire Software,
Inc.*

# TABLE OF CONTENTS

**Page**

1. GENERAL INSTRUCTIONS .................................................................................. 1
   1.1. INTRODUCTION .................................................................................. 1
   1.2. JURORS' DUTIES .................................................................................. 2
   1.3. EVIDENCE DEFINED .................................................................................. 3
   1.4. DIRECT AND CIRCUMSTANTIAL EVIDENCE .......................................... 4
   1.5. CONSIDERATION OF EVIDENCE .................................................................. 5
   1.6. PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE.................. 6
   1.7. USE OF NOTES .................................................................................. 7
   1.8. CREDIBILITY OF WITNESSES .................................................................. 8
   1.9. NUMBER OF WITNESSES .................................................................. 10
   1.10. EXPERT WITNESSES .................................................................. 11
   1.11. DEPOSITION TESTIMONY .................................................................. 12
2. THE PARTIES AND THEIR CONTENTIONS .................................................. 13
3. SUMMARY OF ISSUES .................................................................................. 15
   3.1. '284 AND '111 PATENTS .................................................................. 15
   3.2. ACCENTURE'S AND GUIDEWIRE'S TRADE SECRETS........................... 16
   3.3. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS.................. 16
   3.4. BREACH OF CONTRACT .................................................................. 16
4. BURDEN OF PROOF .................................................................................. 17
5. THE PATENT CLAIMS .................................................................................. 19
   5.1. PATENT CLAIMS GENERALLY .................................................................. 19
   5.2. DEPENDENT AND INDEPENDENT CLAIMS ............................................ 20
   5.3. OPEN-ENDED OR "COMPRISING" CLAIMS ................................................ 21
   5.4. CONSTRUCTION OF CLAIMS .................................................................. 22
   5.5. SECTION 112, PARAGRAPH 6 .................................................................. 23
6. PATENT INFRINGEMENT .................................................................................. 24
   6.1. DIRECT INFRINGEMENT .................................................................. 24
      6.1.1. DIRECT INFRINGEMENT GENERALLY ......................................... 24
      6.1.2. LITERAL INFRINGEMENT ................................................................ 25
      6.1.3. DOCTRINE OF EQUIVALENTS ....................................................... 27

**TABLE OF CONTENTS (Con't)**

Page

6.1.4.   PROSECUTION HISTORY ESTOPPEL ................................................. 28

6.1.5.   INDIRECT INFRINGEMENT ................................................................. 29

6.1.6.   INDUCEMENT OF PATENT INFRINGEMENT .................................. 30

6.1.7.   CONTRIBUTORY INFRINGEMENT .................................................... 32

7.   INVALIDITY .................................................................................................... 33

7.1.   DEFENSE OF INVALIDITY GENERALLY ....................................................... 33

7.2.   ENABLEMENT ...................................................................................................... 34

7.3.   WRITTEN DESCRIPTION .................................................................................... 36

7.4.   PRIOR ART ............................................................................................................. 37

7.5.   ANTICIPATION ...................................................................................................... 38

7.6.   PRIOR ART—PRIOR KNOWLEDGE OR PUBLIC USE ................................ 39

7.6.1.   CORROBORATION REQUIRED ......................................................... 40

7.7.   ON SALE STATUTORY BAR .............................................................................. 41

7.8.   EXPERIMENTAL USE EXCEPTION ................................................................. 42

7.9.   OBVIOUSNESS ...................................................................................................... 43

7.9.1.   SCOPE AND CONTENT OF THE PRIOR ART ................................. 44

7.9.2.   DIFFERENCES OVER THE PRIOR ART ........................................... 45

7.9.3.   LEVEL OF ORDINARY SKILL ........................................................... 46

7.9.4.   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
(SECONDARY CONSIDERATIONS) ................................................... 47

7.9.5.   INVENTORSHIP .................................................................................... 49

8.   MISAPPROPRIATION OF TRADE SECRETS .......................................... 50

8.1.   TRADE SECRETS - GENERALLY .................................................................... 50

8.2.   TRADE SECRET DEFINED ................................................................................. 51

8.3.   SECRECY REQUIREMENT ................................................................................. 52

8.4.   VALUE ..................................................................................................................... 53

8.5.   REASONABLE EFFORTS TO PROTECT SECRECY ..................................... 54

8.6.   MISAPPROPRIATION .......................................................................................... 55

# TABLE OF CONTENTS (Con't)

Page

9.    TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS ............................... 56

      9.1.    ELEMENTS OF LIABILITY ............................................................. 57

      9.2.    EXISTENCE OF A RELATIONSHIP – GENERALLY ................................. 58

      9.3.    KNOWLEDGE REQUIREMENT ...................................................... 59

      9.4.    REQUIREMENT OF INTENT / PROOF OF INTENT .............................. 60

      9.5.    PROPER OR IMPROPER INTERFERENCE DEFINED ............................ 61

      9.6.    CAUSATION REQUIREMENT ....................................................... 62

      9.7.    PRIVILEGE OF COMPETITION AS TO TORTIOUS INTERFERENCE
              CLAIM ............................................................................... 63

10.   BREACH OF CONTRACT ...................................................................... 64

11.   BREACH ........................................................................................... 65

12.   DEFENSES ........................................................................................ 66

      12.1.   STATUTE OF LIMITATIONS ......................................................... 66

      12.2.   LACHES ................................................................................. 67

      12.3.   ESTOPPEL .............................................................................. 70

      12.4.   UNCLEAN HANDS ..................................................................... 72

13.   DELIBERATION AND VERDICT ............................................................. 73

      13.1.   INTRODUCTION ....................................................................... 73

      13.2.   UNANIMOUS VERDICT ............................................................. 74

      13.3.   DUTY TO DELIBERATE .............................................................. 75

      13.4.   COURT HAS NO OPINION ........................................................... 77

1.   **GENERAL INSTRUCTIONS**[1]

1.1.  **INTRODUCTION**

Members of the jury, now it's time for me to instruct you about the law that you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  I will explain some rules that you must use in evaluating particular testimony and evidence.  I will explain the positions of the parties and the law you will apply in this case.  Last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.  Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.   You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

---

[1]  The majority of the patent-related proposed jury instructions are principally modeled after *SRI Int'l, Inc. v. Internet Security Sys.*, Civ. No. 04-1199-SLR (D. Del. Sept. 2008) (Robinson, J.), and have been modified by other authority and sources as indicated below.   Guidewire reserves its rights to modify these proposed jury instructions to conform with rulings of the Court,and in particular rulings related to pending issues in dispute that may impact which issues should fairly be presented to the jury.  Any part of these proposed jury instructions that relates to an issue that one party or the other disputes the propriety of presenting to the jury is therefore submitted herein in the alternative.  For example, and not exhaustively, Guidewire disputes whether Accenture should be permitted to argue infringement by equivalents, indirect infringement, infringement of claims 13-18 of the '111 patent, and tortious interference to the jury.   In addition, Guidewire reserves the right to add additional instructions as appropriate to address the proper analysis of 112(6) claims by the jury should the Court determine that Accenture should be permitted to assert these claims.

