IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


| | |
|---|---|
| ACCENTURE GLOBAL SERVICES GMBH and ACCENTURE LLP | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 07-826-SLR ) |
| GUIDEWIRE SOFTWARE INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM ORDER

At Wilmington this 5th day of March, 2010, having heard argument on, and

having reviewed the papers submitted in connection with, the parties' proposed claim

construction;

IT IS ORDERED that the disputed claim language of U.S. Patent Nos. 7,013,284

("the '284 patent") and 7,017,111 ("the '111 patent") shall be construed consistent with

the tenets of claim construction set forth by the United States Court of Appeals for the

Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. "**[C]laim folder:**"[1] "An electronic analog of a physical folder holding

information relating to an insurance transaction." This construction is consistent with

the claims as well as the specification: col. 83:17-27; col. 107:29-31.

2. "**[D]ecomposed into a plurality of levels:**"[2] "Broken down into two or more

structured set(s) of information." The parties agree that decomposed into levels means

---

[1]'284 patent, claim 1 (and dependent claims).

[2]'284 patent, claim 1 (and dependent claims).

"broken down into structured sets of information," but dispute the meaning of "plurality." The term "plurality" is consistent with a construction that requires more than one structured set of information. *See Bowers v. Baystate Techs.*, 320 F.3d 1317, 1332 (Fed. Cir. 2003). This construction is consistent with col. 84:34-37 of the specification.

3. "[P]olicy level:"[3] "Structured set of information about an insurance policy." The court finds that "**an** insurance policy" clarifies any ambiguity inherent in plaintiffs' proposed construction of "**any** insurance policy." This construction accords with col. 84:37-63 of the specification.

4. "[C]laim level:"[4] "Structured set of information about an insurance claim." For the above reason, the court rejects plaintiffs' proposed construction of "**any** insurance claim." In all other respects, the parties agree with this construction, which is consistent with col. 84:37-63.

5. "[P]articipant level:"[5] "Structured set of information about a person relevant to a claim." The parties agree with this construction, which also finds its basis in col. 84:37-63 of the specification.

6. "[L]ine level:"[6] "Structured set of information about applicable coverage." This construction is consistent with col. 84:37-63 of the specification.

---

[3]'284 patent, claim 1 (and dependent claims).

[4]'284 patent, claim 1 (and dependent claims).

[5]'284 patent, claim 1 (and dependent claims).

[6]'284 patent, claim 1 (and dependent claims).

7. "**[E]vent processor:**"[7] "A feature that announces an event to the task engine." This construction is consistent with Figure 15 of the specification, which displays the relationship between the event processor and the task engine.

8. "**[A]pplication events**:"[8] "An event in an application program." While the specification does not explicitly discuss an application event, Figure 3 provides numerous examples of Visual Basic application events. This construction likewise tracks the extrinsic evidence of record. (D.I. 304 at 10 (Free On-Line Dictionary of Computing))

9. "**[E]vent trigger**:"[9] "Notification or indication that an event has happened." The parties agree with this construction. The court's construction is consistent with Figure 1 of the specification, which depicts the event processor notifying the task engine that an event has occurred.

10. "**[T]ask engine**:"[10] "A feature that generates the tasks that need to be performed in response to an event." Again, the parties' dispute is limited to plaintiffs' request for a construction which includes "**any** event." The court eliminates potential ambiguity through its construction, which is consistent with the specification: col. 105:64-106:18.

---

[7]'284 patent, claim 1 (and dependent claims).

[8]'284 patent, claim 1 (and dependent claims).

[9]'284 patent, claim 1 (and dependent claims).

[10]'284 patent, claim 1 (and dependent claims).

11. **"[T]ask library:"**[11] "A feature that stores the rules with which tasks are established." Plaintiffs submit that the task library stores, in addition to rules, templates that can be used to create rules. However, neither the specification nor the claims speak to the added feature of storing templates. The court's construction is consistent with claim 1, which requires simply "a task library database for storing rules." col. 107:38-39.

