IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

| | | |
|---|---|---|
| ACCENTURE GLOBAL SERVICES GmbH, and ACCENTURE LLP, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| vs. | : | |
| GUIDEWIRE SOFTWARE, INC., | : | |
| Defendant. | : | NO. 07-826 (SLR) |

- - -

Wilmington, Delaware
Friday, October 16, 2009
9:30 o'clock, a.m.
***Telephone conference

- - -

BEFORE: HONORABLE SUE L. ROBINSON, U.S.D.C.J.

- - -

APPEARANCES:

POTTER, ANDERSON & CORROON
BY: RICHARD L. HORWITZ, ESQ.

-and-

Valerie J. Gunning
Official Court Reporter

APPEARANCES (Continued):

MORRISON & FOERSTER LLP
BY: JAMES POOLEY, ESQ. and
L. SCOTT POOLEY ESQ.
(Palo Alto, California)

Counsel for Plaintiffs

MORRIS, NICHOLS, ARSHT & TUNNELL
BY: JACK B. BLUMENFELD, ESQ.

-and-

DUIRE TANGRI LEMLEY ROBERTS & KENT
BY: DARALYN J. DURIE, ESQ.
(San Francisco, California)

Counsel for Defendant

- - -

P R O C E E D I N G S

(REPORTER'S NOTE: The following telephone conference was held in chambers, beginning at 9:30 a.m.)

THE COURT: Good morning, counsel. This is Judge Robinson, and Valerie is here as our Court Reporter. It would be helpful you if identified yourselves when you spoke so our record is clear.

This is to follow up on an "emergency e-mail," so I will let the parties start us off.

MR. POOLEY: Thank you, your Honor. This is Jim Pooley, for plaintiff.

And the reason that we wanted to talk to the Court is that a very closely related patent is about to be published. It has been allowed. And either on November 3rd or 10, we've been assured it will be printed and available in final form. It has, other than the abstract and summary of invention and claims, it's identical to the '284, which is pending before you. The same inventors filed the same day. It just has somewhat different claims.

And so it seemed to us that there are two choices that, in general, that we have here. One is to file and pursue a separate action on this obviously closely related patent, or to find a way that makes sense to fold it

into the existing case.

And that's why we wanted to bring this to the Court's attention. I mean, frankly, it's not that we're campaigning for one or the other outcome here, although it strikes me that the more efficient way to handle it would be to try to find a way that would be fair to the defendant to include it in the existing case. But either way, it's going to be pending in your Court, or in the Delaware Court, soon.

THE COURT: All right. Let's hear from counsel for defendant as to how to accommodate a new, closely related patent, in terms of efficiency and fairness.

MR. BLUMENFELD: Okay. Your Honor, it's Jack Blumenfeld.

First of all, as Mr. Pooley said, there is no patent as we sit here today. He said they've been assured it will be printed or available on November 3rd and November 10th. I don't know what that means. I looked at the patent office website this morning. There's no indication when that patent is going to issue and, of course, this Court does not have jurisdiction to deal with patent applications, only with issued patents, which there isn't right now.

But I can tell you, from looking at the file history on the website this morning, that this patent

application was filed in May of 1999, more than ten years ago, and that there was a notice of allowance in January of 2008, and Accenture paid the issue fee, but then withdrew it from issue.

So the reason we find ourselves in this situation isn't because of anything that anyone but Accenture has done in terms of pulling a patent that was going to issue shortly after they file this lawsuit.

But in our view, if they want to file a new lawsuit, I guess they can file a new lawsuit, but it's just too late to add another patent in this case. The case was filed in 2007. We have a trial in March of 2010. The parties are moving toward that.

You know, we had, your Honor, a discovery dispute back in August, where Accenture wanted delay, they wanted more time. And we agreed that fact discovery and expert discovery would be delayed. And it knew at that time that it had this application pending, and it knew the status. And what we said in that stipulation -- this is DI 261, we filed it August 7th, you signed it on August 10th -- that the remaining provisions and dates in the scheduling order shall remain unchanged, and plaintiffs will not seek a continuance of the March 15th, 2010, trial date.

