IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

ACCENTURE GLOBAL SERVICES : CIVIL ACTION
GmbH, and ACCENTURE LLP, :
:
Plaintiffs, :
:
vs. :
:
GUIDEWIRE SOFTWARE, INC., :
:
Defendant. : NO. 07-826 (SLR)

- - -

Wilmington, Delaware
Tuesday, January 12, 2010
4:30 o'clock, p.m.
***Telephone conference

- - -

BEFORE: HONORABLE SUE L. ROBINSON, U.S.D.C.J.

- - -

APPEARANCES:

POTTER, ANDERSON & CORROON
BY: DAVID E. MOORE, ESQ.

-and-

Valerie J. Gunning
Official Court Reporter

APPEARANCES (Continued):

MORRISON & FOERSTER LLP
BY: L. SCOTT OLIVER ESQ. and
RUCHIKA AGRAWAL, ESQ.
(Palo Alto, California)

Counsel for Plaintiffs

MORRIS, NICHOLS, ARSHT & TUNNELL
BY: JULIA HEANEY, ESQ.

-and-

DURIE TANGRI LEMLEY ROBERTS & KENT LLP
BY: DARALYN J. DURIE, ESQ.
(San Francisco, California)

Counsel for Defendant

- - -

P R O C E E D I N G S

(REPORTER'S NOTE: The following telephone conference was held in chambers, beginning at 4:30 p.m.)

THE COURT: Good afternoon, counsel. This is Judge Robinson and Valerie is here as our Court Reporter.

Obviously, you need to depose each other's experts. You need to get over it. You should not need subpoenas to do this because if, in my world, if someone is being paid to testify for a party, they should make themselves available with some degree of cooperation on both sides. But this is an unusual problem you all are having and you shouldn't be having it. So figure it out. If you need my help, I'm happy to step in and give you dates if you can't do it on your own.

So let me hear from, I guess, Guidewire's counsel is the party who --

MS. DURIE: Yes your Honor. This is Daralyn Durie. We were the ones who had submitted the e-mail request.

We have offered dates for our expert to be deposed. We, of course, understand that experts need to be deposed. The current -- the close of expert discovery is January 19th. We offered dates for our expert prior to the

discovery cutoff and offered to meet and confer with respect to alternative dates to the extent those dates were not convenient.

We began asking Accenture for dates for their expert on December 16th. Accenture had three experts. We have one.

We have yet to receive dates for any of Accenture's three experts. And Accenture had indicated to us that they did not intend to produce their experts for deposition prior to the discovery close.

The current schedule, which the parties agreed to and stipulated to in December provides following the discovery, expert discovery cutoff on January 19th, for the filing of Daubert motions on January 22nd, with oppositions due on February 5th. We have the pretrial conference in this case on March the 1st, with a March 15th trial date.

So our view is that we really need to bring the expert deposition process to a close right away and we need dates for the depositions of Accenture's experts forthwith.

THE COURT: Hello?

MR. OLIVER: Accenture is still here.

MS. HEANEY: This is Julie Heaney. It sounds like we may have lost Daralyn.

THE COURT: All right. I, frankly, don't know

what else she needs to say at this point, so if you all want to try to get her back on, you may. Otherwise, I want to hear from Accenture and find out what the heck is going on here.

MR. OLIVER: Sure. Would you like us to wait, your Honor, or try to get Ms. Durie back on, or would you like me just to go ahead?

THE COURT: Ms. Heaney --

MS. HEANEY: I think she should be able to call back in. I don't know how to reach her. She should be able to call back into the number.

THE COURT: All right. Well, you're here, so counsel for Accenture should go forward.

MR. OLIVER: Okay. Thank you, your Honor.

We asked back in December for dates for the December 11th -- actually, for dates when we could take --

MS. DURIE: I apologize. We got disconnected.

THE COURT: All right. Well, I think I've heard enough from you. My questions are really directed to Accenture.

And I'm not sure I care about what's happening. What I care about is that you get together while you're on the phone with me and get some dates. I mean, there's no excuse for not getting this done. So without too much on the background, I need to find out why Accenture isn't just

making their experts available.

MR. OLIVER: And we're happy to do that, your Honor.

What happened is that Guidewire gave us dates that would not allow us to use any testimony from their expert in summary judgment and then tried to insist that we provide our experts early enough that they could be used in the Guidewire reply briefs.

