IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCENTURE GLOBAL SERVICES, GmbH and ACCENTURE, LLP, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civ. No. 07-826-SLR |
| GUIDEWIRE SOFTWARE, INC., | ) ) ) | |
| Defendant. | ) | |

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: James P. Bennett, Esquire of Morrison & Foerster LLP, San Francisco, California and L. Scott Oliver, Esquire, Diana Luo, Esquire, Ruchika Agrawal, Esquire, Matthew Chen, Esquire and Douglas Chartier, Esquire of Morrison & Foerster LLP, Palo Alto, California.

Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Daralyn J. Durie, Esquire, Mark A. Lemley, Esquire and Clement S. Roberts, Esquire of Durie Tangri LLP, San Francisco, California.

**MEMORANDUM OPINION**

Dated: May 31, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiffs Accenture Global Services, GmbH and Accenture, LLP (collectively, "Accenture") brought this action against defendant Guidewire Software, Inc. ("Guidewire") on December 18, 2007. (D.I. 1) In the complaint, Accenture alleged that Guidewire infringes United States Patent No. 7,013,284 ("the '284 patent"), describing a computer program for developing component-based software capable of performing tasks relating to insurance transactions, such as claims processing. (*Id.*) Accenture also brought various state law claims[1] and a claim for trade secret misappropriation. (*Id.*) On October 8, 2008, the court granted Guidewire's motion to dismiss the non-patent claims. (D.I. 75) By stipulation of the parties, Accenture filed an amended complaint re-alleging its trade secret misappropriation and tortious interference with business relations claims. (D.I. 77; D.I. 79) Accenture filed a second amended complaint on December 17, 2008 to add a claim for infringement of United States Patent No. 7,017,111 ("the '111 patent"). (D.I. 92) On June 30, 2009, the court denied Guidewire's motion to dismiss the tortious interference with business relations claim in Accenture's second amended complaint. (D.I. 224)

Guidewire maintains its originally-filed affirmative defenses for patent invalidity, unenforceability, failure to mark, unclean hands, and patent misuse, as well as counterclaims for declaratory judgments of noninfringement, invalidity, unenforceability,

---

[1]Specifically, Accenture brought state law claims for unfair competition and deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act ("DTPA"), 6 *Del. C.* § 2531 *et seq.*, common law unfair competition, and tortious interference with business relations.

and breach of contract.[2] (D.I. 10.; D.I. 226) On July 7, 2009, Guidewire amended its counterclaims to add a claim for trade secret misappropriation. (D.I. 226)

By memorandum order dated February 26, 2010, the court stayed the trial and denied without prejudice Guidewire's motion for summary judgment regarding the invalidity of the '284 and '111 patents as claiming unpatentable subject matter, to be renewed upon the Supreme Court's ruling in *Bilski v. Doll*, 129 S. Ct. 2735 (2009). (D.I. 478) By memorandum order dated March 5, 2010, the court denied Guidewire's motions for summary judgment regarding the invalidity of the '284 patent based on indefiniteness or the on-sale bar, as well as its motion alleging that Accenture's trade secret misappropriation claim was barred by the statute of limitations. (D.I. 484 at ¶¶ 1-2, 4) The court denied without prejudice Guidewire's motion for non-infringement of the '111 patent and for invalidity of the '284 patent as anticipated or obvious. (*Id.* at ¶¶ 3, 5) The court also denied Accenture's motion to strike Guidewire's on-sale bar arguments. (*Id.* at ¶ 6)

Currently before the court are: (1) Guidewire's supplemental briefing[3] in support of its motion for partial summary judgment of invalidity of the '284 and '111 patents as claiming unpatentable subject matter (D.I. 348); (2) Guidewire's motion for clarification, reargument and/or certification of the court's memorandum opinion dated March 5,

---

[2]Guidewire's counterclaims of bad faith litigation as proscribed by § 43(a) of the Lanham Act, §§ 2532(a)(5), (8), and (12) of the DTPA, and the common law of unfair competition (claims V-VII) were dismissed by the court on Oct. 8, 2008. (D.I. 10; D.I. 75)

[3]Guidewire did not file a renewed motion in connection with its supplemental briefing. Therefore, the court refers to Guidewire's original motion for summary judgment at D.I. 348.

2

2010 (D.I. 485); and (3) Accenture's motion to strike portions of Guidewire's reply in support of its motion for reconsideration (D.I. 490). This matter is not currently scheduled for trial. The court has jurisdiction pursuant to 28 U.S.C. § 1338.