## 1.2.   JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3.   EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments or questions are evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these demonstrative exhibits are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial, I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4.   DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact.  For example, if a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 1.5.   CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6.   PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE

You may consider the ability of each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.[2]

---

[2]      Judicial Council of California, Civil Jury Instructions, 2009.

### 1.7.   USE OF NOTES

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

### 1.8.   CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief.  Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand.  Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently.  Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different or inconsistent from the testimony that he or she gave during the trial.  It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an

innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

### 1.9.   NUMBER OF WITNESSES

One more point about the witnesses.   Sometimes jurors wonder if the number of witnesses who testified makes any difference.   Do not make any decisions based only on the number of witnesses who testified.   What is more important is how believable the witnesses were and how much weight you think their testimony deserves.   Concentrate on that, not the numbers.

## 1.10. EXPERT WITNESSES

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field (called an expert witness) is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education or experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

**1.11. DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you through depositions that were read into evidence or played on video.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## 2.    THE PARTIES AND THEIR CONTENTIONS

Plaintiffs are Accenture Global Services, GmbH and Accenture LLP, which I will collectively refer to as "Accenture."   Accenture Global Services is a Switzerland corporation. Accenture LLP is an Illinois limited liability partnership with its principal place of business in Chicago, Illinois.

Accenture is the owner of U.S. Patent No. 7,013,284, which I will refer to as the "'284 patent," and U.S. Patent No. 7,017,111, which I will refer to as the "'111 patent."

Defendant is Guidewire Software, Inc., a Delaware corporation with its principal place of business in San Mateo, California.  Guidewire competes in the insurance claims management business, including with its "Guidewire ClaimCenter" product.

Accenture contends that Guidewire infringes claims 1-8 and 10-22 of the '284 patent and claims 1-6, 9 and 12-18 of '111 patent.  These claims may be referred to as the "asserted claims."

Guidewire contends that it does not infringe the asserted claims.  Guidewire further contends that the asserted claims are invalid due to anticipation,obviousness, on-sale bar, inadequate written description, lack of enablement, and incorrect inventorship.

Accenture and Guidewire have also each contended that the other has misappropriated its trade secrets.  Each party further contends that the other party's trade secrets either were not misappropriated or do not constitute valid trade secrets.  Guidewire further contends that Accenture's claim for trade secret misappropriation is barred by the statute of limitations, laches and estoppel.    Accenture further contends that Guidewire's claim for trade secret misappropriation is barred by waiver.

Accenture contends that Guidewire tortiously interfered with its business relationships, and Guidewire contends that Accenture breached a contract between Accenture and Guidewire. Accenture contends that Guidewire's claim is barred by waiver.

You must decide whether Accenture's tortious interference claim is barred by the statute of limitations.

Finally, each party contends that all of the other party's claims are barred by the other party's own unclean hands.

## 3.     SUMMARY OF ISSUES

In this case, you must decide several things according to the instructions that I will give you.

### 3.1.  '284 AND '111 PATENTS

With respect to the '284 and '111 patents, you must decide as to infringement, whether Accenture has proven, by a preponderance of the evidence, that the accused Guidewire products directly or indirectly infringe any asserted claim of the patents-in-suit.

As to validity, you must decide:

- Whether Guidewire has proven, by clear and convincing evidence, that any asserted claim is invalid as anticipated by the prior art.

- Whether Guidewire has proven, by clear and convincing evidence, that any asserted claim is invalid as obvious in light of the prior art.

- Whether Guidewire has proven, by clear and convincing evidence, that any asserted claim is invalid due to an on-sale bar.

- Whether Guidewire has proven, by clear and convincing evidence, that any asserted claim is invalid due to inadequate written description.

- Whether Guidewire has proven, by clear and convincing evidence, that any asserted claim is invalid due to lack of enablement.

- Whether Guidewire has proven, by clear and convincing evidence, that the patents in suit are invalid for failing to list the correct inventors.

Finally, you must decide if Accenture's infringement claims are barred by Accenture's unclean hands.

### 3.2.   ACCENTURE'S AND GUIDEWIRE'S TRADE SECRETS

With respect to each party's trade secrets, you must decide whether the other party has misappropriated those trade secrets.  Further, you must decide if Accenture's claim for trade secret misappropriation is barred by unclean hands, the statute of limitations, laches, or estoppel. Further, you must if Guidewire's claim for trade secret misappropriation is barred by unclean hands or waiver.

### 3.3.   TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

You must decide whether Guidewire has tortiously interfered with Accenture's business relationships by conduct other than that alleged by Accenture to constitute misappropriation of Accenture's trade secrets.  You must decide whether Accenture's claim is barred by the statute of limitations.  Moreover, you must decide if Accenture's claim is barred by Accenture's unclean hands.

### 3.4.   BREACH OF CONTRACT

You must decide whether Accenture has breached a non-disclosure agreement between Accenture and Guidewire by misusing confidential information.  You must also decide if Guidewire's claim is barred by unclean hands or waiver.

16

4.    **BURDEN OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."

Accenture must prove its claims of patent infringement by a preponderance of the evidence.  When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.  To put it differently, if you were to put Accenture's and Guidewire's evidence of infringement on opposite sides of a scale, the evidence supporting Accenture's assertions would have to make the scale tip somewhat to Accenture's side.

Because patents are presumed valid, Guidewire must prove their contentions that the patents-in-suit are invalid by a higher standard of proof, that is, by clear and convincing evidence.  When a party has the burden of proof by clear and convincing evidence, it means that the evidence must produce in your mind a firm belief and conviction that it is highly probable that the matter sought to be established is true.

As to each party's trade secret misappropriation claims, the party asserted that a trade secret was misappropriated must prove misappropriation by a preponderance of the evidence.[3]

Accenture must prove its tortious interference with business relations claim by a preponderance of the evidence.

Finally, Guidewire must prove its breach of contract claim by a preponderance of the evidence.

---

[3]    *NuCar Consulting, Inc. v. Doyle*, No. Civ.A. 19756-NC, 2005 WL 820706, at *5 (Del. Ch. Apr. 5, 2005).

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof. It does not apply to a case such as this one and you, therefore, should put it out of your mind.

5.      **THE PATENT CLAIMS**

5.1.    **PATENT CLAIMS GENERALLY**

As I explained to you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from making, doing or selling.

Each claim of a patent represents separate patent protection given to a patent owner, and you must individually consider each of the patent claims involved in this case.  The law does not require infringement of all the claims in a patent.  There is infringement if a single claim of the patent has been infringed.

Claims are usually divided into parts or steps, called "limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.  The tabletop, legs and glue are each a separate limitation of the claim.

There are two types of claims at issue in this case: system claims and method claims.  A system claim recites a system or an apparatus having certain claimed limitations.  A method claim recites a series of steps that must be performed.

## 5.2.  DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent.  The first type is called an "independent" claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read alone to determine its scope.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 8 of the '284 patent is an independent claim. You know this because claim 8 does not refer to any other claims.  Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

On the other hand, claim 9 is a dependent claim.  If you look at claim 9, it refers to claim 8.  Therefore, to determine what claim 9 covers, you must consider both the words of claims 8 and 9 together.  For a product or method to infringe a dependent claim 9, the product or method must have all the elements of both claim 8 and claim 9.   Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that independent claim are not infringed.