12. **"[T]ask assistant:"**[12] "A feature that displays a list of tasks to be performed on a claim." This construction is consistent with Figure 13 and col. 105:9-12 of the specification.

13. **"[S]tandardized tasks:"**[13] "Tasks commonly performed." The parties agree with the court's construction. The specification provides that the task library contains the list of "all the standardized tasks across the organization," col. 104:66-67, thus suggesting that "standardized tasks" are tasks common to the entire organization. The court's construction results from supplementing this sparse intrinsic guidance with the plain and ordinary understanding of "standardized" as "common."

14. **"[S]uffix:"**[14] "Applicable coverage from an insurance policy for a claim." The parties do not dispute the court's construction, which is consistent with the specification: col. 3:9-10.

---

[11]'284 patent, claim 1 (and dependent claims).

[12]'284 patent, claims 1 and 8 (and dependent claims).

[13]'284 patent, claim 3.

[14]'111 patent, claims 1, 9 and 13 (and dependent claims).

15. **"[S]hort text**:"[15] "Data entered that corresponds to each variable in a pre-defined text area." This construction finds substantial support in claim 3 as well as the specification: col. 5:24-27; col. 5:27-29.

16. **"[L]evel of significance**:"[16] "Adding an indicator to the file note for the purpose of specifying the importance of the file note, in addition to the text and topic of the file note itself." The indication of the level of significance must be separate from the content of the file note itself. Regarding plaintiffs' contention that "topic" is the same as the "level of significance," such a construction would violate the presumption in favor of claim differentiation and would effectively read the "level of significance" limitation out of the claim. This result would be especially improper insofar as the prosecution history demonstrates that the "level of significance" limitation was part of the basis for allowance. (D.I. 302 at JA000619-20)

17. **"[F]ree form notes**:"[17] "Computerized version of handwritten notes." The parties agree with this construction, which is consistent with col. 1:24-25 of the specification.

18. **"[F]ield**:"[18] "A component of a record corresponding to an attribute of that record." Figure 1B displays a field for "suffix" and a field for "participant," referred to by the specification, respectively, as the "suffix field" and the "participant field." col. 5:8-9.

---

[15] '111 patent, claims 3 and 15.

[16] '111 patent, claims 1, 9 and 13 (and dependent claims).

[17] '111 patent, claims 4, 12 and 16.

[18] '111 patent, claim 1 (and dependent claims).

Each field allows for various possible entries.  In the "category" field, one can select "appraisal" or "case estimate."  In this example, "category" is the field, and "appraisal" is information in the field.  col. 5:16-20 (explaining that "data is obtained from the claim database and placed in the fields respectively").  Thus, plaintiffs' proposed construction conflating a field with the information contained in the field is unsupported by the specification.  The court's construction is consistent with the specification's clear distinction between a "field" and the information contained in that field.

19.  "[O]btaining a selection of fields of a first set of fields:"[19]  "Obtaining a selection of one or more fields from a first set of such fields."  This construction flows from the plain and ordinary meaning of the limitations, and is illuminated by the construction of "field" *supra*.

20.  "[T]he selection identifying information from a second set of fields:"[20] "The selection identifying the contents of one or more other components of a record not in the first set of such components."  This construction flows from the plain and ordinary meaning of the limitations, and is illuminated by the construction of "field" *supra*.

21.  "[D]isplaying in the second set of fields, the information identified by selection of fields of the first set of fields:"[21]  "The initial selection of fields defines information that is displayed in the second set of fields."  This construction flows from the plain and ordinary meaning of the limitations, and is illuminated by the construction

---

[19]'111 patent, claim 1 (and dependent claims).

[20]'111 patent, claim 1 (and dependent claims).

[21]'111 patent, claim 1 (and dependent claims).

of "field" *supra*.

22.  Predefined text area "**related to each fields of the second set of fields based on the selected fields**:"[22]  The predefined text area "has text which is predefined on the basis of the contents of the second set of fields, which in turn are based on the fields selected from the first set of fields."  This construction is consistent with Figure 1B of the specification.

United States District Judge

---

[22]'111 patent, claim 1 (and dependent claims).