That was in August. They agreed they would not seek any continuance of the trial date. Your Honor

has now told them in your order that led to this phone call that if we are going to add the patent to this case, that you are going to change the trial. They can't request that. They've agreed not to request that in the stipulation.

But where we are now on the two patents that were in the case, we're in the middle of claim construction briefing. Expert reports are due today and again next month. Summary judgment motions are due November and December. We have a hearing in December.

And we just need to go through and get these two patents done. It's not a time to derail this case, which has been pending for almost two years now, when we're getting close to trial by taking it off track to add a patent which hasn't even issued and which this Court does not have jurisdiction over and which Accenture agreed it wouldn't do.

So we oppose doing anything to take this case off track. We have trade secret claims. We have breach of contract claims. We have two patents already. We want to get this thing to trial. If they want to sue us on another patent that has been pending for ten years, they can do that and we can deal with it when it's done. But right now, we want to get this case finished.

MR. POOLEY: Your Honor, this is Jim Pooley. If

I could just respond briefly?

THE COURT: Yes.

MR. POOLEY: First of all, we, of course, acknowledge that the patent is not yet ready for filing, but it seemed to us, given the stakes involved, that it was important to bring this to the attention of the Court and opposing counsel as soon as we were made aware of it by the Patent Office.

What happened in 2008 was, there was a notice of allowance, but we were provided prior art by Guidewire that we ended up having to withdraw, so that that art could be considered by the Patent Office, and they did. And we didn't have control over when the patent would actually issue. Now they have told us that it will be issued on November 3 or 10.

We did enter into the stipulation that counsel referred to and we are not trying to wiggle out of it. As I said, we're not here to ask that the trial be put over. In fact, it's possible, I suspect, to keep the trial on, because the only issues that are raised by this other patent are different claim terms, and that's a matter of law. We've certainly finished all the discovery we need. We don't need the trial to be put over, but my point was that if, in the efficient administration of justice, we're going to have an almost identical patent come into

the system, if it makes sense to have these things done together, then it might be appropriate to hear from defendant about what additional discovery, if any, it might need in order to move forward in a combined case, if that's what makes sense.

It just strikes us that to have this new patent, which is virtually identical, filed in a separate action in the same Court is very inefficient, but, you know, we're really looking for guidance from the Court as well as input from Guidewire about what it thinks would be necessary for it to handle this.

MS. DURIE: Your Honor, this is Daralyn Durie. May I respond on the discovery point?

THE COURT: Yes.

MS. DURIE: The claims of this new patent are, in fact, quite different in scope from the claims of the principal patent that is at issue in the case presently pending before your Honor.

The claims of the '284 patent, the patent that is in suit, were allowed because of a feature of a claim folder, an electronic claim folder decomposed into various levels. And as a consequence, that was really the focus of the prior art search in the existing case.

The claims of the would-be new patent contain other different limitations not present in the existing

claims, and we would need to go back and conduct a new prior art search for art directed to those limitations. In fact, where the existing patent is very clearly focused on the specific methodologies for processing insurance claims, the word "insurance" only appears in the preamble of the new claim. It is much broader and much more generic.

So we would need to sort of re-do the prior art search. That prior art search was largely done in the existing case through third-party discovery, because much of the prior art is other systems that were on sale prior to the filing date of these patents.

So it's not even simply a matter of propounding subpoenas. We took extensive depositions all over the country from folks who had knowledge of these prior art systems. These are third parties. We would have to go redepose them in order to elicit testimony about whether these different claim limitations were present in those prior art systems.

I expect that we would get a lot of pushback from these third parties when we sought to redepose them in an existing case in which they already had been deposed, which would entail motion practice, not to mention that we would have to go through the infringement analysis, infringement analysis and re-deposing the inventors and the

party witnesses with respect to these new claims which, although the specification is the same, the claims are very different in scope.