Nonetheless, what we propose, and Guidewire has apparently refused, is to do expert discovery immediately after the Markman hearing, which is now on the 21st, and run the -- move the expert cut off to February 5th, do Daubert motions on February 8th, oppositions on February 15th, Daubert replies on the 22nd, and then we have the pretrial conference and the jury set coming up on March 1st.

That strikes us as a workable schedule. It solves the problem that Guidewire is complaining about with Daubert issues and gives us roughly two weeks after the Markman hearing to do the depositions of all of the experts.

THE COURT: Now, you understand that what you're doing is just making my job all that much more difficult in probably the most difficult quarter of a year I've had in 18 years on the bench.

So this is what I'm going to do. I'm going to

eliminate Daubert motions altogether. You can make objections for purposes of the record at the pretrial conference, but I'm not going to listen to them. In my 18 years on the bench, I've probably granted two, and I probably will live to regret that at some point in time. So we're going to skip Daubert altogether.

Now, skipping Daubert altogether, does that make life easier in terms of getting these depositions done, or is there still a problem with the summary judgment deadlines because you all have compressed my time to decide anything because of extensions that you've put into place?

MR. OLIVER: Your Honor, if there are no Daubert motions, then I think completing expert discovery by February 5th is completely feasible and makes sense.

MS. DURIE: My concern, your Honor, is that we -- we do have a lot of work to get done preparing for the pretrial conference.

We agreed on a schedule that would have the expert discovery close on the 19th. We have offered to meet and confer with respect to dates for our experts. We originally proposed a date for our expert of the 18th and 19th, but I've offered to meet and confer with respect to alternative dates.

The problem was simply allowing Accenture to

obtain owe a three-week extension of the expert discovery cutoff by virtue of having failed to provide us dates for our expert. It is taking away from time needed to do all of the things that we need to do in preparation of the pretrial order.

THE COURT: Well, and that is a question for Accenture's counsel.

Why is it that, all of a sudden, you're giving yourself another extension in this case without my permission, at least it was without my permission. Why isn't January 19th appropriate?

MR. OLIVER: Because -- two reasons, your Honor.

One, as I said before, since Guidewire would not give us the opportunity to depose its expert in time for us to use any testimony from the expert in our summary judgment briefing, it does not seem equitable to us that we should provide our experts to Guidewire so that that testimony can be used in Guidewire's summary judgment briefing. It seems like --

THE COURT: All right. Why is it -- then I won't allow anyone to use expert testimony in summary judgment briefing. I mean, honestly, this is where giving extensions to you all has managed to make it that much more harder.

Guidewire's counsel, why is it that you should

be able to use expert testimony when Accenture wasn't?

MS. DURIE: So, first of all, your Honor, the answer that the Court should simply not consider expert testimony in connection with the summary judgment motion might be a good one here.

However, on December the 18th, Clem Roberts, my partner, sent an e-mail to Mr. Oliver in response to one of his e-mails when Mr. Oliver had suggested that the dates that we had provided for our expert of the 19 -- 18th and 19th would create this problem with summary judgment oppositions.

And he said, Scott, before we talk about having expert depositions, we should, at a minimum, have proposed it for your expert. And then he followed that up with a further e-mail in response to Mr. Oliver saying, I still don't have proposed dates for your expert. I don't think it makes sense to discuss the schedule until we have proposed dates from you.

THE COURT: Excuse me. I'm sorry, but I, frankly, don't have the time and the energy for this anymore. So you've got expert reports. You don't have depositions. No deposition testimony is going to be used in connection with summary judgment, which makes sense because I can't judge the credibility of deposition testimony anyway.

So now we've gotten rid of two obstacles. Any reason why the depositions can't be taken before January 19th?

MR. OLIVER: Yes, your Honor. We are busily preparing for the summary judgment hearing and Markman hearing, which are on the 21st.

THE COURT: But you agreed to this, did you not? I mean, haven't you adjusted the schedule, adjusted the schedule, and I've tried to accommodate you and taken my own time away.

Why is it that, all of a sudden, there's yet another deadline that you don't have to meet?

I think that that is inappropriate. So January 19th is the date. You get all these depositions done. No subpoenas necessary.

Are there any other issues? Thank you.

(Telephone conference concluded at 4:45 p.m.)

\- - -