## II. BACKGROUND

### A. The Parties

Accenture and Guidewire are competitors in the consulting and technology services industry. Among other things, the parties provide computer software and consulting services to help design tools to aid insurance companies in their management and processing of information. Accenture provides the "Accenture Claim Components Solution" ("Claim Components") product suite and associated services; Guidewire's insurance claims management product is called "Guidewire Insurance Suite," which consists of "Guidewire ClaimCenter," "Guidewire PolicyCenter," and "Guidewire BillingCenter" platforms.

### B. The Patents at Issue

The '284 patent, entitled "Component based interface to handle tasks during claim processing," provides a computer program for developing component based software for the insurance industry. The program includes a data component, a client component and a controller component. The client component is responsible for allowing users to edit tasks, add new tasks and "achieve an insurance-related goal upon completion," as well as generating a historical record of completed tasks.

Claims 1 and 8 are independent claims. They read as follows:

1. A system for generating tasks to be performed in an insurance organization, the system comprising: an insurance transaction database

for storing information related to an insurance transaction, the insurance transaction database comprising a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format; a task library database for storing rules for determining tasks to be completed upon an occurrence of an event; a client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction, said client component enabling access by an assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion; and a server component in communication with the client component, the transaction database and the task library database, the server component including an event processor, a task engine and a task assistant; wherein the event processor is triggered by application events associated with a change in the information, and sends an event trigger to the task engine; wherein in response to the event trigger, the task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed, wherein the task assistant transmits the determined tasks to the client component.

8. An automated method for generating tasks to be performed in an insurance organization, the method comprising: transmitting information related to an insurance transaction; determining characteristics of the information related to the insurance transaction; applying the characteristics of the information related to the insurance transaction to rules to determine a task to be completed, wherein an event processor interacts with an insurance transaction database containing information related to an insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level, wherein the plurality of levels reflects a policy, the information related to the insurance transaction, claimants and an insured person in a structured format; transmitting the determined task to a task assistant accessible by an assigned claim handler, wherein said client component displays the determined task; allowing an authorized user to edit and perform the determined task and to update the information related to the insurance transaction in accordance with the determined task; storing the updated information related to the insurance transaction; and generating a historical record of the completed task.

The '111 patent, entitled "Insurance file note generation method and system,"

provides methods and systems for the automatic generation of file notes for insurance claims using predefined text. Provided components of the foregoing include a claim folder interface and a file note interface containing fields and selectable items. A claim handler is able to select a category and subcategory and provide short text associated with the selection in a predefined text area; a larger text area for free form text may also be provided.

Claims 1, 9 and 13 are independent claims. Claims 1 and 9 are method claims, and read as follows:

> 1. A method for generating a file note for an insurance claim, comprising the steps of, executed in a data processing system, of: prefilling a first set of fields with information identifying a file note, said information comprising at least one suffix indicating a type of insurance coverage for a participant in a claim and identification of the participant, wherein the at least one suffix is preselected from one or more types of insurance coverage applicable to the claim; obtaining a selection of fields of a first set of fields from a user, the selection identifying information for a second set of fields; displaying in the second set of fields, the information identified by selection of field of the first set of fields; permitting the user to add data to a predefined text area related to each field of the second set of fields based on the selected fields; generating a file note that contains the first set of fields, the second set of fields, and the data in the predefined text area; identifying a level of significance of the file note; and storing the file note with the identified level of significance in a claim database including file notes associated with the claim.

> 9. A method for generating a file note for an insurance claim folder, comprising: providing on a display device a claim folder screen depicting attributes associated with a claim, the attributes comprising at least one suffix indicating a type of insurance coverage for a participant in the claim; permitting the selection of at least one attribute associated with a claim on the claim folder screen; providing on a display device a file note screen depicting the selected at least one attribute in a criteria section, and a text entry section, wherein the text entry section is based on the selected at least one attribute in the criteria section; receiving from a user information associated with the text entry section; generating the file note based on information received from the user; identifying a level of significance of the file note according to information received from the user; and storing the

> file note with the identified level of significance in a searchable claim database, the claim database associating the file note being with a file note index indicating changes to the file note.