### 5.3.   OPEN-ENDED OR "COMPRISING" CLAIMS

Several claims of the patents-in-suit use the transitional term "comprising." "Comprising" is interpreted the same as "including" or "containing."  In patent claims, comprising means that the claims are open-ended.  This means that the claim is not limited to products that include only what is in the claim and nothing else.[4]

If you find that the accused products include all of the limitations in any of the asserted claims that use the term "comprising," the fact that they may also include additional elements or components is irrelevant.  The presence of additional elements or components does not mean that the method or product does not infringe a patent claim.

Similarly, if you find that the prior art includes all of the limitations in any of the asserted claims that use the word "comprising," the fact that it may also include additional elements is irrelevant.  The presence of additional elements or components does not mean that the prior art does not invalidate a patent claim.

---

[4]      MPEP § 2111.03.

### 5.4.   CONSTRUCTION OF CLAIMS

To decide the questions of infringement and validity, you must first understand what the claims of the patent cover.  It is my duty under the law to define what the patent claims mean, and I have done so after hearing from the parties in this regard.

You must accept and use the meanings that I give in each patent claim to decide if the claim is infringed.  You must use the same meaning for each claim for both your decisions on infringement and your decisions on validity.  You must ignore any different interpretation given to these terms by the witnesses or attorneys.  If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.

I instruct you that the following claim terms have the following definitions:

[TO BE ADDED FOLLOWING *MARKMAN*]

### 5.5.   SECTION 112, PARAGRAPH 6[5]

Claims 13-18 of the '111 patent use the phrase "means for." This "means for" phrase has a special meaning in patent law. It is called a "means-plus-function" requirement. It does not cover all of the structures that could perform the function set forth in the claim. Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to at least one of the sets of structures described in the '111 patent for performing that function. The issue of whether two structures are identical or equivalent is for you to decide. I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another. For purposes of this case I have identified the sets of structures described in the '111 patent that perform the claimed functions. When I read you my definitions for certain claim terms a few moments ago, I identified the structures described in the '111 patent for performing the relevant functions. You should apply my definition of the function and the structures described in the '111 patent for performing it as you would apply my definition of any other claim term.

---

[5]     Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Nov. 12, 2009.

6.    **PATENT INFRINGEMENT**

6.1.  **DIRECT INFRINGEMENT**

6.1.1.  **DIRECT INFRINGEMENT GENERALLY**

A patent owner may enforce its right to exclude others from making, using, offering to sell or selling a patented invention by filing a lawsuit for patent infringement.  Here, Accenture, the patent owner, has sued Guidewire, the accused infringer, and has alleged that Guidewire's ClaimCenter product infringes one or more claims of the patents-in-suit.  Accenture has the burden of proving, by a preponderance of the evidence, that Guidewire has directly infringed at least one of the asserted claims.

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents."  I will explain literal and doctrine of equivalents infringement shortly.

Guidewire may directly infringe a patent without knowledge that what it is doing is an infringement of the patent.  Guidewire may also directly infringe a patent even though, in good faith, it believes that what it is doing is not an infringement of the patent.  Knowledge or intent to infringe is not relevant to direct infringement.

### 6.1.2.   LITERAL INFRINGEMENT

For an accused product or method to literally infringe an asserted claim, the subject matter of the claim must be found in the accused product or method.  In other words, an asserted claim is literally infringed if the accused product or method includes each and every limitation in the patent claim.  Literal infringement must be determined with respect to each asserted claim individually by comparing the accused product or method to each of the asserted claims.  If the accused product or method omits any single limitation recited in a given claim, that product or method does not literally infringe that claim.  You must determine literal infringement with respect to each asserted claim and each accused product or method individually.

In determining whether any accused product or method literally infringes any asserted claim, you should take the following steps:

1.      First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning; and

2.      Second, you should compare the accused product or method, element by element, to each of the limitations of the asserted claim.

If you find each and every limitation of the asserted claim in the accused product or method, you must return a verdict of literal infringement as to that claim.  A single product feature can meet more than one claim limitation.[6]  If you do not find each and every limitation of the asserted claim in the accused product or method, you may not return a verdict of literal infringement as to that claim.  You must repeat the above analysis with every asserted claim.

---

[6]     *Cannon Rubber Ltd. v. First Years, Inc.*, 163 Fed. Appx. 870, 876 (Fed. Cir. 2005).

Remember the question is whether the accused product or method infringes any of the asserted claims, and not whether the accused product or method is similar or even identical to an Accenture product or method.  Accordingly, you must be certain to compare the accused product or method with the claims it is alleged to infringe and not with any product or method of Accenture.

### 6.1.3.   DOCTRINE OF EQUIVALENTS[7]

If you do not find literal infringement of a claim to have been proven, you must decide whether infringement has been proven under the "doctrine of equivalents."

For there to be infringement under the doctrine of equivalents, every claim element must be present in the accused product or method.  A claim element may be present in an accused product or method in one of two ways, either literally or under the doctrine of equivalents.  A claim element is literally present if it exists in the accused product or method just as it is described in the claim, either as I have explained that language to you or, if I did not explain it, as you understand it from the evidence presented during trial.

A claim element is present in an accused product or method under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused product or method are insubstantial.  One way to determine this is to look at whether or not the accused structure or step performs substantially the same function as the claimed function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

The question of whether Guidewire's ClaimCenter and its elements are equivalent to those defined in Accenture's claims is to be determined as of the time of the alleged infringement.

---

[7]     Modeled after the Delaware Model Rules (2004).  Sources: *Atlas Powder Co. v. E.I. Du Pont de Nemours & Co*., 750 F.2d 1569, 1579-1581 (Fed. Cir. 1984); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609, *reh'g* denied, 340 U.S. 845 (1950).

### 6.1.4.   PROSECUTION HISTORY ESTOPPEL[8,9]

The doctrine of equivalents is limited by another doctrine, called prosecution history estoppel.  The prosecution history of a patent is the record of everything that happened in the Patent Office.  The doctrine of prosecution history estoppel prevents a patent owner from covering under the doctrine of equivalents products or processes that he or she gave up in order to obtain his or her patent.  Prosecution history estoppel can occur as a result of (1) amendments made to overcome patentability rejections or (2) arguments made during prosecution that show "a clear and unmistakable surrender of subject matter."   Guidewire contends that that prosecution history estoppel applies in this case to the '284 and '111 patents.

It is my duty and responsibility to decide whether or not prosecution history estoppel applies in this case and to instruct you on my decision.  You must use my instruction in considering both infringement and validity.

In this case, you are instructed that prosecution history estoppel applies and the doctrine of equivalents analysis cannot be applied to the following elements of the asserted claims:

[Court to supply prosecution history estoppels.]

Unless each of these elements is literally present within Guidewire's product or method, there can be no infringement of the claim.

---

[8]   Modeled partly after the AIPLA Model Patent Jury Instructions (2008).  To be removed if the court determines that there is no PHE.