So in our view, we are at the decision point with respect to the existing case. We are on track for that March trial. This would be a new case and we really would be restarting essentially at ground zero with respect to these new claims.

And so in our view, the right thing to do is to finish the case that we have, and to the extent that Accenture elects to bring a claim based on a new patent when it issues, of course, it can do that.

And as Mr. Blumenfeld indicated, we will respond and ascertain what discovery is necessary in order to respond to those allegations in that new case. But we think it will be unmanageable to try to inject those issues here.

THE COURT: All right. Well, basically, at this late stage, and with the trial calendar that I have next year, I am not inclined to try to force anything more into this case, at least without agreement of the parties. It does not sound as though we will get agreement of the parties, so I don't believe that including this as yet unissued patent will make any sense in this case.

So for what it's worth, that is where I stand

now, without having any motion practice in front of me. I am not inclined to entertain a motion practice in this regard.

With respect to the outstanding document dispute that I have had in front of me, let me give you my decision, since it's on the record and it will relieve me from issuing anything in writing.

Accenture has withdrawn its privilege assertion to Document Bates 2336-337. I find that Document 4587 is covered under the privilege, and therefore it should be treated as such.

Is there anything else we need to address yet this morning?

MR. BLUMENFELD: Your Honor, it's Jack Blumenfeld.

I don't think we have things we need to address, but we still have other discovery issues, and if we can't resolve them -- and there are a number of them. If we can't resolve them, and I don't think, at least some of them, we're going to be able to, if we could have permission to call chambers and seek another discovery conference?

THE COURT: I would just as soon set one right now. My calendar went from being crowded with trials to now, all of a sudden, being crowded with other things, plus I think if there's a deadline for you to either resolve them

or not, it will perhaps motivate you all to resolve them.

MR. BLUMENFELD: That would be fine.

THE COURT: So how much time do you think you need? A week or two weeks?

MS. DURIE: This is Daralyn Durie.

I think that's the right time frame, your Honor.

MR. POOLEY: Your Honor, this is Jim Pooley.

It is very difficult, without knowing the nature of the issues and their scope, to actually know how much time we'll need to thrash this out and see what we can resolve. Maybe it would make more sense to have a conference between counsel to actually identify what the issues are and then see how much time we think we need, and then we can, within the next day or two, call chambers and see what's available.

MS. DURIE: Your Honor, these are all issues that have been the extent of extensive discussion between counsel already.

THE COURT: Well, it boggles my mind because fact discovery must be over if we're into claim construction and expert discovery, so I can't imagine these are new issues.

I'm going to set aside an hour on Wednesday, October 28th, if you all are available, from 4:00 to 5:00.

MS. DURIE: I actually have a status conference

in Los Angeles before Judge Felzer that afternoon.

THE COURT: All right.

MS. DURIE: If I might suggest, we are all, I believe, going to be in Delaware on November the 3rd for a mediation, a settlement conference in the case, with Magistrate Thynge. Is there a chance that we could meet either the day before or the day after in connection with our being in Delaware, in any event?

THE COURT: That is possible. I think -- I don't know. I have a trial on my calendar. Something in the back of my head said that it just settled. If it did, I've got time during the 2nd, 3rd and 4th. And certainly on the 4th -- well, it's not on my calendar.

So I can give you a tentative date, but if I am in trial, I might have to change it.

Which would be better, the day before or the day after? I take it you're keeping the 3rd for the mediation?

MR. POOLEY: Yes, your Honor. This is Jim Pooley.

I think the day after would probably work better for us, logistically.

MS. DURIE: That's fine with us, your Honor.

THE COURT: All right. How about 9:00 o'clock on the 4th?

MS. DURIE: Perfect.

MR. POOLEY: That's fine, your Honor.

THE COURT: Thank you. All right. All right, counsel. Obviously, if you get these disputes resolved, you can let me know. Otherwise, I will put this on my calendar.

Thank you very much.

(Counsel respond, "Thank you, your Honor.")

THE COURT: Bye-bye.

(Telephone conference concluded at 9:45 a.m.)

\- - -