In contrast, claim 13 is a system claim, as follows:

> 13. A system for generating a file note for an insurance claim, comprising: prefilling means for prefilling a first set of fields with information identifying a file note, said information comprising at least one suffix indicating a type of insurance coverage for a participant in a claim and identification of the participant, wherein the at least one suffix is preselected from one or more types of insurance coverage applicable to the claim; obtaining means for obtaining a selection of fields of a first set of fields from a user, the selection identifying information for a second set of fields; displaying means for displaying in the second set of fields, the information identified by selection of field of the first set of fields; permitting means for permitting the user to add data to a predefined text area related to each field of the second set of fields based on the selected fields; generating means for generating a file note that contains the first set of fields, the second set of fields, and the data in the predefined text area; and identifying means for identifying a level of significance of the file note; and storing means for storing the file note with the identified level of significance in a claim database including file notes associated with the claim.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*,

57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Invalidity Under 35 U.S.C. § 101

#### 1. Legal standard

The standard of proof to establish the invalidity of a patent is "clear and convincing evidence." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1058 (Fed. Cir. 2004). Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law in establishing the validity of the patent. *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008) (citing *In re Comiskey*, 499 F.3d 1365, 1371 (Fed. Cir. 2007)) ("*Bilski I*"). Section 101

provides that patentable subject matter extends to four broad categories, including: "new and useful process[es], machine[s], manufacture, or composition[s] of matter." 35 U.S.C. § 101; *see also Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) ("*Bilski II*"); *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). A "process" is statutorily defined as a "process, art or method, and includes a new use of a known process, machine manufacture, composition of matter, or material." 35 U.S.C. § 100(b). The Supreme Court has explained:

> A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence.

*Diamond v. Diehr*, 450 U.S. 175, 182-83 (1981) (internal quotations omitted).

The Supreme Court recognizes three "fundamental principles" exceptions to the Patent Act's subject matter eligibility requirements: "laws of nature, physical phenomena, and abstract ideas." *Bilski II*, 130 S. Ct. at 3225. The Supreme Court has held that "[t]he concepts covered by these exceptions are 'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none.'" *Bilski I*, 545 F.3d at 952 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). Thus, "even if an invention appears to nominally claim subject matter that would be statutorily covered by the Patent Act, it will be denied patent protection if it falls into one of the 'fundamental principles' exceptions." *CLS Bank Int'l v. Alice Corp.*

8

*Pty. Ltd.*, 2011 WL 802079, at *7-11 (D.D.C. 2011).

Although a fundamental principle cannot be patented, the Supreme Court has held that "an **application** of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection," so long as that application would not preempt substantially all uses of the fundamental principle. *Bilski II*, 130 S. Ct. at 3230 (quoting *Diehr*, 450 U.S. at 187) (internal quotations omitted); *Bilski I*, 545 F.3d at 954. In making this determination, the claim must be considered as a whole, as it is "inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis." *Id.* Nonetheless, a scientific principle cannot be made patentable by limiting its use "to a particular technological environment" or by adding "insignificant post-solution activity." *Diehr*, 450 U.S. at 191.

To determine whether a claim recites an abstract idea, courts frequently apply the "machine or transformation" test. *Bilski I*, 545 F.3d at 954. Under this test, a claimed process is patent-eligible pursuant to § 101 if: (1) it is tied to a particular machine or apparatus; or (2) it transforms a particular article into a different state or thing. *Id.* (citing *Gottschalk v. Benson*, 409 U.S. 63, 70 (1972)). The Federal Circuit explained:

> A claimed process involving a fundamental principle that uses a particular machine or apparatus would not pre-empt uses of the principle that do not also use the specified machine or apparatus in the manner claimed. And a claimed process that transforms a particular article to a specified different state or thing by applying a fundamental principle would not pre-empt the use of the principle to transform any other article, to transform the same article but in a manner not covered by the claim, or to do anything other than transform the specified article.

9

*Id.* Although the machine or transformation test remains a "useful and important clue," the Supreme Court recently held that it is not the sole test for determining the patent-eligibility of process claims. *Bilski II*, 130 S. Ct. at 3227; *see also Prometheus Labs., Inc. v. Mayo Collaborative Servs.*, 628 F.3d 1347, 1349 (Fed. Cir. 2010). Instead, the primary inquiry should focus on whether the claimed invention falls within one of the three fundamental principles exceptions. *See Bilski II*, 130 S. Ct. at 3226.

### 2. Discussion

Guidewire contends that the claims of the '284 and '111 patents contain abstract ideas and fail the machine or transformation test. (D.I. 502) Specifically, Guidewire contends that the '284 and '111 patents fail the "machine" prong because their claims require only aspects of a general purpose computer. (*Id.* at 4-6) Moreover, Guidewire contends that the transfer of data regarding insurance cases from one electronic file to another does not transform physical objects to another state or thing. (*Id.* at 6) According to Guidewire, all of the claims reflect field of use restrictions or insignificant post-solution activity and, therefore, constitute unpatentable abstract ideas under § 101. (*Id.* at 7-10)