[9]   *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003) (en banc); *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297 (Fed. Cir. 2001); *Litton Sys., Inc. v. Honeywell Inc.*, 238 F.3d 1376 (Fed. Cir. 2001); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000) (stating that prosecution history estoppel is a question of law and setting forth its requirements), *cert. denied*, 121 S. Ct. 484 (2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998) (stating that prosecution history estoppel is a question of law); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524 (Fed. Cir. 1996), *cert. denied* 522 U.S. 812 (1997).

### 6.1.5.    INDIRECT INFRINGEMENT[10]

In addition to preventing direct infringement, a patent owner also has the right to prevent "indirect" infringement.  There are two types of indirect infringement: inducing infringement and contributory infringement.  The act of inducing infringement occurs where one encourages or induces others to directly infringe a patent.  The act of contributory infringement occurs where one supplies others with components that are used in directly infringing the patent.   I will explain to you in a moment the precise requirements for finding someone has induced or contributed to infringement by another person.

In this case, in addition to its direct infringement claims, Accenture alleges that Guidewire induces and contributes to the infringement of the '284 and '111 patents.

---

[10]    Guidewire does not believe any instruction on indirect infringement, including contributory and inducement, should be given because Accenture has neither evidence nor a legally sufficient theory of indirect infringement, and therefore should not be allowed to argue indirect infringement to the jury.  Guidewire has therefore proposed these instructions on indirect infringement only in the event that the Court determines instructions on these issues are required.

### 6.1.6.   INDUCEMENT OF PATENT INFRINGEMENT[11]

The act of encouraging or inducing others to infringe a patent is called "inducing infringement."

In this case, Accenture accuses Guidewire of knowingly inducing its customers to infringe the asserted claims of the '284 and '111 patents by the use of its products.

Accenture must prove that Guidewire purposefully caused, urged or encouraged its customers to infringe the patents-in-suit.  Inducing infringement cannot occur unintentionally. This is different from direct infringement which, as I've just told you, can occur unintentionally. Thus, in order to prove inducement, Accenture must prove that Guidewire knew of the patents-in-suit and encouraged or instructed their customers to use certain of the accused products in a manner that infringes the patents-in-suit.

In addition, there can be no inducing infringement unless someone is directly infringing the patent.  To prove direct infringement by a Guidewire customer, Accenture must prove that the customer performed each and every step of a claimed method or made or used a product that satisfied each and every limitation of an asserted claim.  If the customer omitted a single step or limitation recited in a claim, then you must find that the customer did not directly infringe that claim.  You must consider each of the patent claims separately.

Therefore, in order to prove that Guidewire induced infringement of any patent-in-suit, Accenture must prove five things by the preponderance of the evidence standard:

1.      Guidewire encouraged or instructed a customer on how to use its accused product in a manner that you, the jury, find infringes at least one asserted claim of the patents.

---

[11]      *See generally DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006).

2.      Guidewire knew of the patents asserted against it and knew or should have known that the acts, if taken, would constitute infringement of the patents.

3.      Guidewire knew or should have known that its encouragement or instructions would cause direct infringement.  In other words, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that Guidewire had knowledge of the direct infringer's activities.

4.      The customer infringed at least one asserted claim of the patents by using an accused product in a manner that you, the jury, find infringes at least one asserted claim of the patents.

5.      The customer's act of direct infringement was in fact caused by Guidewire's intentional and knowing actions.

### 6.1.7.   CONTRIBUTORY INFRINGEMENT

A second form of indirect infringement is contributory infringement.   Contributory infringement can occur when someone supplies a part that is used to infringe one of the patent claims.   Contributory infringement arises only if one who received the component actually infringes a patent claim.   Circumstantial evidence may be sufficient to support a finding of contributory infringement.[12]

The necessary proof to show contributory infringement is focused on the intent of the person supplying the part and the nature of that part.   Specifically, to prove contributory infringement by Guidewire of the asserted claims, Accenture must prove by a preponderance of the evidence the following three things:

1.   The part supplied by Guidewire is not a common part or a part having substantial noninfringing uses, but rather, the part is especially made or adapted for a use that infringes the claimed invention;

2.   Guidewire knew of the patent asserted against it and sold the accused part knowing that the part was especially made for a use that infringes the invention; and

3.   Someone then bought the part and actually used it in a way that infringes each limitation of an asserted claim.

In order to prove contributory infringement, Accenture must prove that each of the above requirements is met.   This proof of each requirement must be by a preponderance of the evidence.

---

[12]   National Patent Jury Instructions 3.12; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009).

## 7.    INVALIDITY

### 7.1.   DEFENSE OF INVALIDITY GENERALLY

For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious.  The terms "new," "useful" and "nonobvious" have special meanings under the patent laws.  I will explain these terms to you as we discuss Guidewire's grounds for asserting invalidity.

Guidewire has challenged the validity of the claims of the patents-in-suit on a number of grounds.  Although the patents-in-suit were granted by the Patent and Trademark Office, it is your job to determine whether or not the legal requirements for patentability were met; that is, it is your job to determine whether or not the patents are invalid.

I will now explain to you Guidewire's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

## 7.2.   ENABLEMENT[13]

The patent law contains certain requirements for the part of the patent called the specification.  Guidewire contends that the claims of the patents in suit are invalid because the specifications of those patents do not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention.  To succeed, Guidewire must show by clear and convincing evidence that the patents in suit do not contain a sufficiently full and clear description of the claimed invention.  To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patents to make and use the full scope of the claimed invention at the time the patent application was filed.  This is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of filing without having to conduct undue experimentation.  However, some amount of experimentation to make and use the invention is allowable.  In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors.

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the relevant field;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the relevant field;

---

[13]    Adapted from Federal Circuit Bar Association, Model Patent Jury Instructions, Nov. 12, 2009.

(6) the level of ordinary skill in the field; and

(7) the scope of the claimed invention

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the application, a person having ordinary skill would need to experiment unduly to make and use the fulls cope of the claimed invention.

### 7.3.   WRITTEN DESCRIPTION[14]

The patent law contains certain requirements for the part of the patent called the specification.  Guidewire contends that the claims of the patents in suit are invalid because the specifications of these patents do not contain an adequate written description of the invention.  To succeed, Guidewire must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.

In deciding whether the patent satisfies the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

---

[14]    Adapted from Federal Circuit Bar Association, Model Patent Jury Instructions, Nov. 12, 2009.

### 7.4.   PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and not obvious in light of what came before.  That which came before is referred to as the "prior art."  Guidewire must prove, by the clear and convincing standard, that these items are prior art.  In order to do so, Guidewire must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws.  These categories include:

- Anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

- Any sale or offer for sale of the invention by the inventor more than one year prior to the filing of the application for the patent when the invention was also ready for patenting more than one year before the filing.

- Anything that was in public use or on sale in the United States more than one year before the application for the patent was filed.

- Anything that was described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

- Anything that was invented by another person in this country before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

### 7.5.   ANTICIPATION

Guidewire contends that the invention covered by asserted claims are invalid because they are not new.  A person cannot obtain a patent on an invention if someone else has already made the same invention.  In other words, the invention must be new.  If an invention is not new, we say that it was "anticipated" by the prior art.  A party challenging the validity of a patent on the basis of "anticipation" must prove anticipation by the clear and convincing standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior invention, a prior public use or sale, or some other item of prior art.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.  Guidewire must prove anticipation by the prior art by clear and convincing evidence.