In response, Accenture contends that the Supreme Court specifically recognized computer software as patent-eligible subject matter and questioned the utility of the machine or transformation test as applied to Information Age inventions in *Bilski II*. (D.I. 503 at 1) Viewing the claims of the '284 and '111 patents as a whole, Accenture contends that it is clear the claims are not abstract ideas, but rather specific applications in computer software directed to teaching a human how to build the

10

software, not how to process an insurance claim. (*Id.* at 3-5) According to Accenture, the specific machine claimed by the '284 patent is depicted in claims 1 and 8, which disclose a client-server system specifically programmed to work in the environment of the claim. (*Id.* at 5-6)

This court previously determined that the '284 and '111 patents fail to satisfy the machine or transformation test. *See Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577, 594-99 (D. Del. 2010). The Supreme Court has since stressed that "[t]he machine-or-transformation test is not the sole test for deciding whether an invention is a patent-eligible 'process,'" suggesting that the test's utility in the Information Age is dubious and expressing concern that the test "would create uncertainty as to the patentability of software." *Bilski II*, 130 S. Ct. at 3227-28. However, the Supreme Court acknowledged that the machine or transformation test remains "a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101," and subsequent Federal Circuit authority also supports the continued use of the test. *Id.*; *see Prometheus Labs., Inc. v. Mayo Collaborative Servs.*, 628 F.3d 1347, 1355 (Fed. Cir. 2010).

Using the court's previous machine or transformation determination as an "important clue" in the analysis, the court must now determine whether the claims as a whole convey an unpatentable, abstract idea. The focus of this inquiry is on "the extent to which the application of an abstract idea is specific and/or limited," because inventions with specific applications are less likely to be abstract. *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, ___ F. Supp. 2d ___, 2011 WL 802079, at *21 (D.D.C. Mar. 9,

2011); *see also Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868-69 (Fed. Cir. 2010) (concluding that invention for digital image halftoning software was not abstract because it presented "functional and palpable applications in the field of computer technology").

The court concludes that the '284 and '111 patents are directed to abstract and, therefore, unpatentable, methods and systems for generating file notes and tasks to be performed for insurance claims. ('284 patent at col. 107:25-26; '111 patent at col. 7:27-28) The patents are directed to concepts for organizing data rather than to specific devices or systems, and limiting the claims to the insurance industry does not specify the claims sufficiently to allow for their survival. *See Bilski II*, 130 S. Ct. at 3231 (claims limiting abstract idea of hedging risk to the field of energy commodities market were unpatentable); *Parker v. Flook*, 437 U.S. 584, 589-90 (1978) (invalidating claim as pertaining to abstract idea despite the fact that claimed use of formula was limited to the petrochemical and oil-refining industries and did not purport to restrict its use outside of the industry).

Claim 8 of the '284 patent sets forth a method "for generating tasks to be performed in an insurance organization," comprising steps such as "transmitting information," "determining the characteristics of information," "applying the characteristics of information . . . to rules" contained in an insurance transaction database, and so forth. ('284 patent at col. 108:12-41) The court concludes that claim 8 is abstract because none of these terms limit the claim to a concrete application. Dependent claims 9 through 15 simply add limitations regarding potential claim information categories which either further restrict the field of use or narrow the same

post-solution activities found in claim 8. Claim 1 of the '284 patent, which describes a system for generating tasks to be performed in an insurance organization, mirrors the language of the method disclosed in claim 8. (*Id.* at col. 107:25-59) Claim 1 and its dependent claims also disclose abstract ideas with insignificant post-solution activity and technological field restrictions.

Claims 1 and 9 of the '111 patent, directed to "[a] method for generating a file note in an insurance claim," disclose steps that involve taking notes about insurance claims and storing the data. ('111 patent at col. 7:27-51; col. 8:8-31) The field of use restriction limiting these claims to the insurance industry is insufficient to provide a concrete basis for the claim for the same reasons the method claims of the '284 patent fail to pass muster under § 101. The dependent claims of the '111 patent, which add limitations on the type of data being recorded and the keeping of those records, are also abstract because they constitute field of use restrictions and insignificant post-solution activity. As with the '284 patent, claim 13 of the '111 patent is a "system" claim that mirrors the language of the method claims and is purely functional. (*Id.* at col. 8:45-9:3)

Viewing the claim language of the '284 and '111 patents as a whole confirms the court's conclusion that the patents contain abstract ideas which are unpatentable under § 101. This, in conjunction with the court's prior conclusion that the patents fail the machine or transformation test, leads the court to conclude that Guidewire's motion for summary judgment of invalidity under § 101 shall be granted.