Anticipation is the mirror image of infringement.  This means that something that would infringe if it happened at a later time, would anticipate if it happened at an earlier time.

Remember the question is whether the prior art anticipates any of the asserted claims, and not whether the prior art is similar or even identical to an Accenture product or method.  Accordingly, you must be certain to compare the prior art with the claims it is alleged to invalidate and not with any product or method of Accenture.

Just as with infringement, a single feature of a piece of prior art can anticipate more than one limitation of a patent claim.

### 7.6.   PRIOR ART—PRIOR KNOWLEDGE OR PUBLIC USE[15]

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances.  The first is where the invention was accessible to any member of the public other than the inventors or a person under an obligation of secrecy imposed by the inventor before the date of invention by the inventors on the patent.  In this case, the date by which Accenture claims it made the invention would be at least as early as May 4, 1999 for the '284 patent and at least as early as April 14, 2000 for the '111 patent.

The second is where the invention was publicly used more than one year before the application for the patent was filed.  In this case, that date would be May 4, 1998 for the '284 patent and April 14, 1999 for the '111 patent.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claims is irrelevant.  A public use more than one year before the patent application was filed will be prior art regardless of the date of invention.

---

[15]    This section modeled in part by the Delaware Model Rules (2004).

### 7.6.1.   CORROBORATION REQUIRED

Mere testimonial evidence concerning allegedly invalidating activities without corroborating documentary evidence is insufficient to invalidate a patent claim. This is because of the possibility that even honest witnesses can convince themselves, after many years, of having invented something they did not. In addition, inventions are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process. Such documentation is typically—and optimally—contemporaneous with the invention. The need for corroboration exists regardless of whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation, for example because that party is the accused infringer or is uninterested but testifying on behalf of an interested party. Therefore, Guidewire cannot meet its burden of proving invalidity, by clear and convincing evidence, on the basis of witness testimony in the absence of documentary evidence corroborating that testimony.

## 7.7.   ON SALE STATUTORY BAR[16]

It is against public policy to allow an inventor to commercially exploit his invention by selling or offereing it for sale more than one year before the effective filing date of the patent because this has the effect of extending the term fo the patent as fixed by Congress.

Thus, the patent in suit cannot be found valid if you find that the invention claimed in the patent in suit was "on sale" before May 4, 1998.

Although the law uses the phrase "on sale", the law does not require that an actual sale was made.  An offer of sale, even if unaccepted, solicitation of orders, promotional activities or advertisements can constitute being "on sale", even though no actual sale takes place.  What is important is the commercial motive of the person making the offer to sell.  The essential element of "on sale" is an attempt to obtain a commercial benefit.  A prior use more than one year before the application filing date by the inventors or the patent owner will be prior art if it was for commercial purposes, even if it was done in secret.

Accenture has lost its rights to the claims of the '284 patent if the claimed invention was sold or offered for sale in the United States more than one year before May 4, 1998, which is the effective filing date of the application for the '284 patent.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, *i.e.*, a description existed that would enable one having ordinary skill in the field of technology to have made and used the claimed invention, even if it was not yet reduced to practice.

---

[16]    The first three paragraphs of this instruction are from the Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, Mar. 1993; the fourth paragraph has been adapted from the Federal Circuit Bar Association Model Patent Jury Instructions, Nov. 12, 2009 in order to be brought up to date with the current state of the law.  *Pfaff v. Wells Elec., Inc*., 525 U.S. 55 (1998).

## 7.8.   EXPERIMENTAL USE EXCEPTION[17]

The law recognizes that it is beneficial to permit the inventor the time and opportunity to develop his invention.  As such there is "experimental use" exception to the "on sale" reules. Even though the invention was on sale before May 4, 1998, that does not invalidate the '284 patent if the principal purpose of that sale or offer for sale was for experimentation rather than commercial benefit.  If the primary purpose was experimental, it does not matter that the inventor incidentally derived profit from it.

When a sale or offer for sale is shown, the burden is on the patentee to come forward with evidence to support the experimental use exception.

Only experimentation by or under the control of the inventor of the patentee qualifies for this exception.  Experimentation by a third party, for its own purposes, does not.  Once the invention leaves the inventor's control, its use is a public one, even if further experimentation takes place.

The experimentation must relate to the claimed features of the invention.  And it must be for the purposes of technological improvement, not commercial exploitation.  If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation. A test done primarily for marketing, and only incidentally for technological improvement, is not experimentation.

---

[17]   Guidewire does not believe an experimental use instruction is appropriate in the present case.  Accenture has proffered no evidence upon which a jury could decide that the primary purpose of the sale and offer for sale in question was experimental.  Thus, such an instruction will only confuse and encourage the jury to find on a legally impermissible ground.  However, Guidewire provides this instruction in the alternative that the Court decides to allow an experimental use instruction.  This instruction is adapted from the Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, Mar. 1993.

### 7.9.   OBVIOUSNESS[18]

Guidewire also contends that the asserted claims are invalid as being obvious.  In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.  That is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may deprive prior inventions of their value or utility.

The court is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions.  First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  Second, you must decide the scope and content of the prior art.  Third, you must decide what difference, if any, existed between the claimed invention and the prior art.  Finally, you must decide which if any secondary indications of obviousness or nonobviousness has been established by the evidence.

---

[18]     Guidewire has adapted parts of its proposed obviousness instructions from the Model Patent Jury Instructions for the Northern District of California, Nov. 29, 2007.  The ultimate question of obviousness is a question of law to be decided by the Court on the basis of underlying factual determinations that can be made by a jury.  This instruction is crafted to give life to that division between the province of the Court and of the jury. *KSR Intern., Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).

### 7.9.1.   SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.   This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced.   A person of ordinary skill in the art is presumed aware of the prior art.   The prior art you must consider in this case includes products on sale or in public use before May 4, 1998 for the '284 patent, and April 14, 1999 for the '111 patent.

### 7.9.2.   DIFFERENCES OVER THE PRIOR ART

The next factor that you must consider are the differences between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, it is improper to consider the invention as only the differences because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

### 7.9.3.   LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  Factors to be considered in determining the level of ordinary skill in the pertinent art include:

- The educational level of the inventor and others working in the field;

- The types of problems encountered in the art at the time of the invention;

- The prior art patents and publications;

- The activities of others;

- Prior art solutions to the problems encountered by the inventor, and

- The sophistication of the technology.

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the claimed invention

46

### 7.9.4.   OBJECTIVE   CRITERIA   CONCERNING   OBVIOUSNESS (SECONDARY CONSIDERATIONS)

You must determine which if any of the following factors have been established by the evidence:

1.     Commercial success or lack of commercial success of products covered by the asserted claims;[19]

2.     A long-felt, but unsolved, need in the art that was satisfied by the invention of the asserted claims;

3.     Copying of the invention by others in the field;

4.     The failure of others to make the invention;

5.     Unexpected results achieved by the invention;

6.     Praise of the invention by Guidewire or others in the field;

7.     Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention;

8.     Whether the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art;

9.     The taking of licenses under the patent by others;

10.    The amount of investment, such as in time, money, and personnel, the patent holder put into the invention;

11.    Simultaneous or near simultaneous discovery of the claimed invention by others in the field;

12.    Independent invention by others in the field;

---

[19]    This and other elements from the Delaware Model Rules (2004).