## B. Motion for Clarification, Reargument and/or Certification[4]

### 1. Reargument

A motion for reargument under Local Rule 7.1.5 is the "functional equivalent" of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). See *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990). The standard for obtaining relief under Local Rule 7.1.5 is difficult to meet. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex-rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal quotations omitted). Accordingly, a court should alter or amend its judgment only if the movant demonstrates at least one of the following: (1) a change in the controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error of law or fact to prevent manifest injustice. *Id.*

Guidewire's motion for reargument re-alleges many of the same arguments it presented in support of its motion for partial summary judgment of invalidity. (D.I. 485 at 2-10) This court has repeatedly held that motions for reargument "should not be used to rehash arguments already briefed or to allow a never-ending polemic between the litigants and the Court." *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999). Guidewire has not alleged a change in the controlling law, offered

---

[4]As happens in far too many cases of late, both parties (particularly Guidewire) in this case violated Local Rule 7.1 in a multitude of ways. Delaware counsel obviously are aware of these violations. It is of no assistance to the court to have Delaware counsel, if they misapprehend (or choose to ignore) their role under the Local Rules. The failure of Delaware counsel to observe the Local Rules and the court's various management orders and guidelines will result in either the court's excusing Delaware counsel or denying without review any motions that are not in substantial compliance with the rules.

new evidence not available when the court made its decision, or shown the need to correct a clear error of law or fact or to prevent manifest injustice. Therefore, the court shall deny the motion for reargument.

## 2. Certification

Because no basis for reargument presents itself, the court considers Guidewire's alternative request to certify the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292(b) provides that an interlocutory appeal may be had where the proposed appeal concerns "(1) a controlling question of law[5] (2) as to which there is a substantial ground for difference of opinion and (3) . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b). "A party's disagreement with the district court's ruling does not constitute 'a substantial ground for a difference of opinion' within the meaning of 1292(b)." *Hurst v. City of Dover*, Civ. No. 04-083-KAJ, 2006 WL 2347707, at *2 (D. Del. Mar. 21, 2006) (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 360 (D.N.J. 2001)).

Guidewire disagrees with this court's conclusion that the claim language "a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level" is not a *Markush* group and is not invalid as indefinite. (D.I. 485 at 11-12) Guidewire's disagreement with the court's ruling is insufficient for certification of an interlocutory appeal.

---

[5]A "controlling question of law" encompasses "at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

15

### 3. Clarification

Turning to Guidewire's request for clarification, the court notes, as a preliminary matter, that it did not purport to construe the undisputed terms "from the group" and "comprising" by way of its March 5, 2010 memorandum opinion.[6] In construing the disputed claim terms, the court considered the surrounding claim language and the specification,[7] as required by Federal Circuit precedent. See *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (courts should consider "the surrounding words of the claim" because "the context in which a term is used in the asserted claim can be highly instructive"). Following the well-established tenets of claim construction, the court construed a series of disputed terms surrounding the terms "from the group" and "comprising" and determined that its construction of the disputed terms did not result in an inconsistency with the undisputed terms so as to create a *Markush* group.

Based on the claim language and the specification, the court rejected Guidewire's argument that the four levels specified in the '284 patent constitute a *Markush* group, which is "a listing of specified alternatives of a group in a patent claim," with members of the claimed group being functionally equivalent for purposes of claim validity. *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1280 (Fed. Cir.

---

[6]The court's March 5, 2010 memorandum opinion stated as follows: "By its memorandum order of the same date, the court has rejected defendant's argument that 'from the group' and 'comprising' are inconsistent and construed the limitations appropriately." (D.I. 483 at 41)

[7]The relevant claim language is as follows: "a claim folder containing the information related to the insurance transaction decomposed into a plurality of levels from the group comprising a policy level, a claim level, a participant level and a line level . . ." ('284 patent at col. 107:30-34)

16

2003); see also Ecolochem Inc. v. So. Cal. Edison Co., 1996 WL 297601, at *2 (Fed. Cir. June 5, 1996). The four levels set forth in the '284 patent are not functionally equivalent alternatives. Instead, each serves a different function in handling the claim, and each must be present. ('284 patent at col. 84:34-63, 107:30-34) Because the '284 patent does not contain a *Markush* group, the use of the term "comprising" does not automatically lead to indefiniteness.

## V. CONCLUSION

For the foregoing reasons, the court: (1) grants Guidewire's motion for summary judgment of invalidity based on unpatentable subject matter (D.I. 348); (2) grants Guidewire's motion for clarification and denies the motion in all other respects (D.I. 485); and (3) denies Accenture's motion to strike portions of Guidewire's reply brief as moot (D.I. 490). An appropriate order shall issue.