13.  The ease or difficulty with which the patent was approved by the Patent and Trademark Office;  and

14.  Other evidence tending to show nonobviousness or obviousness.

There must be a nexus or connection between the evidence showing any of these factors and the inventions of the asserted claims if this evidence is to be given weight by you in determining that the factor has been established.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those described in the asserted claims, any commercial success may have no relation to the factor of commercial success that you have been asked to decide.

Therefore you must determine that there is a sufficient nexus or connection between the considerations and the claimed invention—in other words, whether the claimed inventions of the patents-in-suit contributed to these secondary considerations rather than the considerations being due to other factors.

### 7.9.5.   INVENTORSHIP[20]

In this case, Guidewire contends that the '284 and '111 patents are invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent.  This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of a patent.  Whether the contribution is significant is measured against the scope of the full invention.

If someone only explains to the actual inventors, well-known concepts or the current state of the art, he or she is not an inventor.  Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.  What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

---

[20]     From Federal Circuit Bar Association, Model Patent Jury Instructions, Nov. 12, 2009.

8.      **MISAPPROPRIATION OF TRADE SECRETS**

    **8.1.   TRADE SECRETS - GENERALLY**[21]

Accenture and Guidewire have each brought a claim of trade-secret misappropriation against the other.  These claims are governed by the Delaware Uniform Trade Secrets Act.  As I will describe for you below, this Act permits each party to a verdict in its favor if it shows, by a preponderance of the evidence, that:

1.      The party asserting misappropriation owned a trade secret or trade secrets;

2.      The other party misappropriated the secret information; and

3.      The party asserting misappropriation was harmed as a direct result of the other party's misappropriation.

I will now instruct you on the meanings of these three elements.

---

[21]      Unless otherwise noted, Guidewire's trade secret instructions are adapted from *Mattern & Assoc., L.L.C. v. Seidel et al.*, Civ. No. 06-036-SLR (D. Del. 2008)

## 8.2.  TRADE SECRET DEFINED

You must first find that the party asserting misappropriation had a trade secret or trade secrets.  A trade secret is defined as information, including a formula, drawing, pattern, compilation, program, device, method, technique, or process that:

1.      derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2.      is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In determining whether either party has proven by a preponderance of the evidence that, it possessed specific, identifiable trade secrets, you may consider the following factors:

1.      the extent to which the information was known outside of that party's business;

2.      the extent to which it was known by employees and others involved in that party's business;

3.      the extent of measures taken by that party to guard the secrecy of the information;

4.      the value of the information to that party and its competitors;

5.      the amount of effort or money expended in developing the information; and

6.      the ease or difficulty with which the information could be properly acquired or duplicated by others.

### 8.3.   SECRECY REQUIREMENT

To qualify as a trade secret, the information must in fact be secret.  A substantial element of secrecy must exist so that, except by the use of improper means, it would be difficult or costly to acquire the information.  Thus, information that is readily ascertainable, because it is easily available in trade journals, reference books, or other published materials, or from a brief and inexpensive examination of a publicly marketed product, cannot be a trade secret.

However, a trade secret may comprise a combination of information that is generally known or readily ascertainable, if the combination itself qualifies under the standards I have described.  A compilation of otherwise public information in a unique and confidential format may itself constitute a trade secret.  Also, information can qualify as a trade secret even though it may be independently discovered through reverse engineering – that is starting with a known product and working backward by examining or testing it to find the process by which it was manufactured – if that effort is lengthy or expensive.

A trade secret does not have to be absolutely secret.  It can be disclosed to employees involved in its use, or to unrelated parties under circumstances that tend to keep it from being generally known.  However, a trade secret owner must take reasonable efforts to keep the information secret, as I will explain to you.

### 8.4.   VALUE

As I have said, a trade secret must have value that results from its secrecy.   In other words, a trade secret must be of sufficient value to provide an actual or potential economic advantage over others who do not possess the information.   The advantage, however, need not be great.   It is sufficient if the secret provides an advantage that is more than trivial.   Although a trade secret can consist of a patentable invention, there is no requirement that the trade secret meet the standard of inventiveness applicable under federal patent law.

## 8.5.   REASONABLE EFFORTS TO PROTECT SECRECY

One of the elements of a trade secret is that its owner must have made reasonable efforts to keep it secret.  A trade secret owner does not have to undertake extreme and unduly expensive measures; however, its efforts must represent a reasonable attempt to limit exposure of the information to those who have reason to know it and who are made aware of its confidential nature.  In assessing reasonableness, you must consider the value of the information, the risk of unintended disclosure, and the cost or inconvenience of particular measures.

### 8.6.   MISAPPROPRIATION

If you find that either party has proved the existence of trade secret information as I have defined it for you, you must then decide whether the other party has misappropriated any of this information.

A party can misappropriate the trade secret of another in either of two ways: (1) by acquiring, by improper means, information that the party knows or should know is another's trade secret; or (2) by using or disclosing, without consent, information that the party knows or should know is another's trade secret.

To show that a party has "used" a trade secret does not require that the party has employed it in the same way as the owner.  Any exploitation of the information that is likely to result in injury to the owner is sufficient, including marketing goods or products that embody the trade secret, employing the trade secret in manufacturing, relying on the trade secret to assist or accelerate research or development, or soliciting customers through use of trade secret information.  Also, the unauthorized use need not extend to every aspect or feature of the trade secret at issue; use of any portion of the trade secret is sufficient.  The party accused of misappropriation may also be liable if it uses the trade secret together with independently created improvements or modifications, if the result is substantially derived from the trade secret.

A "duty of confidence" is owed by a party to whom a trade secret is disclosed if the recipient either: (1) made an express promise, orally or in writing, to maintain secrecy; or (2) received the trade secret under circumstances that show the recipient knew or should have known that the disclosure was intended to be confidential.  Sometimes the nature of the relationship between the parties is sufficient to establish the necessary understanding of confidentiality.

### 9.    TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS[22]

The law recognizes that everyone has a right to establish and conduct a lawful business, free from unjustified interference.

Accenture has alleged that Guidewire has tortiously interfered with its prospective contractual relations.

Accenture contends that, because of Guidewire's improper conduct, Accenture was prevented from entering into a contract with a specific third party and, as a result, Accenture suffered monetary loss. The questions for you to decide are whether Accenture had such an alleged expectancy and, if so, whether that expectancy has in fact been invaded and whether, under all the factors I will instruct you to consider, any such invasion was improper.   In attempting to prove tortious interference, Accenture must prove conduct by Guidewire that is separate from the conduct Accenture alleges constitutes misappropriation of trade secrets.

In these charges, I will give you the applicable legal principles upon which you are to determine these questions.

---

[22]     Modeled after the instruction in *Cryovac v. Pechiney*, Case No. 1:04-01278-KAJ (D. Del. 2006) addressing Tortious Interference with Prospective Contractual Relations.

**9.1.   ELEMENTS OF LIABILITY**

To find liability for interference with business relations, you, the jury, must find that each of the following elements was more likely than not the case:

1. Accenture had a reasonable expectancy of entering into a contract with a specific third party;

2. Guidewire knew or should have known of Accenture's expectancy of a contractual relationship with the specific third party;

3. Guidewire acted intentionally to prevent a contract between Accenture and the specific third party;

4. Guidewire's conduct was improper under the factors I will instruct you to consider;

5. Guidewire's conduct caused the loss of a contract between Accenture and the specific third party; and

6. Guidewire's improper conduct proximately caused Accenture to not secure a contract with the specific third party.

You can only find in favor of Accenture on this issue if you first find that Accenture has proven that each of the above elements was more likely than not the case.

### 9.2.   EXISTENCE OF A RELATIONSHIP – GENERALLY

Accenture contends that at the time of Guidewire's conduct, there existed an expectancy of a contract between Accenture and a specific third party. You must first determine whether such an expectancy existed.

In determining this question, the expectancy need not be evidenced by a contract. It is sufficient if you find from the evidence that there were either prior dealings or a prior course of conduct between Accenture and a specific third party from which there would be a reasonable expectation of a contract between Accenture and a specific third party. Accenture must show this expected benefit with some degree of specificity, such that it is a realistic expectation, but it need not be shown with certainty, because prospective things are, by their nature, necessarily uncertain. The law requires more than a mere hope or optimism; what is required is a reasonable likelihood or probability.

### 9.3.   KNOWLEDGE REQUIREMENT

To find for Accenture, you must also find that Guidewire knew of the existence of an expectancy of a contract between Accenture and a specific third party. To have knowledge means that Guidewire has information concerning an expectancy by Accenture of a contract with a specific third party, which was discovered by Guidewire or was brought to Guidewire's attention by others.

In this regard, knowledge may be found to exist if, from the facts and circumstances of which Guidewire had knowledge, Guidewire should have known of the existence of an expectancy by Accenture of a contract with a specific third party.

### 9.4.   REQUIREMENT OF INTENT / PROOF OF INTENT

You, the jury, must determine whether Guidewire intended to prevent Accenture from entering into a contract with a specific third party. The instruction I previously gave you on the meaning of intent applies here as well.

Thus, in making your determination about whether Guidewire's actions were intentional, you may look at Guidewire's objective conduct and, in the absence of contrary evidence, draw an inference that Guidewire, by Guidewire's conduct, intended the natural and probable consequences of its acts.

## 9.5.   PROPER OR IMPROPER INTERFERENCE DEFINED

Accenture cannot establish tortious interference unless it can prove by a preponderance of the evidence, not simply that Guidewire prevented Accenture from entering into a contract, but that it did so by improper means and with the intent to create or continue an illegal restraint of competition.[23]

---

[23]    *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261 (Del. Super. Ct. 2001).

### 9.6.   CAUSATION REQUIREMENT

You, the jury, must determine whether Guidewire was responsible for preventing Accenture from entering into a contract with a specific third party.

In other words, you must decide whether, except for Guidewire's allegedly improper conduct, Accenture was reasonably certain to have entered into a contract with Accenture.

Guidewire's allegedly improper conduct will be deemed to be responsible for Accenture's failure to enter into a contract with the specific third party if it was a substantial factor in causing Accenture not to fulfill its expectancy with the specific third party.

### 9.7.   PRIVILEGE OF COMPETITION AS TO TORTIOUS INTERFERENCE CLAIM[24]

Guidewire asserts that its conduct was proper because it occurred during the course of competition between Guidewire and Accenture. The law recognizes that a party is justified in causing a third party not to enter into a contract with the party's competition as long as the conduct relates to competition between the two competitors and the party is acting, at least in part, to advance his or her own commercial interests in such competition, and as long as the person does not use wrongful means to compete.

You must first determine, then, whether Guidewire's conduct relates to competition between Guidewire and Accenture for the specific third party's business.  If you find that it does, then you must determine whether Guidewire's purpose was, at least in part, to advance Guidewire's interest in competing with Accenture. For example, if you find that Guidewire was seeking to acquire for itself the business diverted from Accenture, then as long as Guidewire's conduct was at least in part directed to that end, the fact that you may find it was also motivated by other reasons does not make it improper in the eyes of the law.

---

[24]    Adapted from the instruction entitled "COMPETITION AS PROPER OR IMPROPER INTERFERENCE" from *Cryovac v. Pechiney*, Case No. 1:04-01278-KAJ (D. Del. 2006).

## 10.   BREACH OF CONTRACT[25]

Guidewire claims that Accenture breached a contract between them, to which I will refer as the "nondisclosure agreement".

Accenture denies that it breached the nondisclosure agreement.

Guidewire has the burden of proving by a preponderance of the evidence:[26]

1.      The existence of a contract between Accenture and Guidewire;

2.      Accenture's breach of the contract;

I will explain and define these legal terms elsewhere in these instructions.

If you find from your consideration of all the evidence that one or more of these elements has not been proved, you must find in favor of Accenture.  If you find from your consideration of all the evidence that each of the above elements has been proven, you must find in favor of Guidewire.

Accenture and Guidewire agree that there was a valid contract between the parties so you do not need to decide that issue.

---

[25]     Governed by Illinois law.  Modeled after the Illinois Pattern Jury Instructions §§ 700.01-700.02 (2009).

[26]     [Any elements in this section that are not disputed by the parties to be removed.]

## 11.    BREACH[27]

Generally, if a party fails to perform its obligations according to the terms of the contract, the party has breached the contract.  You must decide whether Accenture failed to do what it was required to do under the contract.

The third element of a contract claim which Guidewire must prove is Accenture's breach of the contract.  To recover on its claim, Guidewire has the burden to prove that Accenture failed to do something the contract required it to do.

---

[27]    Modeled after Illinois Pattern Jury Instructions § 700.09 (2009).

12.   **DEFENSES**[28]

12.1. **STATUTE OF LIMITATIONS**[29]

Guidewire contends that Accenture failed to file the complaint for misappropriation of its trade secrets and tortious interference in a timely manner and that its claim is barred by the statute of limitations.  An action for misappropriation of a trade secret or tortious interference must be brought within three years after the acts alleged to be misappropriation are discovered or by the exercise of reasonable diligence should have been discovered.[30]

To prove that Accenture failed to meet this requirement with regard to its claim, Guidewire must prove that, by December 18, 2004, Accenture knew that Guidewire had misappropriated its trade secrets, or knew facts that would prompt investigation by someone exercising a normal amount of diligence.

If you decide that Accenture actually knew of these alleged acts, then you do not need to answer the second question.  If Accenture becomes aware of facts that would make a reasonably prudent person in the same or similar circumstances suspicious, a duty to investigate arises.

---

[28]   Modeled after *Lexar Media, Inc. v. Toshiba Corp.*, No. 1-02-CV 812458 (Cal. Super. Ct. 2005) (California law).

[29]   Modeled after *Lexar Media, Inc. v. Toshiba Corp.*, No. 1-02-CV 812458 (Cal. Super. Ct. 2005) (California law).

[30]   6 Del. C. § 2006.

## 12.2. LACHES[31]

Guidewire contends that Accenture is not entitled to bring a claim for acts that occurred before it filed a lawsuit because Accenture delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and Guidewire has been or will be prejudiced in a significant way due to Accenture's delay in filing the lawsuit.[32]  This is referred to as laches.  Guidewire must prove delay and prejudice by a preponderance of the evidence.[33]

To establish laches, Guidewire must show (1) Accenture had knowledge of the claim and (2) there was prejudice to Guidewire arising from an unreasonable delay by the Accenture in bringing the claim.[34]

Whether Accenture's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay.  An unreasonable delay can range from as long as several years to as little as one month.

If suit was delayed for three years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted.[35]  This presumption shifts the

---

[31]   Modeled after the Federal Circuit Model Patent Jury Instructions (2009).

[32]   *AQSR India Private, Ltd. V. Bureau Veritas Holdings, Inc.*, No. 4021-VCS, 2009 WL 1707910, at *10 (Del. Ch. June 16, 2009) (citing *U.S. Cellular Inv. Co. v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 502 (Del.1996)).

[33]   *Slovin v. Knotts*, No. CIV.A. 3755, 1980 WL 268097, at *2 (Del. Ch. Dec. 5, 1980) ("[S]tatute of limitations, estoppel and laches are affirmative defenses which [the defendant] must [prove] by a preponderance of the evidence.") (not a trade secret decision).

[34]   *Fike v. Ruger*, 752 A.2d 112, 113 (Del. 2000); *Khanna v. McMinn*, No. Civ.A. 20545-NC, 2006 WL 1388744, at *30 (Del. Ch. May 9, 2006) (quoting *U.S. Bank Nat'l Ass'n v. U.S.* Timberlands *Klamath Falls, L.L.C.*, 864 A.2d 930, 951 (Del. Ch. 2004), *vacated on other grounds by* 875 A.2d 632 (Del. 2005)).

[35]   *Brady v. Pettinaro Enters.*, 870 A.2d 513, 526 (Del. Ch. 2005) ("[S]tatutes of limitation that apply to actions at law are deemed to establish a time period beyond which delay in

burden of proof to Accenture to come forward with evidence to prove that the delay was justified

or that material prejudice did not result, and if Accenture presents such evidence, the burden of

proving laches remains with Guidewire.  Laches may be found for delays of less than three years

if there is proof of unreasonably long and unjustifiable delay causing material prejudice to

Guidewire.  Facts and circumstances that can justify a long delay can include:

     1.      Being involved in other litigation during the period of delay;

     2.      Being involved in negotiations with Guidewire during the period of delay;

     3.      Poverty or illness during the period of delay;

     4.      Wartime conditions during the period of delay;

     5.      Being involved in a dispute about ownership of the patent during the period of delay; or

     6.      Minimal amounts of allegedly infringing activity by Guidewire during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also

determine if Guidewire suffered material prejudice as a result of the delay.  Prejudice to

Guidewire can be evidentiary or economic.  Whether Guidewire suffered evidentiary prejudice is

a question that must be answered by evaluating whether delay in filing this case resulted in

Guidewire not being able to present a full and fair defense on the merits to Accenture's trade

secret misappropriation claim.  Not being able to present a full and fair defense on the merits to a

trade secret misappropriation claim can occur due to the loss of important records, the death or

impairment of an important witness(es), the unreliability of memories about important events

---

bringing a claim is presumptively unreasonable for purposes of applying laches."); *see also Gen. Video Corp. v. Kertesz*, No. 1922-VCL, 2008 WL 509816, at *3 (Del. Ch. Feb. 25, 2008).

because they occurred in the distant past, or other similar types of things.  Economic prejudice is determined by whether or not Guidewire changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for trade secret misappropriation, and also whether Guidewire's losses as a result of that change in economic position likely would have been avoided if Accenture had filed this lawsuit sooner.  In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances.  Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice).  You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

## 12.3. ESTOPPEL[36]

A plaintiff may forfeit its right to any relief from a party accused of tortious interference or trade-secret misappropriation where: (1) the plaintiff communicates something in a misleading way to the defendant about the lack of misappropriation or interference or about not being sued, (2) the defendant relies upon the misleading communication from the plaintiff, and (3) the defendant will be materially harmed if the plaintiff is allowed to assert a claim relating to the issue that is inconsistent with the plaintiff's prior misleading communication. This is referred to as an "equitable estoppel" and it is a defense that Guidewire contends precludes any recovery by Accenture in this lawsuit for its trade secret misappropriation or tortious interference claims. Guidewire must prove each of these elements by a preponderance of the evidence, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties.

Guidewire contends that Accenture made a misleading communication to Guidewire before Accenture filed this lawsuit. A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence. Conduct may include action or inaction. Whether in fact Accenture made such communications with Guidewire prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to Guidewire can be evidentiary or economic in form. Whether Guidewire suffered evidentiary harm is a question that must be answered by evaluating whether Guidewire will be unable to present a full and fair defense on the merits of Accenture's claim. Not being

---

[36]    Modeled after the Federal Circuit Model Patent Jury Instructions (2009). Estoppel should be equally applicable to trade secret misappropriation.

able to present a full and fair defense on the merits of Accenture's claim can occur due to the loss of important records, the death or impairment of an important witnesses, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Whether Guidewire suffered economic prejudice is a question that must be answered by evaluating whether Guidewire changed its economic position as a result of its reliance on any misleading communication from Accenture,resulting in losses beyond merely paying for trade secret misappropriation and whether losses as a result of any change in economic position could have been avoided.

## 12.4.  UNCLEAN HANDS[37]

A plaintiff may be barred from enforcing his rights against a defendant where the plaintiff acts or acted inequitably, unfairly or deceitfully towards the defendant or the Court in a way that has immediate and necessary relation to the relief that the plaintiff seeks in a lawsuit.  This is referred to as "unclean hands," and it is a defense that Accenture and Guidewire each contends precludes any recovery by the other party in this lawsuit on any of its claims, including infringement of the '284 and 111 patents, misappropriation of Accenture's and Guidewire's trade secrets, breach of contract, and tortious interference with business relations.

You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, one party has acted in such an unfair way towards the other party or the Court in the matters relating to the controversy between Accenture and Guidewire that, in fairness, that party should be denied the relief it seeks in this lawsuit.  Accenture must prove unclean hands by a preponderance of the evidence to preclude recovery by Guidewire, and Guidewire must prove unclean hands by a preponderance of the evidence to preclude recovery by Accenture.

---

[37]    Modeled after the Federal Bar Association Model Jury Instructions (2009).

## 13.   DELIBERATION AND VERDICT

### 13.1. INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 5-4, or 6-3, or whatever your vote happens to be.  That should stay secret until you are finished.

### 13.2.  UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

### 13.3. DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day. You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or

75

with anyone else during the evening recess.  You may talk about the case only while you are in the jury room and everyone on the jury is present.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 12:30 and 1:30, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

### 13.4.  COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2010 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Richard L. Horwitz
> David E. Moore
> POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on

February 24, 2010 upon the following in the manner indicated:

## <u>BY ELECTRONIC MAIL</u>

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE  19801

L. Scott Oliver
James Bennett
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304

*/s/ Julia Heaney*

Julia Heaney (#3052)